Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANCE CHIULLI, individually, and on behalf of a class of similarly situated individuals,<br><br>                    Plaintiff,<br><br>          v.<br><br>AMERICAN HONDA MOTOR CO., INC., a California corporation, and HONDA MOTOR CO., LTD., a Japanese corporation,<br><br>                    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violations of California's Consumers Legal Remedies Act<br>(2) Violations of California's Unfair Competition Law<br>(3) Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4) Breach of Express Warranty under California law<br>(5) Breach of Express Warranty under the Magnuson-Moss Warranty Act<br>(6) Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(7) Fraudulent Concealment/Omission<br>(8) Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

1.      Plaintiff Constance Chiulli ("Plaintiff"), individually and on behalf of all persons in the United States who purchased or leased any 2016-2020 Honda Civic vehicles equipped with an integrated in-vehicle communication and entertainment system ("Infotainment System") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by American Honda Motor Company, Inc. ("AHM") and/or Honda Motor Co., Ltd. ("HMC") ("Class Vehicles" or "Vehicles"), brings this action against AHM and HMC (together, "Defendants" or "Honda"). Plaintiff alleges as follows:

## INTRODUCTION

2.      This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

3.      Defendants manufactured, marketed, distributed, and/or sold the Class Vehicles without disclosing that the Class Vehicles' Infotainment Systems were defective.

4.      Specifically, Plaintiff is informed and believes, and based thereon alleges, that the Infotainment System is defective in that it malfunctions, freezes, or crashes, which in turn causes the inoperability of one or more features (including, *inter alia,* the navigation; heating, ventilation, and air conditioning ("HVAC"); music/radio; display screen; Bluetooth/phone; and backup camera functionalities) (the "Infotainment System Defect" or "Defect"). As further described below, discovery will show that improperly designed and/or programmed/calibrated software results in these failures.

5.      Among the most concerning is the failure of the back-up camera images to accurately depict the conditions behind the vehicle. Drivers, including Plaintiff Chiulli, become accustomed to the driver assist features in the infotainment system, including in particular the back-up camera and the right-side blind spot camera. A camera image that freezes is a clear-cut safety hazard—if a child were to wander in the path of the reversing vehicle after the back-up camera image had frozen, the driver would be shown a false image of the rear of the vehicle clear of any obstructions. Likewise, when the display simply goes blank, drivers continue to, out of habit, look at the blank screen for cues about blind spots and obstructions, only to realize the screen is blank and to adjust their driving behaviors in real time, disregarding the blank

CLASS ACTION COMPLAINT

screen and turning around to look out of the windows. Those few seconds are of critical importance, and the need to adjust one's habits and correct for the Defect contributes to the risk of collisions and injuries.

6.      Because the Infotainment System controls myriad vehicle functions, the Defect causes a wide array of failures. Discovery will show that the Defect causes the back-up camera image and the display image generally to flicker, freeze, and/or fail, error messages (including a "no device connected" message despite device being connected), the display screen and all associated functionalities to crash, Bluetooth connections to fail, USB connections to fail, the inability to receive incoming calls or make outgoing calls, the failure of in-vehicle microphone function, the navigation to fail, and GPS signal failure; it prevents the driver from being able to adjust the HVAC system; it causes the display screen to fail and suddenly go blank, black, or blue, which can cause the driver to become distracted, and it causes safety-related systems (including backup camera functions) to fail, necessitating repair or replacement of the entire system.

7.      Defendants sold the Class Vehicles with a 3-year/36,000-mile New Vehicle Limited Warranty ("NVLW") that purports to cover the Infotainment System. However, owners and lessees often have complained that their Infotainment Systems fail and require repair or replacement both within and just outside the warranty period. This is evidenced through Class Member reports to the National Highway Traffic Safety Administration ("NHTSA"), which demonstrate that Honda's authorized dealerships are replacing and repairing Infotainment Systems both within, and just outside, the applicable express warranty periods.

8.      The Infotainment System Defect is inherent in each Class Vehicle and was present at the time of sale.

9.      Discovery will show that, since 2015, if not earlier, Defendants have been aware the Class Vehicles' Infotainment Systems would need frequent repair, prematurely fail, require frequent replacement, including replacements just outside of warranty, that the replacement Infotainment Systems installed would be equally as defective as the originals, and that the Infotainment System would cause the symptoms of the Infotainment System Defect described

above (frequent malfunction, freezing, or crashing, which in turn causes inoperability of one or more features such as navigation, music/radio, display screen, Bluetooth/phone, and backup camera), yet Defendants continued to install the defective Infotainment System. Moreover, Defendants not only refused to disclose the problem to consumers, they also actively concealed, and continue to conceal, their knowledge concerning the Infotainment System Defect.

10.    Defendants undertook affirmative measures to conceal Infotainment System failures and other malfunctions through, among other things, Technical Service Bulletins ("TSB") issued to authorized repair facilities only.

11.    Defendants had superior and/or exclusive knowledge of material facts regarding the Infotainment System Defect due to their pre-production testing, design failure mode analysis, aggregate part sales, consumer complaints about the Defect to Defendants' dealers, who are their agents for vehicle repairs, customer complaints made directly to Honda, dealer audits, aggregate warranty information, consumer complaints to and resulting notice from NHTSA, early consumer complaints on websites and internet forums, dealership repair orders, among other internal sources of information about the problem.

12.    The Infotainment System Defect is material because, *inter alia,* it poses a safety concern. As attested by Class Members in complaints to the National Highway Traffic Safety Administration ("NHTSA"), and other online forums, the Infotainment System Defect can suddenly distract the driver and thereby impair ability to control the vehicle, process and respond to safety threats, and greatly increase the risk of collision.

13.    Defendants' failure to disclose the Infotainment System Defect has caused Plaintiff and putative class members to lose the use of their Vehicles' Infotainment Systems and/or incur costly repairs that have conferred an unjust substantial benefit upon Defendants.

14.    Discovery will show that, in an effort to conceal the Infotainment System Defect, Defendants have instructed dealers to tell consumers their vehicles are "operating normally" or "operating as intended" when they are not, or to give excuses for sub-par performance. This is a common practice in the automotive industry, particularly with Infotainment System-related issues. By denying the existence of a defect, manufacturers can play on the consumers' lack of

technical expertise and avoid implementing potentially costly fixes for years, or at least until the vehicles are out of warranty. When remedial measures are taken, such as "software updates" or "reprogramming," they are often through the issuance of service bulletins provided to dealers only that are narrowly crafted and underinclusive, as occurred here and set forth below.

15.     Had Defendants disclosed the Infotainment System Defect, Plaintiff and Class Members would not have purchased the Class Vehicles, would have paid less for them, or would have required Defendants to replace, or pay for the replacement of, the defective Infotainment System with a non-defective version before their warranty periods expired.

## THE PARTIES

**Plaintiff Constance Chiulli**

16.     Plaintiff Chiulli is a California citizen residing in Oakland, California.

17.     On or around May 27, 2019, Plaintiff Chiulli purchased a new 2019 Honda Civic from Walnut Creek Honda, an authorized Honda dealership in Walnut Creek, California.

18.     Plaintiff Chiulli purchased her vehicle primarily for personal, family, or household use.

19.     Passenger safety and reliability were important factors in Plaintiff Chiulli's decision to purchase her vehicle. Before making her purchase, Plaintiff Chiulli, along with her partner, researched the Honda Civic online, including on the dealer website. At the dealership, Plaintiff Chiulli also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. Plaintiff Chiulli also discussed the safety features of the vehicle with dealership personnel, who made no reference to the Infotainment System Defect. Instead, the dealership salesperson told Plaintiff Chiulli that she was "very lucky to have Apple Car Play," and he performed a demonstration of the unit. Plaintiff Chiulli believed that the Civic would be a safe and reliable vehicle.

20.     Honda's omissions were material to Plaintiff Chiulli. Had Honda disclosed its knowledge of the Infotainment System Defect before she purchased her vehicle, Plaintiff Chiulli would have seen and been aware of the disclosures. Furthermore, had she known of the Infotainment System Defect, Plaintiff Chiulli would not have purchased her vehicle.

21.     Shortly after purchase, Plaintiff Chiulli began experiencing Infotainment System problems. Specifically, she discovered that her vehicle's infotainment system would not recognize her phone, its screen would go blank, its microphone would not function, and its cameras would not function. Such failures related to vehicle safety; for example, the failure of the vehicle's microphone meant that Plaintiff Chiulli was unable to make calls hands-free through the Infotainment System.

22.     On or around August 10, 2021, with 22,523 miles on the odometer, Ms. Chiulli brought her vehicle to Walnut Creek Honda, an authorized Honda dealer in Walnut Creek, California, complaining of display screen and phone connectivity problems. She asked the dealership personnel how often they saw these problems; the dealership personnel responded along the lines of "at least once a day" or "all the time." Regardless, although the dealer re-paired her phone, the dealership did not record Plaintiff's complaint on the repair order. Despite this repair attempt, Ms. Chiulli continued to experience the Defect.

23.     Subsequently, on April 26, 2022, with 29,589 miles on the odometer, Ms. Chiulli again brought her vehicle to Walnut Creek Honda, again complaining of display screen and phone connectivity problems. As with her previous visit, she asked the dealership about the frequency of these display screen and connectivity problems; once again, the dealership replied along the lines of "at least once a day" or "all the time." Likewise, the dealership again failed to record her complaint or properly diagnose the Defect, instead once again re-pairing Ms. Chiulli's phone.

24.     Despite bringing her vehicle to a Honda dealership—Honda's authorized agent for repairs—multiple times, Plaintiff Chiulli has not received a repair under warranty, and her vehicle continues to exhibit the Infotainment System Defect.

25.     As a result of the Infotainment System Defect, Plaintiff Chiulli has lost confidence in the ability of her Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff Chiulli will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although she would like to do so.

1      26.     At all times, Plaintiff Chiulli, like all Class Members, has driven her vehicle in a

2 manner both foreseeable and in which it was intended to be used.

3 **Defendants**

4      27.     Defendant AHM is a corporation organized and in existence under the laws of

5 the State of California and registered to do business in the State of California. AHM's Corporate

6 Headquarters are located at 1919 Torrance Boulevard, Torrance, California 90507. Founded in

7 1959, AHM is the wholly owned North American subsidiary of HMC. Discovery will show that

8 at all relevant times herein AHM was and is engaged in the business of designing,

9 manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles

10 and motor vehicle components in California and throughout the United States of America. AHM

11 also distributes all technical materials drafted by HMC intended to be used by authorized

12 dealerships in the service and repair of Honda branded vehicles. AHM also oversees certain

13 automobile product design and market research functions into its regional operations, as of April

14 1, 2021. AHM drafts and is responsible for providing the Monroney stickers on Honda vehicles

15 but does so with information provided by HMC. HMC has designated AHM as its representative

16 to interact with the National Highway Traffic Safety Administration and to fulfill its duties as a

17 manufacturer under federal law.

18      28.     In order to sell vehicles to the general public, AHM enters into agreements with

19 dealerships who are then authorized to sell Honda-branded vehicles to consumers such as

20 Plaintiff. In return for the exclusive right to sell new Honda vehicles in a geographic area,

21 authorized dealerships are also permitted to service and repair these vehicles under the

22 warranties AHM provides directly to consumers. These contracts give AHM a significant

23 amount of control over the actions of the dealerships, including sale and marketing of vehicles

24 and parts for those vehicles. All service and repairs at an authorized dealership are also

25 completed according to AHM's explicit instructions, issued through service manuals, TSBs,

26 and other documents, that were created with input from HMC. Per the agreements between

27 AHM and the authorized dealers, consumers such as Plaintiff can receive services under AHM's

28 issued warranties at dealer locations that are convenient to them. AHM has a nationwide

dealership network and operates offices and facilities throughout the United States. AHM distributes Honda parts and vehicles, which are then sold through Defendants' network of dealerships. Money received from the purchase of a Honda vehicle from a dealership flows from the dealer to AHM.

29.    Defendant HMC is a Japanese public multinational conglomerate founded in 1958 under the laws of Japan and headquartered in Tokyo, Japan. HMC designs, manufactures, and distributes automobiles, as well as parts, for Honda branded vehicles, and is the parent company of AHM and all other Honda-branded corporations headquartered in California. Discovery will show that the design and manufacture of Class Vehicles, including their component systems and any repairs or service necessary, is the primary focus of HMC. HMC also drafts all technical materials to be distributed by AHM for the service and repair of Honda vehicles. Discovery will show that the agreements which govern the relationship between HMC and AHM give HMC substantial control over the business operations of AHM, particularly with regards to the communications AHM distributes on HMC's behalf.

30.    Discovery will show that AHM and HMC jointly design, determine the substance of, and affix to its vehicles the window stickers visible on each new Honda vehicle that is offered for sale at its authorized dealerships, including those omitting mention of the Defect. These stickers were reviewed by Plaintiff and the Class prior to purchasing Class Vehicles. Defendants control the content of these window stickers; its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Honda are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231-1233, *et seq*. The Act specifically prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale.

65.    Defendants developed and disseminated the marketing materials to which Plaintiff and the Class were exposed, including owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, and other promotional materials relating to the Class Vehicles, all of

1    which fail to disclose the Defect.

2       31.    Defendants   designed,   manufactured,   constructed,   assembled,   marketed,

3    distributed, sold, and warranted the Class Vehicles, including Plaintiff's vehicle.

4                                    **JURISDICTION**

5       32.    This is a class action.

6       33.    Members of the proposed Class are citizens of states different from the home

7    states of Defendants.

8       34.    There are at least 100 members in the proposed class, and the aggregate claims

9    of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

10      35.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

11      36.    This Court has personal jurisdiction over Plaintiff because Plaintiff submits to

12   the Court's jurisdiction. This Court has personal jurisdiction over Defendants because AHM is

13   incorporated in this District; HMC conducts substantial business in this District through AHM;

14   and discovery will show that significant conduct involving Defendants giving rise to the

15   Complaint took place in this District.

16                                       **VENUE**

17      37.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff

18   Chiulli resides in Oakland, California, the conduct giving rise to this lawsuit occurred here,

19   AHM is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a), and AHM is

20   incorporated here, and Defendants are subject to personal jurisdiction here by conducting

21   business within the State of California. Plaintiff's counsel's Declaration of Venue, to the extent

22   required under California Civil Code section 1780(d), is attached hereto as **Exhibit 1**.

23                               **FACTUAL ALLEGATIONS**

24      38.    Defendants designed, manufactured, distributed, marketed, sold, and/or leased

25   the Class Vehicles. Defendants sold, directly or indirectly, through dealers and other retail

26   outlets, thousands of Class Vehicles in California and nationwide. Defendants warrant and

27   service the Class Vehicles through their nationwide network of authorized dealers and service

28   providers

39. "In-Vehicle Infotainment" or "Infotainment" is an automobile industry term that refers to vehicle systems that combine entertainment features, safety features, and information delivery to drivers. Infotainment systems use audio/video interfaces, touchscreens, keypads, and other types of devices to provide those services.[1]

40. Beginning with the 2016 model year and Honda's release of the 10th-generation Civic, all Honda Civics were sold with an Infotainment System standardly equipped. The Infotainment System consists of an audio-visual head or telematics unit, built into the top of the vehicle's central instrument panel, and, on models above an LX, a Driver Information Interface ("DII") built into the driver side instrument panel with controls in the steering wheel.

41. The Civic LX has a 5-inch Display Audio unit with USB and Bluetooth connectivity. The 5-inch (diagonal) display screen has conventional "hard" buttons and knobs to control the Infotainment System and illuminated steering wheel buttons to control the various functions.



Fig. 1. 5-inch Display Unit

42. The Civic EX, EX-T, EX-L, and Touring have a 7-inch Display Audio touchscreen, also with USB and Bluetooth connectivity, as well as Apple and Android connectivity. Consumers control the Infotainment System functions by swiping, tapping, and pinching the touchscreen. The system can also be controlled with the DII touchpad controls located on the left side of the steering wheel, as well as via voice commands.

---

[1] See, e.g., Burk, Michael. "The Evolution of In-Vehicle Infotainment Systems, part one." March 14, 2019, available at: https://www.micron.com/about/blog/2019/march/evolution-of-in-vehicle-infotainment-systems-part-one (last accessed September 13, 2022).

1
2
3
4
5
6
7

 

8   Fig. 2. 7-inch Display Unit



9
10
11
12
13
14
15

16   Fig. 3. DII Display and Controls

17   43.     All 2016 and newer Civic model years have a multi-angle rear-view camera

18   standardly equipped. Viewable on the Civic LX color LCD screen and the Civic EX and above

19   touchscreen, the rear-view camera will show top, normal, or wide views when the transmission

20   is engaged in reverse. The LX has static guidelines intended to help the driver better judge

21   distances, and the EX and above have dynamic guidelines intended to project the vehicle's

22   future path based on the driver's current steering angle.

  

23
24
25
26
27

28   Fig. 4. Rear-view Camera Displays in Class Vehicles

44.     Additionally, Honda touts the following as "Key Available Audio and Connectivity Features":

> 7-inch Display Audio touchscreen with integrated HVAC controls
> Android Auto and Apple CarPlay
> HondaLink connected-car system
> HondaLink Assist[1] (when paired with compatible phone)
> HD Radio
> Honda Satellite-Linked Navigation System with Voice Recognition and Honda HD Digital Traffic
> Smartphone-Based Navigation App Compatibility
> New-generation "2.0" SiriusXM Radio
> Pandora interface
> SMS Text Message function
> USB Audio Interface[2]

45.     Honda's Bluetooth Hands Free Link Interface is also standardly equipped in all Class Vehicles. It is designed to allow the driver to place or answer telephone calls, as well as play audio files, such as music, without removing hands from the steering wheel.

46.     Discovery will show that all Class Vehicles' Infotainment Systems operate off of substantially the same hardware, software, firmware, and operating system.

47.     Consumers complain that their vehicles' camera images flicker, freeze, and/or fail, their display screen flickers, freezes, and/or fails, error messages (including a "no device connected" message despite device being connected) suddenly illuminate, their display screens and all associated functionalities crash, their Bluetooth connections fail, their USB connections fail, they are unable to receive incoming calls or make outgoing calls, their navigation fails, and their display screens fail and suddenly go blank, black, or blue, all of which can cause the driver to become distracted. In this manner, the lifespan of the Infotainment Systems in the Class Vehicles is unreasonably short.

48.     In TSB 18-001, issued only to its dealerships but not its customers, Honda has admitted that various manifestations of the Infotainment System Defect in 2017-2018 model year Class Vehicles may be attributed to "a problem with the audio/audio-navigation unit software, which may lead to one or more of the following symptoms:"

---

[2] See, e.g., Honda Media Newsroom, 2016 Honda Civic Press Kit, available at: https://hondanews.com/en-US/releases/2016-honda-civic-sedan-press-kit-overview?page=178 (last accessed September 14, 2022).

- Audio unit does not connect to last known phone
- Home screen background color changes after factory reset
- Home screen defaults to standard setting after factory data reset
- **Unknown Host Exception** message appears
- Phone function screen crashes
- Private mode is shown on the meter when making phone calls
- **Check Tuner** message appears on Sirius XM screen
- Unable to switch music source
- *Bluetooth*® Audio still playing when receiving calls
- Navigation guidance does not stop when voice recognition activated

- Apple CarPlay™ disconnects by itself
- Apple CarPlay does not start
- Music does not resume after phone call in Apple CarPlay
- *Bluetooth* Audio does not resume after hands-free call has ended
- USB devices not recognized
- Voice recognition does not start
- Unable to cancel TA announcements using SW back button
- Navigation Satellite icon flashing although satellites information is being received
- SIRI icon on display does not disappear
- AM radio stations have a lot of static and much louder at volume level 5

- Electronic parking brake command in Spanish is incorrect
- LaneWatch® camera image flickers
- Navigation longitude and latitude speech message is to quick
- Vehicle position does not show on map
- GPS signal not received
- Apple CarPlay screen is black
- Apple CarPlay displays **No Device Connected** message
- Unable to use steering switch fast forward function
- Clock on full screen showing **0:00**
- Screen does not react to climate button being pressed
- Screen freezes when changing from *Bluetooth*® to Apple CarPlay screen
- **No *Bluetooth* connected** message appears although phone is still connecting
- Call history not shown
- Unable to switch to LaneWatch camera
- *Bluetooth* Audio sound skips
- Audio unit on but meter display says off
- Trip history does not show MPG information
- ADA unit thinks vehicle is moving when it is stationary

- Blue patches appear on display
- AHA app starts by itself
- ADA shows Apple CarPlay screen after text message received
- Phone menu screen layout is different
- Phone book entries will not display in meter screen
- Volume output does not match volume indicator on the display
- When switching between BTA and Apple CarPlay, Apple CarPlay display goes black
- Compass stays on N on meter display
- Service item B not displayed on maintenance info screen
- Clock is off by 1 hour
- USB displays **Loading** message
- Unable to answer receiving call
- AM radio stations have a lot of static.
- *Bluetooth* HandsFreeLink® noise when adjusting volume
- Display not dimming
- Display goes black while receiving a call when Apple CarPlay is connected and using steering remote to change source

Fig. 5. Defect symptoms as listed in TSB 18-001.

49.     Discovery will confirm that the Infotainment Defect in all Class Vehicles is caused by improperly designed, programmed, and/or calibrated software in the Class Vehicles.

50.     The Infotainment System Defect alleged is inherent in, and the same for, all Class Vehicles.

51.     Discovery will show that Honda was aware of material facts regarding the

Infotainment System Defect but failed to disclose them to consumers. As a result of this failure, Plaintiff and Class Members have been damaged.

**The Infotainment System Defect Poses an Unreasonable Safety Hazard**

52.     The Infotainment System Defect poses an unreasonable safety hazard. The Defect causes drivers to become distracted, by impairing or rendering inoperative many of the Infotainment System's safety features.

53.     For example, once the Defect has manifested, the driver is unable to navigate to the needed function because the display is inoperative. Thus, a driver often cannot, among other things: (1) pair an electronic device using Bluetooth; (2) answer calls or make calls, even if the driver's cellular phone was paired via Bluetooth before the Defect manifested; or (3) use the navigation system by viewing nearby vendors, such as gas stations, on the display, or entering destinations into the navigation system.

54.     Even more troubling, the Defect often results in distortion, masking, or canceling out of the rear-view camera's images, rendering the camera unusable. Rear-view cameras are required safety devices in all passenger automobiles. *See* 49 CFR § 571.111 (2018).

55.     Drivers become accustomed to the use of the back-up and blind-spot cameras, and their driving habits naturally adapt accordingly. Thus, when these video feeds become unreliable, they cause unsafe conditions in several ways. For example, when the blind spot feed fails, drivers continue to, out of habit, look at the blank screen for cues about blind spots and obstructions, only to realize the screen is blank and that they must adjust their driving behaviors in real time, disregarding the blank screen and turning around to look out of the windows. Those few seconds are of critical importance, and the need to adjust one's habits and correct for the Defect clearly contributes to the risk of collisions and injuries.

56.     Likewise, a reliable, real-time feed for the back-up camera is critical for safety. A freezing back-up camera feed can give the driver the false impression that there are no obstructions behind their vehicle as they reverse. If a small child were to approach the vehicle with the camera frozen, the driver would be unable to see them and be fooled by the system into believing they could safely continue to reverse.

57.     In addition to the obvious safety risk that an inoperable rear-view camera poses to drivers who may not see obstructions or small children and animals that would otherwise be visible in the Infotainment System display, the Defect causes distracted driving and presents an unreasonable safety hazard instead of enhancing safety, as advertised.

58.     For example, in 2017, distracted driving killed 3,166 people. According to the Centers for Disease Control ("CDC"), there are three types of distracted driving: (1) visual (*i.e.,* not focusing on the road); (2) cognitive (*i.e.*, thinking about something other than the road and immediate driving needs); and (3) manual (*i.e.*, physically taking one's hands off the steering wheel).[3]

59.     The Infotainment System Defect poses a safety risk by distracting drivers in all three ways highlighted by the CDC: (1) drivers are unable to read or see the screen clearly, causing them to divert their eyes from the road longer than under normal conditions; (2) drivers become focused on, and frustrated by, the malfunctioning display while driving; and (3) when the display works intermittently or inconsistently, drivers must remove their hands from the steering wheel more frequently and for longer periods of time than when the Infotainment System functions as it was advertised to do.

60.     Federal law requires automakers like Honda to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

61.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety related. *Id.* Thus, Honda knew or should have known of the many complaints about the

---

[3] *See* NHTSA, "U Drive. U Text. U Pay" available at: https://www.NHTSA.gov/risky-driving/distracted-driving (last accessed September 13, 2022).

Infotainment System Defect logged by NHTSA Office of Defects Investigation (ODI). The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, Honda to the Infotainment System Defect.

62.     With respect solely to the Class Vehicles, the following are but a few examples of the many complaints concerning the Infotainment System Defect which are available through NHTSA's website, www.safercar.gov. Many of the complaints reveal that Honda, through its network of dealers and repair technicians, has been made aware of the Infotainment System Defect. In addition, the complaints indicate that despite having knowledge of the Infotainment System Defect and even armed with knowledge of the exact vehicles affected, Honda often refused to diagnose the defect or otherwise attempt to repair it while Class Vehicles were still under warranty.

a.  **DATE OF INCIDENT:** October 8, 2021
**DATE COMPLAINT FILED:** January 16, 2022
**NHTSA/ODI ID:** 11447688
**SUMMARY:** In early October 2021, my infotainment display screen stooped working. As a consequence, my rear view, and right side view cameras no longer show on the display screen. This has become a safety issue for me because I cannot see if other vehicles are in the right lane when I am planning to change to the right lane, or planning to make a right turn. Also, I can no longer rely on my rear view camera when I am trying to back out of a parking spot, or my driveway. I took my car back to the dealer, and they told me that this HAS NOT been reported by other 2020 Honda Civic owners. They also told me that they need to order the part to repair it, but that it will take 2-6 weeks for the part to arrive. It has now been over 12 weeks and the part has not arrived. During the past 12 weeks, there were a few times where other drivers had to blow their horns at me as I tried to pass into the right lane. I have also had a few close encounters with pedestrians while I was backing out of a parking lot in shopping centers. Have any other 2020 Honda Civic owners reported problems with their infotainment display screens not working? Thank you

b.  **DATE OF INCIDENT:** December 19, 2019
**DATE COMPLAINT FILED:** March 5, 2020
**NHTSA/ODI ID:** 11316231
**SUMMARY:** AUDIO SYSTEM WILL INTERMITTENTLY DISABLE SOUND OUTPUT ON ALL CHANNELS: BLUETOOTH, AM, FM, XM RADIO, PHONE CALLS, ETC. CAR AUDIO AMPLIFIER OVER HEATING. TEMPERATURE MEASURED AT 197 DEGREES F. RISK OF FIRE. IN ORDER TO RESUME AUDIO OUTPUT, VEHICLE MUST BE COMPLETELY SHUTDOWN AND RESTARTED. WHEN THE RADIO IS

OPERATIONAL FOR A CERTAIN PERIOD OF TIME AT A CERTAIN VOLUME IT OVERHEATS AND SHUTS DOWN.

c. **DATE OF INCIDENT:**     February 1, 2020
**DATE COMPLAINT FILED:** February 23, 2020
**NHTSA/ODI ID:**11310910
**SUMMARY:** THE COMPUTER SYSTEM IS UNSTABLE AND MALFUNCTIONS ROUTINELY BY ALL EQUIPMENT SYMBOLS FLASHING MALFUNCTIONS SIMULTANEOUSLY. ADDITIONALLY, THE AC AND HEATER HAVE FAILED AFTER ONLY 5000 MILES DRIVEN. THE ENTIRE AC SYSTEM IS SCHEDULED TO BE REPLACED.

d. **DATE OF INCIDENT:** May 11, 2022
**DATE COMPLAINT FILED:** May 11, 2022
**NHTSA/ODI ID:** 11464214
**SUMMARY:** When selecting Reverse, the rearview camera usually displays quickly, but sometimes takes several seconds to display, or doesn't display at all (the screen remains black). This detracts from my ability to reverse safely. The radio / vehicle information display usually responds quickly to a button press, but sometimes can take several seconds to respond. Since I don't anticipate the delay, I tend to continue watching the screen while I'm waiting for it to react, instead of paying attention to the road. Especially while driving at highway speeds, these intermittent, variable delays can take my attention away from the road for a dangerous amount of time before I realize I'm not watching the road as I should be. Since the rearview camera uses the radio display, I think these issues may be related. This has been going on since the car was new.

e. **DATE OF INCIDENT:** July 19, 2020
**DATE COMPLAINT FILED:** August 7, 2020
**NHTSA/ODI ID:** 11343876
**SUMMARY:** I STARTED THE VEHICLE. MONITOR SCREEN WAS ALL BLACK (RADIO/ AC CONTROL PANEL). TURNED CAR OFF TO SEE IF SCREEN WOULD RESET. I TRIED BUTTON TO SEE IF SIDE TURN CAMERA WOULD TURN ON OR RESET ISSUE. IT DID NOT. DROVE 26 MILES SCREEN ALL BLACK. NO SIDE TURN BLINKER. NO RADIO. PARKED RESTARTED CAR 4 MORE TIMES. SCREEN STILL ALL BLACK. ERROR CODE APPEARED STATING 'DALAUNCHER ISN'T RESPONDING. WOULD YOU LIKE TO CLOSE IT'

f. **DATE OF INCIDENT:** November 21, 2019
**DATE COMPLAINT FILED:** November 21, 2019
**NHTSA/ODI ID:** 11281488
**SUMMARY:** SEVERAL ISSUES WITH THE TOUCH SCREEN, WHEN COLD OUT THE SCREEN WILL NOT COME ON, ONLY DISPLAYS A BLANK WHITE SCREEN. THIS REQUIRES SEVERAL RESTARTS, SCREEN GOES BLANK (BLACK) LOSE ALL CONTROLS AND RADIO. EVEN AFTER PULLING OVER AND RESTARTING THE VEHICLE SEVERAL TIMES, SOMETIMES IT WILL NOT COME BACK ON FOR MILES AND THEN COMES IN AND OUT UNTIL IT FULLY REBOOTS.

1

2

3

WILL MAKE A TONE AND SHUT DOWN THE ENTIRE SCREEN DURING NAVIGATION AND AFTER PULLING OVER AND RESTARTING THE VEHICLE SEVERAL TIMES, WILL SOMETIMES NOT RE-ENGAGE NAVIGATION AT ALL, UNTIL NEXT DAY.

4

5

6

7

g. **DATE OF INCIDENT:** July 1, 2019
h. **DATE COMPLAINT FILED:** July 1, 2019
**NHTSA/ODI ID:** 11228617
**SUMMARY:** ON THE 1ST OF JULY 2019. AFTER I START THE CAR IN THE MORNING, THEN I PUT IT INTO REVERSE GEAR TO BACK UP FROM THE PARKING SPACE. BUT THE BACKUP CAMERA TURNS THE PURPLE SCREEN.

8

9

10

11

12

i. **DATE OF INCIDENT:** June 17, 2019
**DATE COMPLAINT FILED:** June 17, 2019
**NHTSA/ODI ID:** 11220533
**SUMMARY:** BACK UP CAMERA IS FUZZY WITH VERY LOW RESOLUTION ESPECIALLY DURING THE EVENING OR LOWER DAYLIGHT. THIS MAY CAUSE SERIOUS INJURY SINCE RESOLUTION IS VERY POOR. CAMERA LENS IS NOT DIRTY OR SCRATCHED.

13

14

15

16

17

18

19

20

j. **DATE OF INCIDENT:** August 22, 2018
**DATE COMPLAINT FILED:** January 14, 2019
**NHTSA/ODI ID:** 11169979
**SUMMARY:** 2018 HONDA CIVIC - EX-L INFOTAINMENT SCREEN (RADIO, HEAT, NAVIGATION SYSTEM, A/C, ETC CONTROLS TOUCHSCREEN) WILL FLASH OFF AND ON WHILE DRIVING INCLUDING DURING BACKUP CAMERA AND NAVIGATION SYSTEM USE. ISSUE IS INTERMITTENT AND NOT PREDICTABLE. HONDA DEALERSHIP HAS ATTEMPTED TWO RE-FLASHES OF THE SOFTWARE TO CORRECT THE ISSUE WITH NO POSITIVE RESULT. HONDA REPRESENTATIVE STATES THAT THE ISSUE HAS NO RESOLUTION AND WILL DO NOTHING FURTHER TO CORRECT THE ISSUE ON MY VEHICLE AND MAY HAVE A FIX AT SOME POINT IN THE FUTURE.

21

22

23

24

25

26

27

28

k. **DATE OF INCIDENT:** July 11, 2018
**DATE COMPLAINT FILED:** January 29, 2018
**NHTSA/ODI ID:** 11110782
**SUMMARY:** (4 COMPLAINTS, ALL POSSIBLY ELECTRICAL) 1) KEY NOT DETECTED IN VEH ERROR, WHILE DRIVING VEHICLE, I HAVE THE KEY NOT CONNECTED TO ANYTHING AND NO LONGER IN A POUCH, MY CAR BEEPS AND SAYS "KEY NOT DETECTED IN THE VEHICLE) THIS HAS HAPPENED WHILE DRIVING ON THE STREET AND FREEWAY. IT IS A RANDOM OCCURRENCE BUT HAPPENS ON A DAILY BASIS. 2) BLUETOOTH IS NOT CLEAR ON THE PERSON SPEAKING TO ME'S SIDE. OTHER PERSON STATES AS WELL AS HONDA TECH LINE STATES IT IS UNCLEAR, MUFFLED, AND LOUD INTERFERENCE WITH MY VOICE HAPPENS WHILE USING BLUTOOTH. 3) CAR PLAY: DUE TO BLUETOOTH ISSUE I STARTED ONLY TAKING CALLS WHILE USING

CAR PLAY. ONCE I STARTED USING I STARTED HAVING THE ISSUE OF IT STATING RANDOMLY AFTER BEING SUCCESSFULLY CONNECTED"CAR PLAY NOT SUPPORTED" WHILE IN THE MIDDLE OF A CALL IT WILL DISCONNECT AND I WILL HAVE TO PULL OVER TO ATTEMPT TO RECONNECT. RIGHT AFTER CAR PLAY WILL CONNECT AGAIN AND WORK UNTIL IT RANDOMLY DISCONNECTS AGAIN SAYING CAR PLAY NOT SUPPORTED. NOTE: WITH CAR PLAY AND BLUETOOTH ISSUE I HAVE TAKEN CAR INTO DLR MULTIPLE TIMES STARTING WITH THE DAY AFTER THE VEH WAS PURCHASED IN 1/29/2018 NO RESOLUTION SO FAR TO DATE. DLR HAS REPLACED MICROPHONE, AND STILL NO RESOLUTION AS OF YET 4) DRIVER WINDOW MAKES WEIRD SOUND LIKE IT IS COMING OFF THE TRACK, TOOK INTO DLR AND THEY REPLACED THE MOTOR FOR THE WINDOW, THE WINDOW STILL HAS ISSUE. ** I HAVE MORE PHOTOS OF RECORDS FROM TAKING VEH INTO DLRSHIP. BUT THIS FORM ONLY ALLOWS ME TO UPLOAD 5

**DATE OF INCIDENT:** September 30, 2018
**DATE COMPLAINT FILED:** September 30, 2018
**NHTSA/ODI ID:** 11132370
**SUMMARY:** SIDE PASSENGER LANE WATCH CAMERA INTERMITTENTLY DOESN'T TURN ON CREATING A SAFETY ISSUE.

l.  **DATE OF INCIDENT:** December 16, 2016
**DATE COMPLAINT FILED:** March 23, 017
**NHTSA/ODI ID:** 10968167
**SUMMARY:** TL* THE CONTACT OWNS A 2017 HONDA CIVIC. THE CONTACT STATED THAT THE VEHICLE'S NAVIGATION SYSTEM FAILED. ALTHOUGH THEY WERE ON THE FREEWAY, THE NAVIGATION SYSTEM RE-ROUTED THEM AS THOUGH THEY WERE ON THE STREET. THE CONTACT ALSO STATED THAT THE VEHICLE'S RADIO FAILED. THE FAILURES OCCURRED WITHOUT WARNING. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE SYSTEM NEEDED A SOFTWARE UPDATE. THE VEHICLE WAS REPAIRED; HOWEVER, THE RADIO STILL FAILED. THE VEHICLE WAS TAKEN BACK TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE TUNER AND ANTENNA NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED, BUT THE REARVIEW AND PASSENGER SIDE CAMERAS FAILED. THE VEHICLE WAS AGAIN RETURNED TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE ELECTRICAL CONSOLE NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 4,900.

m.  **DATE OF INCIDENT:** November 5, 2020
**DATE COMPLAINT FILED:** January 25, 2021
**NHTSA/ODI ID:** 11389867
**SUMMARY:** MY 2017 HONDA CIVIC EX-T COUPE SHUTS DOWN MY DIGITAL SCREEN AND AUDIO SYSTEM WITH THE MESSAGE "AMP IS

IN PROTECTION MODE" THIS THEN MAKES ANY HANDS FREE DEVICES TURN COMPLETELY OFF FROM THE CAR. THIS IS A SAFETY ISSUE BECAUSE IN MY STATE, CELL PHONES AND ANY OTHER FORM OF ELECTRONICS ARE NOT PERMITTED. SO WHEN BEING ON THE PHONE OR USING GPS IT SHUTS EVERYTHING DOWN AND THATS A MAJOR SAFETY CONCERN. I RECENTLY WENT TO MANY HONDA DEALERS AND THEY HAVE CONTACTED HONDA NORTH AMERICA BUT THEY TOLD ME HONDA DOES NOT KNOW WHAT THE PROBLEM COULD BE AND THAT THEY RECALLED THE 2016 HONDA CIVICS FOR A SIMILAR ISSUE, BUT SINCE THEY DIDN'T RECALL THE 2017 HONDA CIVICS THEN THERE IS NOTHING THEY CAN DO. THIS PROBLEM IS STRESSING ME OUT BECAUSE I CAN'T FOLLOW THE DIRECTIONS ON MY GPS OR ANSWER IMPORTANT CALLS IF NEEDED. ALSO I WENT TO AUDIO TECHS WHO TOLD ME THIS IS THE MOST BIZARRE SITUATION THEY'VE EVER EXPERIENCED. I DO NOT THINK IT IS FAIR FOR ME TO PAY ALL OF THIS MONEY ON MY NEW CAR (ONLY OWNED FOR 3 MONTHS). I AM ALSO A FIRST TIME BUYER AND THIS MAKES ME REGRET EVER BUYING A CAR! THE VEHICLE IS ON FOR A FEW MINUTES AND THEN THE MESSAGE OCCURS AND THEN SHUTS OFF EVERYTHING. I EVEN GOT MY WHOLE AUDIO SYSTEM AND AMP TAKEN OUT FOR FURTHER TESTS AND NO-ONE SEEMS TO KNOW. IF YOU GUYS CAN HELP IN ANYWAY TO RECALL THE 2017 CIVICS WITH THIS ISSUE THAT WOULD BE GREATLY APPRECIATED. THANK YOU.

n. **DATE OF INCIDENT:** Augst 20, 2020
**DATE COMPLAINT FILED:** August 28, 2020
**NHTSA/ODI ID:** 11351896
**SUMMARY:** THE HEAD UNIT/DISPLAY STOPPED WORKING ABOUT A WEEK AGO. AT FIRST, NOTHING WOULD COME ON. I THOUGHT IT MAY HAVE BEEN A FUSE, OR IT NEEDED REBOOTED. I DISCONNECTED THE BATTERY AND IT STILL CONTINUED TO ACT UP. THE BACK-UP AND PASSENGER SIDE CAMERAS WON'T WORK PROPERLY, THE CLIMATE CONTROLS WON'T WORK AS I CAN'T CHANGE THE AIR FLOW OR TEMPERATURE, THE BLUETOOTH WON'T WORK OR CONNECT, AND THE AUDIO CONTROLS WON'T WORK OR ARE SEVERELY DELAYED. THIS CREATES MULTIPLE SAFETY ISSUES WHILE DRIVING: 1. THE AUDIO WILL RANDOMLY TURN ON, AND AT HIGH VOLUMES DUE TO THE FACT THAT I CANNOT CONTROL THE VOLUME OR TURN IT ON OR OFF. 2. THE BACK-UP AND/OR SIDE CAMERAS WILL GET STUCK ON THE SCREEN, WHICH CREATES A DISTRACTION WHILE DRIVING. 3. THE BLUETOOTH WON'T WORK, WHICH IS A HUGE SAFETY CONCERN DUE TO 'HANDS-FREE' LAWS IN MOST STATES. 4. THE CLIMATE CONTROLS WON'T WORK CORRECTLY AND, THEREFORE, I CANNOT USE THE FRONT DEFROST. WHEN TAKEN TO THE HONDA DEALERSHIP, THEY CLAIM THAT IT WILL COST $4,000 TO REPLACE. $4,000 ON A 3-YEAR OLD VEHICLE, WITH NO OTHER MAJOR ISSUES.

o. **DATE OF INCIDENT:** November 8, 2019

**DATE COMPLAINT FILED:** November 8, 2019
**NHTSA/ODI ID:** 11278820
**SUMMARY:** I HAVE HAD ISSUES WITH MY NAVIGATION SYSTEM WHEN I PLUG IN MY PHONE INTO THE JACK IN THE CAR. I HAVE DRIVEN MY VEHICLE TO MY HONDA DEALER AND THEY WITNESSED MY VEHICLE ACTUALLY REMOVE MY PHONE AND REPLACE IT WITH SOMEONE ELSE'S PHONE IN MY VEHICLE. MY VEHICLE WILL NOT RECOGNIZE THE PHONE ALSO EVEN THOUGH I HAVE MY BLUETOOTH ON MY I PHONE AND IT WILL NOT PAIR WITH MY VEHICLE AS WELL NUMEROUS TIMES. THE TECH AT HONDA STATED TO ME IT IS AS IF SOMEONE ELSE IS CONTROLLING THE VEHICLE THROUGH YOUR RADIO FREQUENCY. MY CAR HAS BEEN UNLOCKED AT TIMES. ETC. I ASKED HOW THIS CAN OCCUR AND HE STATED IF SOMEONE HAS YOUR RADIO ID OR YOUR KEY FOB NUMBERS. THIS IS STILL OCCURRING EVEN THOUGH HONDA RE SET THE NAVIGATION SYSTEM AND SETTINGS TO FACTORY DEFAULT. NOW MY TRUNK WILL NOT STAY CLOSED IF SOMETHING IS IN THE TRUNK. HAPPENS AT ALL TIMES IN MOTION, STAYING STILL.

### Customer Complaints on Third-Party Websites

63.     Similarly, complaints posted by consumers in internet forums demonstrate that the defect is widespread and dangerous and that it can manifest without warning and/or suitable repair. The complaints also indicate Honda's awareness of the problems with the Infotainment System and how potentially dangerous the defect is for consumers. The following are a sample of consumer complaints (spelling and grammar mistakes remain as found in the original):

64.     On carproblemzoo.com, a consumer of a 2017 Honda Civic posted the following:

july 2017 is when I first noticed my car automatically re-setting while I was driving down the florida turnpike at legal speed of 70 miles an hour! all of a sudden the car's dashboard illuminated with every colored warning light & a spinning-doted circle light as if car computer was searching for a signal or being remotely reset! the radio turned off, the screen went black, the computer dashboard flashed until finally the �h� Honda logo appeared on the radio screen resetting itself. Scaring me to believe the car was shutting down or about to malfunction while I was driving! three months later the radio, satellite, side mirror camera, rear backup camera every thing associated with the computer brain of this car completely went out! nothing

can be reset through the radio as it's just stuck. Honda dealership has no explanation other replacement for safety! dealership reached out to Honda for assistance as I've exceeded 36,000 mile complementary warranty. Honda actually took responsibility for this malfunction at first, stating they would pay/cover majority of cost leaving balace of $300. I found this to be crazy, as this electical malfunction was no fault of my own & should initiate recall! as I now have no way of knowing if all system warning lights are error or actual safety warnings! I have no rear camera or side mirror camera due to this radio/computer malfunction! this is a danger driving this car so I contacted Honda and explained I was willing to pay the $300 for replacement. Only to be told their offer to pay/cover malfunction errors was no longer on the table, giving no reason why offer was revoked! the claims adjuster and her manager then very rudely & disrespectfully hung up the phone! I feel unsafe everytime behind the wheel of this car! please aid in establishing a recall.

65.    On carproblemzoo.com, a consumer of a 2019 Honda Civic posted the following:

My camera that is supposed to assist in turning and seeing my blind spot is always malfunctioning in my new 2019 Civic. Honda says they can't do anything about that. I've already had to put new tires on my car - which I suspect didn't have new tires on it when I purchased my new car. Replace the battery, and my electronic features (radio screen and windows) like to stop working and go black - including my side camera that's meant to assist in lane changes. Additionally, my car melted in the sun. This has been a known issue with Honda since 2011 and they haven't addressed that issue or gave any warnings. My tires, and camera for blind spots is a safety issue and the fact that my car is unreliable and melting(!) is troublesome and a safety problem.

66.    On civicforums.com, a consumer of a 2019 Honda Civic posted the following:

I have a 2019 Civic Touring. I have had it for 6 weeks and have have to do a reboot on my infotainment system 7 times now. I use an iPhone XS Max with it. It occurs when I have stopped for gas or fast food and turn the car off. I then restart it and the Honda logo pops up and then the display goes BLANK. Nothing else works after this. I have to reboot the infotainment. I took it in to service at the Honda Dealership and they have nothing in their network regarding this for 2019 Civics.

I have rebooted my iPhone. My updates are consistently current on my iPhone. I have repaired the bluetooth with my iPhone and the intermittent issue continues. They could not duplicate it at the dealership (par for the course). I thought I would reach out to fellow civic owners for some help!

67.    On 10thcivicforum.com, another consumer posted the following:

I have had my 17' EX-L hatchback for about two weeks now and have about 200 miles on it. Everything was going great, but now all of a sudden the screen on my infotainment system flickers off every 30 seconds or so. I can't change radio stations, I can't power it off, I can't adjust AC, fan speed, or climate controls. None of the menu, power, power etc. buttons work on the left side of the screen. Any one else having same issue?

68.    On civicx.com, another consumer posted the following:

This happens almost all the time Anyone else been having their system act stupid? Mine doesn't turn on with the car and is non-responsive to any touch panel buttons, steering wheel controls or any other input probably 1 out of 10 starts. Eventually it will reboot while driving for a while, like it suddenly realized it was being stupid. Yesterday I had it lock up on me (stuck volume, no control over anything related to the infotainment) while I was in a drive thru. Was pretty annoying because I couldn't turn the music to hear the window guy. Help me because no one else does.

CLASS ACTION COMPLAINT

69.     On 10thcivicforum.com, another consumer posted the following:

> I have been having a lot of software issues with my 2016 EX-T. The Honda Link does not work most of the time, the clock will not update, the Bluetooth does not recognize my phone and the Android Auto hardly ever works and this is after having in the shop twice in the past 2 months! Anyone else having these issues?

**Honda Had Superior and Exclusive Knowledge of the Infotainment System Defect**

70.     Honda had superior and exclusive knowledge of the Infotainment System Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

71.     Discovery will show that before Plaintiff purchased her Class Vehicle, and since at least 2015, Honda knew about the Infotainment System Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to Honda and its dealers who are their agents for vehicle repairs, consumer complaints regarding earlier model years equipped with the same Infotainment System, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA (which Honda monitors), by developing TSBs in an effort to address the Infotainment System Defect, and through other aggregate data from Honda dealers about the problem. TSBs are issued exclusively to Honda's dealerships and service providers and are not disseminated to consumers, even if their vehicles receive services as outlined in the bulletins.

72.     Honda is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Honda conducts tests, including pre-sale durability testing, on incoming components, including the Infotainment System, to verify the parts are free from defect and align with Honda's specifications. Thus, Honda knew or should have known the Infotainment System was defective and prone to put drivers in a dangerous position due to the inherent risks of the Infotainment System Defect.

73.     Additionally, discovery will show that Honda knew of the impact of this defect from the sheer number of reports received from dealerships. Honda's customer relations

1  department, which interacts with individual dealerships to identify potential common defects,
2  has received numerous reports regarding the defect, which led to the release of TSBs and dealer
3  communications. Honda's customer relations department also collects and analyzes field data
4  including, but not limited to, repair requests made at dealerships, technical reports prepared by
5  engineers who have reviewed vehicles for which warranty coverage is being requested, parts
6  sales reports, and warranty claims data.

7  74.   Defendants' warranty department similarly analyzes and collects data submitted
8  by its dealerships to identify warranty trends in its vehicles. It is Defendants' policy that when
9  a repair is made under warranty the dealership must provide Honda with detailed documentation
10 of the problem and a complete disclosure of the repairs employed to correct it. Dealerships have
11 an incentive to provide detailed information to Defendants, because they will not be reimbursed
12 for any repairs unless the justification for reimbursement is sufficiently detailed.

13 75.   Well before the first Class Vehicle was sold, and as early as 2012, Honda knew
14 or should have known that the Infotainment Systems were defective in design and/or
15 manufacture and that the Defect would adversely affect the drivability of the Class Vehicles and
16 cause safety hazards, including driver distraction. Honda first began using Honda Link, as well
17 as substantially similar Infotainment Systems as the Class Vehicles, in 2013 Honda Accords, as
18 touted in multiple Honda press releases.[4]

19 76.   Indeed, beginning in 2014, Honda began a Customer Satisfaction Campaign,
20 referencing TSB No. 13-001, for 2013 Honda Accord owners and lessees, asking them to visit
21 "any authorized Honda dealer" for free repair to the "software for your audio or audio-

22

23 _____
   [4] *See* Honda Media Newsroom, All-New 2013 Honda Accord Brings Remarkable Levels
24 of Luxury, Agility, Efficiency and Sophistication to Midsize Segment's Legendary Nameplate
   (Sep. 5, 2012), available at:   https://hondanews.com/en-US/releases/release-
25 765a073c8fec45f187cf94af5947aca4-all-new-2013-honda-accord-brings-remarkable-levels-
   of-luxury-agility-efficiency-and-sophistication-to-midsize-segment-s-legendary-nameplate
26 (last accessed September 14, 2022); see also New Cloud-Based HondaLink™ Connected Car
   System Helps Drivers Put Away Their Phones While Maintaining Intuitive Access to Their
27 Favorite Media (July 18, 2012), available at:
28  https://hondanews.com/en-US/releases/release-c7d4bf687fb74cc3a591c8864529caf6-new-
   cloud-based-hondalink-connected-car-system-helps-drivers-put-away-their-phones-while-
   maintaining-intuitive-access-to-their-favorite-media (last accessed September 14, 2022).

navigation unit" in order to address "known audio, HandsFreeLink, and navigation system bugs."

77.     In February 2018, Honda issued TSB 18-001 for certain Class Vehicles. The TSB was titled "Audio Unit/Audio-Navigation Unit Update: XM Check Tuner Message, GPS Signal, Trip A History." Specifically, the TSB was issued to correct "a problem with the audio/audio-navigation unit software." It addressed many symptoms of the Defect, as shown in Figure 5 above. The only repair procedure prescribed by the TSB was to "update the audio unit software using the audio-navigation system update device." Discovery will show that the problem persisted despite these updates, and this TSB was superseded in June 2018, with TSB 20-23-001 Version 2. This revised TSB addressed the same concerns but updated the repair procedure images.

78.     In October 2020, Honda issued TSB 20-0889 for certain Class Vehicles. The TSB was titled "2018 Civic: Bluetooth HandsFreeLink Freezes After Calls: Voice Tags Are Missing at Startup." Specifically, the TSB was issued to correct a problem with the software that would result in the Bluetooth system and Infotainment System display "freezing." The only repair procedure prescribed by the TSB was to "update the audio unit software." Discovery will show that the problem persisted despite these updates.

79.     On January 22, 2021, Honda issued Communication No. 10186018-001, a Technical Information & Support Group ("TISG") priority action sent to authorized Honda dealers by Honda, stating it was "searching for certain 2016-2020 Civics with a customer complaint of the rearview camera screen appearing blank, foggy or blurry. To better understand the cause of this condition, AHM would like to collect specific information from the vehicle prior to you attempting a repair of any kind." The communication went on to provide instructions for providing the requested information to Honda. This TISG Communication was re-issued to all Honda authorized dealers on February 15, 2021, under Communication No. 10187531-001, and March 10, 2021, under Communication No. 10189043-001, using precisely the same language.

80.     On October 1, 2021, Honda issued communication no. 10202268-001, a TISG

priority action sent to authorized Honda dealers by Honda, stating it was "searching for certain 2019-2020 Civics (2dr or 4dr) & CR-Vs with a customer complaint of the audio screen turning black, blank or inop. To better understand the cause of this condition, AHM would like to inspect the vehicle prior to you attempting a repair of any kind." The communication went on to provide instructions for providing the requested information to Honda.

81.     On March 23, 2022, Honda issued Communication No. 10210077-001, a TISG priority action sent to authorized Honda dealers by Honda, stating it was "searching for certain 2017-2018 Civic & CR-Vs with a customer complaint of an inop, blank, or black meter display with no prior repairs. To better understand the cause of this condition, AHM would like to inspect the vehicle prior to you attempting a repair of any kind." The communication went on to provide instructions for providing the requested information to Honda. This TISG Communication was re-issued to all Honda authorized dealers on April 26, 2022, under Communication No. 10211113-001 and using precisely the same language.

82.     Discovery will show that each TSB, Customer Satisfaction Campaign, and TISG communication issued by Honda was approved by managers, directors, and/or executives at Honda. Therefore, discovery will show that Honda's managers, directors, and/or executives knew, or should have known, about the Infotainment System Defect, but refused to disclose the Infotainment System Defect to prospective purchasers and owners, and/or actively concealed the Infotainment System Defect.

83.     The existence of the Infotainment System Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiff and other Class Members known of the Infotainment System Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

84.     Reasonable consumers, like Plaintiff, expect that a vehicle's Infotainment System is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiff and Class Members further reasonably expect that Honda will not sell or lease vehicles with known safety defects, such as the Infotainment System Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Honda to conceal and fail

to disclose the Infotainment System Defect to them, and to then continually deny its existence.

**Honda Has Actively Concealed the Infotainment System Defect**

85.    Despite its knowledge of the Infotainment System Defect in the Class Vehicles, Honda actively concealed the existence and nature of the defect from Plaintiff and Class Members. Specifically, Honda failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

        (a)    any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the Infotainment System;

        (b)    that the Class Vehicles, including the Infotainment System, were not in good working order, were defective, and were not fit for their intended purposes; and

        (c)    that the Class Vehicles and their Infotainment Systems were defective, despite the fact that Honda learned of such defects as early as 2012.

86.    Discovery will show that when consumers present their Class Vehicles to an authorized Honda dealer for Infotainment System repairs, rather than repair the problem under warranty, Honda dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the Infotainment System Defect.

87.    Honda has caused Plaintiff and Class Members to expend money and/or time at its dealerships to diagnose, repair or replace the Class Vehicles' Infotainment System and/or related components, despite Honda's knowledge of the Infotainment System Defect.

**Defendants Have Unjustly Retained a Substantial Benefit**

88.    Discovery will show that Defendants unlawfully failed to disclose the alleged defect to induce Plaintiff and other putative Class Members to purchase or lease the Class Vehicles.

89.    Plaintiff further alleges that Defendants thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiff's.

90.    As discussed above, therefore, Plaintiff alleges that Defendants unlawfully induced her to purchase her Class Vehicle by concealing a material fact (the defective Infotainment System) and that she would have paid less for the Class Vehicle, or not purchased

1    it at all, had she known of the defect.

2        91.    Accordingly, Defendants' ill-gotten gains, benefits accrued in the form of

3    increased sales and profits resulting from the material omissions that did - and likely will

4    continue to - deceive consumers, should be disgorged.

5                        **Honda Authorized Dealers are Defendants' Agents**

6        92.    In promoting, selling, and repairing its defective vehicles, Honda acts through

7    numerous authorized dealers who act as, and represent themselves to the public as, exclusive

8    Honda representatives and agents. That the dealers act as Honda's agents is demonstrated by the

9    following facts:

10            (a)    The authorized Honda dealerships complete all service and repair

11       according to Honda's instructions, which Honda issues to its authorized dealerships

12       through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and

13       other documents;

14            (b)    Technicians at Honda dealerships are required to go to at least yearly

15       Honda-given trainings in order to remain certified to work on Honda-branded vehicles,

16       at which they receive training on proprietary systems, which provides guided, step-by-

17       step instructions on diagnosing and repairing Honda-branded vehicles;

18            (c)    Consumers are able to receive services under Honda's issued New

19       Vehicle Limited Warranty only at Honda's authorized dealerships, and they are able to

20       receive these services because of the agreements between Honda and the authorized

21       dealers. These agreements provide Honda with a significant amount of control over the

22       actions of the authorized dealerships;

23            (d)    The warranties provided by Honda for the defective vehicles direct

24       consumers to take their vehicles to authorized dealerships for repairs or services;

25            (e)    Honda dictates the nature and terms of the purchase contracts entered into

26       between its authorized dealers and consumers;

27            (f)    Honda controls the way in which its authorized dealers can respond to

28       complaints and inquiries concerning defective vehicles, and the dealerships are able to

1    perform repairs under warranty only with Honda's authorization;

2              (g)     Honda has entered into agreements and understandings with its

3    authorized dealers pursuant to which it authorizes and exercises substantial control over

4    the operations of its dealers and the dealers' interaction with the public, particularly the

5    advertising; and

6              (h)     Honda implemented its express and implied warranties as they relate to

7    the defects alleged herein by instructing authorized Honda dealerships to address

8    complaints of the Defect by prescribing and implementing the relevant TSBs cited

9    herein.

10             93.     Indeed, Honda's warranty booklets make it abundantly clear that Honda's

11   authorized dealerships are its agents for vehicle sales and service. The booklets, which are plainly

12   written for the consumers, not the dealerships, tell the consumers that to obtain warranty service,

13   "you should take your vehicle along with proof of the purchase date to a Honda automobile

14   dealer during normal service hours"; and "if your vehicle cannot be driven, contact the nearest

15   Honda automobile dealer for towing assistance."

16             94.     Accordingly, as the above paragraphs demonstrate, the authorized dealerships

17   are agents of Honda. Plaintiff and each of the members of the Class have had sufficient direct

18   dealings with either Honda or its agent dealerships to establish privity of contract between

19   Honda, on one hand, and Plaintiff and each of the members of the Class, on the other hand. This

20   establishes privity with respect to the express and implied warranty between Plaintiff and Honda.

21   It also establishes that Plaintiff was dealing with Honda through its authorized agent dealerships

22   when she was given the New Vehicle Limited Warranty associated with her vehicle, without any

23   ability to negotiate the terms of that Warranty.

24                          **Defendants' Warranties were Unconscionable**

25             95.     Plaintiff signed a contract for sale with a Honda authorized dealer, and with that

26   sale, was presented with the terms of the Warranty as drafted by Honda. While Plaintiff has some

27   ability to negotiate price of the vehicle, she has no ability to negotiate the terms of the Warranty.

28   Plaintiff had no bargaining power with respect to the Warranty, was presented with it as a *fait*

*accompli*, and had to accept it in the exact form in which it was presented to her, which occurred after the vehicle purchase transaction was completed. Plaintiff had no meaningful choice regarding any aspect of the Warranty or its terms, including durational limitations of time and mileage. The terms of the warranty unreasonably favored Defendants over Plaintiff and the members of the Class; a gross disparity in bargaining power existed as between Defendants and Class members; and Defendants knew or should have known that the Infotainment System Defect would manifest in the Class Vehicles both before and after the Warranty, thereby rendering the time and mileage limitations insufficient, inadequate, and unconscionable.

96.     Honda drafted the terms of the Warranty in part by using its exclusive, superior knowledge of the existence and likely manifestation of the Defect. Plaintiff and Class Members were entirely ignorant of the Defect when purchasing their Vehicles and when presented with the Warranty. Plaintiff's acceptance of the Warranty and its terms, including any disclaimers or durational limits, was neither knowing nor voluntary. Defendants knew or should have known at the time of sale that the Class Vehicles were defective and would fail prematurely solely because of a defect in design, materials, and workmanship, to wit, the Infotainment System Defect. Plaintiff and Class Members, on the other hand, had no notice of or ability to detect the Defect prior to purchasing the Class Vehicles. For this reason, the terms of the Warranty unreasonably favored Defendants over Plaintiff and Class Members, and Plaintiff's and Class Members' acceptance of the Warranty's durational limitations, to the extent they are found to apply so as to exclude instances where the Defect manifested outside of them, was neither knowing nor voluntary, thereby rendering such limitation unconscionable and ineffective.

97.     Honda's exclusive superior knowledge of the existence of the Defect and when it would manifest influenced its analysis of the Defect and whether it should pay for a recall (*i.e.,* if a defect is more likely to manifest within the durational limits, a recall is only fractionally more expensive than warranty repairs; if it is more likely to manifest outside those limits, a recall is exponentially more expensive than warranty repairs.)

98.     Plaintiff was also not aware and could not have been aware that Honda would willfully not inform her of the Defect which affects the safety of her vehicle and that the Defect

could manifest outside of the durational limit of the Warranty, despite Honda's knowledge of this. *See Carlson v. Gen. Motors Corp*., 883 F.2d 287 (4th Cir. 1989), cert. denied, 495 U.S. 904 (1990) (""proof that GM knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constituted 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable.'")

### TOLLING OF THE STATUTES OF LIMITATIONS

99.     Any applicable statute of limitations has been tolled by Honda's knowing and active concealment of the Infotainment System Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and members of the Class were deceived regarding the Class Vehicles and could not reasonably discover the Defect or Honda's deception with respect to the Defect. Honda and its agents continue to deny the existence and extent of the Defect, even when questioned by Plaintiff and members of the Class.

100.     Plaintiff and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or the Class Vehicles contained the Infotainment System Defect and the corresponding safety risk. As alleged herein, the existence of the Infotainment System Defect was material to Plaintiff and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and members of the Class could not have discovered through the exercise of reasonable diligence the existence of the Defect or that the Defendants were concealing the Defect.

101.     At all times, Honda is and was under a continuous duty to disclose to Plaintiff and members of the Class the true standard, quality, and grade of the Class Vehicles and to disclose the Infotainment System Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the Infotainment System in Class Vehicles.

102.     Honda knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiff and members of the Class reasonably relied on Honda's knowing, active, and affirmative concealment.

1  103. For these reasons, all applicable statutes of limitation have been tolled based on

2 the discovery rule and Honda's fraudulent concealment, and Honda is estopped from relying on

3 any statutes of limitations in defense of this action.

4         **CLASS ACTION ALLEGATIONS**

5  104. Plaintiff brings this lawsuit as a class action on behalf of herself and all others

6 similarly situated as members of the proposed Class pursuant to Federal Rules of Civil

7 Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality,

8 adequacy, predominance, and superiority requirements of those provisions.

9  105. The Class and Sub-Classes are defined as:

11    **Class**: All persons and entities in the United States who purchased or leased a Class Vehicle (the "Nationwide Class" or "Class").

13    **California Sub-Class**:  All members of the Nationwide Class who reside in the State of California.

14    **CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

16    **Implied Warranty Sub-Class**:  All members of the Nationwide Class who purchased or leased their vehicles in the State of California.

18  106. Excluded from the Class and Sub-Classes are:  (1) Defendants, any entity or

19 division in which Defendants have a controlling interest, and their legal representatives,

20 officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the

21 Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may

22 hear an appeal of any judgment entered; and (4) those persons who have suffered personal

23 injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and

24 Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-

25 Classes should be expanded or otherwise modified.

26  107. <u>Numerosity</u>:  Although the exact number of Class Members is uncertain, and can

27 only be ascertained through appropriate discovery, the number is significant enough such that

joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

108.   <u>Typicality</u>:   Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Honda. The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing the defective Infotainment System and/or its components. Furthermore, the factual bases of Honda's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

109.   <u>Commonality</u>:   There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

(a)   Whether Class Vehicles suffer from defects relating to the Infotainment System;

(b)   Whether the defects relating to the Infotainment System constitute an unreasonable safety risk;

(c)   Whether Defendants knew about the defects pertaining to the Infotainment System and, if so, how long Defendants have known of the defect;

(d)   Whether the defective nature of the Infotainment System constitutes a material fact;

(e)   Whether Defendants have had an ongoing duty to disclose the defective nature of the Infotainment System to Plaintiff and Class Members;

(f)   Whether Plaintiff and the other Class Members are entitled to equitable relief, including a preliminary and/or a permanent injunction;

(g)   Whether Defendants knew or reasonably should have known of the defects pertaining to the Infotainment System before they sold and leased Class

Vehicles to Class Members;

(h)    Whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Infotainment System and/or its components;

(i)    Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Infotainment System and/or its components;

(j)    Whether Defendants breached the implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act;

(k)    Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act;

(l)    Whether Defendants breached their express warranties under California Law; and

(m) Whether Defendants breached express warranties pursuant to the Magnuson-Moss Warranty Act.

110.    <u>Adequate Representation</u>:    Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to vigorously prosecute this action.

111.    <u>Predominance and Superiority</u>:    Plaintiff and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants'

misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**

**(Violation of California's Consumers Legal Remedies Act,**

**California Civil Code § 1750, *et seq*.)**

**(On Behalf of the CLRA Sub-Class)**

112.    Plaintiff Chiulli incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

113.    Plaintiff Chiulli brings this cause of action on behalf of herself and the CLRA Sub-Class.

114.    Defendants are "persons" as defined by California Civil Code § 1761(c).

115.    Plaintiff Chiulli and the CLRA Sub-Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

116.    By failing to disclose and concealing the defective nature of the Infotainment System from Plaintiff Chiulli and prospective CLRA Sub-Class members, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles and their Infotainment Systems had characteristics and benefits that they do not have and represented that the Class Vehicles and their Infotainment Systems were of a particular standard, quality, or grade when they were actually of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

117.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

118.    Defendants knew that the Class Vehicles and their Infotainment Systems suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

119.    As a result of their reliance on Defendants' omissions, owners and/or lessees of

the Class Vehicles, including Plaintiff Chiulli, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect, Plaintiff Chiulli and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Infotainment Systems and their components are substantially certain to fail before their expected useful life has run.

120.    Defendants were under a duty to Plaintiff Chiulli and the CLRA Sub- Class members to disclose the defective nature of the Infotainment System and/or the associated repair costs because:

(a)    Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Infotainment System;

(b)    Plaintiff Chiulli and the CLRA Sub-Class members could not reasonably have been expected to learn or discover that their Infotainment System had a dangerous safety defect until it manifested; and

(c)    Defendants knew that Plaintiff Chiulli and the CLRA Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

121.    In failing to disclose the defective nature of the Infotainment System, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

122.    The facts Defendants concealed from or failed to disclose to Plaintiff Chiulli and the CLRA Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had Plaintiff Chiulli and the CLRA Sub-Class members known that the Class Vehicles' Infotainment System was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

123.    Plaintiff Chiulli and the CLRA Sub-Class members are reasonable consumers who do not expect the Infotainment Systems installed in their vehicles to exhibit problems such as the Infotainment System Defect. This is the reasonable and objective consumer expectation relating to a vehicle's Infotainment System.

124.    As a result of Defendants' conduct, Plaintiff Chiulli and the CLRA Sub-Class

members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience problems such as the Infotainment System Defect.

125.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff Chiulli and the CLRA Sub-Class members suffered and will continue to suffer actual damages.

126.    Plaintiff Chiulli and the CLRA Sub-Class members are entitled to equitable relief.

127.    Plaintiff Chiulli provided Defendants with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a). If, within 30 days, Defendants fails to provide appropriate relief for its violations of the CLRA, Plaintiff Chiulli will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that she seeks now on behalf of herself and the CLRA Sub-Class.

## SECOND CAUSE OF ACTION

### (Violation of California Business & Professions Code § 17200, *et seq.*)

### (On Behalf of the California Sub-Class)

128.    Plaintiff Chiulli incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

129.    Plaintiff Chiulli brings this cause of action on behalf of herself and the California Sub-Class (CA Sub-Class).

130.    As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including Plaintiff Chiulli, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect, Plaintiff Chiulli and the CA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Infotainment System and/or its components are substantially certain to fail before their expected useful life has run.

131.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

132.   Plaintiff Chiulli and the CA Sub-Class members are reasonable consumers who do not expect their Infotainment Systems to exhibit problems such as frequent Infotainment System malfunction, freezing, or crashing, which in turn causes navigation, music/radio, display screen, Bluetooth/phone, and backup camera inoperability, and frequent replacement or repair.

133.   Defendants knew the Class Vehicles and their Infotainment Systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

134.   In failing to disclose the Infotainment System Defect, Defendants have knowingly and intentionally concealed material facts and breached its duty not to do so.

135.   Defendants were under a duty to Plaintiff Chiulli and the CA Sub-Class members to disclose the defective nature of the Class Vehicles and their Infotainment Systems because:

(a)   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Infotainment Systems; and

(b)   Defendants actively concealed the defective nature of the Class Vehicles and their Infotainment Systems from Plaintiff Chiulli and the CA Sub-Class.

136.   The facts Defendants concealed from or failed to disclose to Plaintiff Chiulli and the CA Sub-Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had they known of the Infotainment System Defect, Plaintiff Chiulli and the other CA Sub-Class members would have paid less for Class Vehicles or would not have purchased or leased them at all.

137.   Defendants continued to conceal the defective nature of the Class Vehicles and their Infotainment Systems even after Plaintiff Chiulli and the other CA Sub-Class members began to report problems.

138.   Defendants' conduct was and is likely to deceive consumers.

139.   Defendants' acts, conduct, and practices were unlawful, in that they constituted:

(a)   Violations of California's Consumers Legal Remedies Act;

(b)   Violations of the Song-Berly Consumer Warranty Act;

(c)   Violations of the Magnuson-Moss Warranty Act; and

(d)      Breach of Express Warranty under California Commercial Code § 2313.

140.    By their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

141.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

142.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff Chiulli and the other CA Sub-Class members have suffered and will continue to suffer actual damages.

143.    Defendants have been unjustly enriched and should be required to make restitution to Plaintiff Chiulli and the other CA Sub-Class members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

**THIRD CAUSE OF ACTION**

**(Breach of Implied Warranty Pursuant to Song-Beverly**

**Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

**(On Behalf of the Implied Warranty Sub-Class)**

144.    Plaintiff Chiulli incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

145.    Plaintiff Chiulli brings this cause of action against Defendants on behalf of herself and the Implied Warranty Sub-Class (IW Sub-Class).

146.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

147.    Defendants provided Plaintiff Chiulli and the IW Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles and their Infotainment Systems are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their Infotainment Systems

1    suffered from an inherent defect at the time of sale and thereafter and are not fit for their

2    particular purpose of providing safe and reliable transportation.

3        148.    Defendants impliedly warranted that the Class Vehicles were of merchantable

4    quality and fit for their intended use. This implied warranty included, among other things: (i) a

5    warranty that the Class Vehicles and their Infotainment Systems, which were manufactured,

6    supplied, distributed, and/or sold by Honda, would provide safe and reliable transportation; and

7    (ii) a warranty that the Class Vehicles and their Infotainment Systems would be fit for their

8    intended use.

9        149.    Contrary to the applicable implied warranties, the Class Vehicles and their

10   Infotainment Systems at the time of sale and thereafter were not fit for their ordinary and

11   intended purpose of providing Plaintiff Chiulli and the IW Sub-Class members with reliable,

12   durable, and safe transportation. Instead, the Class Vehicles are defective, including the

13   defective Infotainment Systems.

14       150.    The Infotainment System Defect is inherent and was present in each Class

15   Vehicle at the time of sale.

16       151.    As a result of Defendants' breach of the applicable implied warranties, owners

17   and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or

18   value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect,

19   Plaintiff Chiulli and the IW Sub-Class members were harmed and suffered actual damages in

20   that the Class Vehicles' Infotainment Systems and/or its components are substantially certain

21   to fail before their expected useful life has run.

22       152.    Defendants' actions, as complained of herein, breached the implied warranty that

23   the Class Vehicles were of merchantable quality and fit for such use in violation of California

24   Civil Code §§ 1792 and 1791.1.

25                                 **FOURTH CAUSE OF ACTION**

26        **(Breach of Express Warranty Pursuant to Cal. Com. Code §§ 2313, 10210)**

27                            **(On Behalf of the California Sub-Class)**

28       153.    Plaintiff Chiulli incorporates by reference the allegations contained in the

1    preceding paragraphs of this Complaint.

2        154.    Plaintiff Chiulli brings this cause of action on behalf of herself and the CA Sub-

3    Class.

4        155.    Defendants provided all purchasers and lessees of the Class Vehicles with an

5    express warranty described *infra*, which became a material part of the bargain. Accordingly,

6    Defendants' express warranty is an express warranty under California law.

7        156.    The Infotainment System was manufactured and/or installed in the Class

8    Vehicles by Defendants and is covered by the express warranty.

9        150.    In a section entitled "New Vehicle Limited Warranty," Defendants' express

10   warranty provides, in relevant part, that "Honda will repair or replace any part that is defective

11   in material or workmanship under normal use." The warranty further provides that "[a]ll

12   repairs/replacements made under this warranty are free of charge. The replaced or repaired parts

13   are covered only until this New Vehicle Limited Warranty expires."

14       152.    Defendants breached the express warranties by selling and leasing Class Vehicles

15   with Infotainment Systems that were defective, requiring repair or replacement within the

16   warranty period, and refusing to honor the express warranty by repairing or replacing, free of

17   charge, the Infotainment System. In addition, when Defendants did agree to pay a portion of the

18   costs, Defendants nevertheless breached the express warranty by simply replacing Class

19   Members' defective Infotainment Systems with similarly defective Infotainment Systems, thus

20   failing to "repair" the defect.

21       153.    Plaintiff was not required to notify Honda of the breach or was not required to

22   do so because affording Honda a reasonable opportunity to cure its breach of written warranty

23   would have been futile. Defendants were also on notice of the defect from complaints and

24   service requests it received from Class Members, from repairs and/or replacements of the

25   Infotainment Systems, and from other internal sources.

26       154.    As a direct and proximate cause of Defendants' breach, Plaintiff and the other

27   Class Members have suffered, and continue to suffer, damages, including economic damages at

28   the point of sale or lease. Additionally, Plaintiff and the other Class Members have incurred or

will incur economic damages at the point of repair in the form of the cost of repair.

155.    Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**

**(Breach of Express Warranty under the Magnuson-Moss Warranty Act,**

**15 U.S.C. § 2303 *et seq.*)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

**Against Defendants)**

157.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

158.    Plaintiff brings this cause of action on behalf of herself and on behalf of the Class against Defendants.

159.    Defendants provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain.

160.    The Infotainment System and its component parts were manufactured and/or installed in the Class Vehicles by Defendants and are covered by the express warranty.

161.    In a section entitled "New Vehicle Limited Warranty," Defendants' express warranty provides, in relevant part, that "Honda will repair or replace any part that is defective in material or workmanship under normal use." The warranty further provides that "[a]ll repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires."

162.    Defendants breached the express warranties by selling and leasing Class Vehicles with Infotainment Systems that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Infotainment System and its component parts. Honda has failed to "repair" the defects as alleged herein.

163.    Plaintiff was not required to notify Honda of the breach or were not required to

do so because affording Honda a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the defect from complaints and service requests they received from Class Members, from repairs and/or replacements of the Infotainment System, and from other internal sources.

164.    Plaintiff also provided notice to Honda of its breach of warranty claims under the MMWA by letters dated August 23, 2022. (Plaintiff Chiulli).

165.    As a direct and proximate cause of Defendants' breach, Plaintiff and the other Class members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff and the other Class members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

166.    Plaintiff and the other Class members are entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**SIXTH CAUSE OF ACTION**

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act,**

**15 U.S.C. § 2303 *et seq*.)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

**Against Defendants)**

167.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

168.    Plaintiff brings this cause of action on behalf of herself and the Class against Defendants.

169.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

170.    Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

171.    Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

172.    Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Infotainment Systems manufactured, supplied, distributed, and/or sold by Honda would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Infotainment Systems would be fit for their intended use while the Class Vehicles were being operated.

173.    Contrary to the applicable implied warranties, the Class Vehicles and their Infotainment Systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design and materials of their Infotainment Systems.

174.    Defendants' breach of implied warranties has deprived Plaintiff and Class members of the benefit of their bargain.

175.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

176.    Defendants have been afforded a reasonable opportunity to cure their breach, including when Plaintiff and Class members brought their vehicles in for diagnoses and Infotainment System repair.

177.    As a direct and proximate cause of Defendants' breach of implied warranties, Plaintiff and Class members sustained and incurred damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiff and Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

178.    As a result of Defendants' violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiff and Class members have incurred damages.

179.    Plaintiff also provided notice to Honda of its breach of warranty claims under the

1    MMWA by letter dated August 23, 2022.

2                          **SEVENTH CAUSE OF ACTION**

3                  **(For Fraud by Omission or Fraudulent Concealment)**

4    **(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

5                              **Against Defendants)**

6          180.    Plaintiff incorporates by reference the allegations contained in the preceding

7    paragraphs of this Complaint.

8          181.    Plaintiff brings this cause of action on behalf of herself and the Class or,

9    alternatively, on behalf of all Sub-Classes against Defendants.

10         182.    Defendants knew that the Class Vehicles suffered from an inherent Infotainment

11   System Defect, were defectively designed and/or manufactured, and were not suitable for their

12   intended use.

13         183.    Defendants concealed from and failed to disclose to Plaintiff and Class Members

14   the defective nature of the Class Vehicles.

15         184.    Defendants were under a duty to Plaintiff and Class Members to disclose the

16   defective nature of the Class Vehicles because:

17              a.  Defendants were in a superior position to know the true state of facts about

18                  the safety defect contained in the Class Vehicles;

19              b.  The omitted facts were material because they directly impact the safety of the

20                  Class Vehicles;

21              c.  Defendants knew the omitted facts regarding the Infotainment System Defect

22                  were not known to or reasonably discoverable by Plaintiff and Class

23                  Members;

24              d.  Defendants made partial disclosures about the quality of the Class Vehicles

25                  without revealing their true defective nature; and,

26              e.  Defendants actively concealed the defective nature of the Class Vehicles

27                  from Plaintiff and Class Members.

28         185.    The facts concealed or not disclosed by Defendants to Plaintiff and the other

Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. Whether a vehicle's Infotainment System is defective, which can suddenly cause lights to flash, screens to freeze, and safety systems such as cameras to stop functioning, which can suddenly distract the driver and thereby impair ability to control the vehicle, process and respond to safety threats, and greatly increase the risk of collision, is a material safety concerns. Had Plaintiff and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

186.    Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiffs and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff and Class Members' purchase or lease of Defendants' defective Class Vehicles.

187.    Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

188.    As a direct and proximate result of Defendants' misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiff and the Class reserve their right to elect either to (a) rescind their purchase or lease of the defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the defective Vehicles and recover damages.

189.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof

**EIGHTH CAUSE OF ACTION**

**(For Unjust Enrichment)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

**Against Defendants)**

190.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

191.    Plaintiff brings this cause of action on behalf of herself and the Class or, alternatively, on behalf of all Sub-Classes against Defendants.

192.    Defendants have received and retained a benefit from Plaintiffs and the members of the Class, and inequity has resulted.

193.    As a direct and proximate result of Defendants' failure to disclose known defects, Defendants have profited through the sale and lease of the Class Vehicles, the value of which was artificially inflated by Defendants' concealment of and omissions regarding the Infotainment System Defect. Defendants charged higher prices for the vehicles than the vehicles' true value, and Plaintiff and Class Members thus overpaid for the Class Vehicles. Although these vehicles are purchased through Defendants' authorized dealers and distributors, the money from the vehicle sales flows directly back to Defendants.

194.    Additionally, as a direct and proximate result of Defendants' failure to disclose known defects in the Class Vehicles, Plaintiff and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendants.

195.    Defendants have been unjustly enriched due to the known defects in the Class Vehicles through the use of money paid that earned interest or otherwise added to Defendants' profits when said money should have remained with Plaintiffs and Class Members.

196.    Plaintiff and Class Members were not aware of the true facts regarding the Defect in the Class Vehicles and did not benefit from Defendants' unjust conduct.

197.    As a result of the Defendants' unjust enrichment, Plaintiff and Class Members have suffered damages.

198.   Plaintiff does not seek restitution under her unjust enrichment claim. Rather, Plaintiff and Class Members seek non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of its unjust conduct.

199.   Additionally, Plaintiff seeks injunctive relief to compel Defendants to offer, under warranty, remediation solutions that Defendant identifies. Plaintiff also seeks injunctive relief enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendants from selling the Class Vehicles with the misleading information; compelling Defendants to provide Class members with a replacement components that do not contain the defects alleged herein; and/or compelling Defendants to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**RELIEF REQUESTED**

200.   Plaintiff, on behalf of herself and all others similarly situated, requests the Court enter judgment against Defendants, as follows:

(a) An order certifying the proposed Class and Sub-Classes, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(b) A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Infotainment System, including the need for periodic maintenance;

(c) An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to repair and eliminate the Infotainment System Defect from every Class Vehicle; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling Defendants to reform its warranty, in a manner deemed to be appropriate by

the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d) An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e) Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(f) A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles or make full restitution to Plaintiff and Class Members;

(g) An award of attorneys' fees and costs, as allowed by law;

(h) An award of pre-judgment and post-judgment interest, as provided by law;

(i) Leave to amend the Complaint to conform to the evidence produced at trial; and

(j) Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

201.    Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Local Rule 3-6, Plaintiff hereby demands a trial by jury of all issues in this action so triable.

Dated:  October 19, 2022                          Respectfully submitted,

**Capstone Law APC**


By: /s/ Laura E. Goolsby
Tarek H. Zohdy
Cody R. Padgett
Laura E. Goolsby

Attorneys for Plaintiff

CLASS ACTION COMPLAINT