1  Tarek H. Zohdy (SBN 247775)
   Tarek.Zohdy@capstonelawyers.com
2  Cody R. Padgett (SBN 275553)
   Cody.Padgett@capstonelawyers.com
3  Laura E. Goolsby (SBN 321721)
   Laura.Goolsby@capstonelawyers.com
4  Capstone Law APC
   1875 Century Park East, Suite 1000
5  Los Angeles, California 90067
   Telephone:    (310) 556-4811
6  Facsimile:    (310) 943-0396
   *[Additional Counsel on Signature Block]*
7
   Attorneys for Plaintiffs
8

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CONSTANCE CHIULLI, JOSHUA MEISEL, JACOB MONTGOMERY, JEDEDIAH BEECH, DAVID SUSSESLES, and THOMAS KREIDEL, individually, and on behalf of a class of similarly situated individuals, | Case No.: 3:22-cv-06225-MMC<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:** |
| Plaintiffs, |  |
| v. |  |
| AMERICAN HONDA MOTOR CO., INC., a California corporation, and HONDA MOTOR CO., LTD., a Japanese corporation,<br><br>Defendants. |  |

(1)  Violations of California's Consumers Legal Remedies Act
(2)  Violations of California's Unfair Competition Law
(3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act
(4)  Breach of Express Warranty under California law
(5)  Violations of the Maryland Consumer Protection Act
(6)  Breach of Express Warranty under Maryland law
(7)  Breach of Implied Warranty under Maryland law
(8)  Violations of the Michigan Consumer Protection Act
(9)  Breach of Express Warranty under Michigan law
(10) Breach of Implied Warranty under Michigan law
(11) Violations of the Virginia Consumer Protection Act
(12) Breach of Express Warranty under Virginia law
(13) Breach of Implied Warranty under Virginia law
(14) Breach of Express Warranty under the Magnuson-Moss Warranty Act
(15) Breach of Implied Warranty under the

(16)   Magnuson-Moss Warranty Act
      Fraudulent Concealment/Omission
(17)   Unjust Enrichment

**DEMAND FOR JURY TRIAL**

1.     Plaintiffs Constance Chiulli, Joshua Meisel, Jacob Montgomery, Jedediah Beech, David Susseles, and Thomas Kreidel ("Plaintiffs"), individually and on behalf of all persons in the United States who purchased or leased any 2016-2020 Honda Civic, Honda Accord, and Honda CR-V vehicles equipped with an integrated in-vehicle communication and entertainment system ("Infotainment System") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by American Honda Motor Company, Inc. ("AHM") and/or Honda Motor Co., Ltd. ("HMC") ("Class Vehicles" or "Vehicles"), bring this action against AHM and HMC (together, "Defendants" or "Honda"). Plaintiffs allege as follows:

## INTRODUCTION

2.     This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

3.     Defendants manufactured, marketed, distributed, and/or sold the Class Vehicles without disclosing that the Class Vehicles' Infotainment Systems were defective.

4.     Specifically, Plaintiffs are informed and believe, and based thereon allege, that the Infotainment System is defective in that it malfunctions, freezes, or crashes, which in turn causes the inoperability of one or more features (including, *inter alia,* the navigation; heating, ventilation, and air conditioning ("HVAC"); music/radio; display screen; Bluetooth/phone; and backup camera functionalities) (the "Infotainment System Defect" or "Defect"). As further described below, discovery will show that improperly designed and/or programmed/calibrated software results in these failures.

5.     Among the most concerning is the failure of the back-up camera images to accurately depict the conditions behind the vehicle. Drivers, including Plaintiffs, become accustomed to the driver assist features in the infotainment system, including in particular the back-up camera and the right-side blind spot camera. Moreover, back-up cameras are now required standard equipment on vehicles produced after May 1, 2018, per the Federal Motor Vehicles Safety Standard No. 111. A camera image that freezes is a clear-cut safety hazard and a violation of this standard—if a child were to wander in the path of the reversing vehicle after the back-up camera image had frozen, the driver would be shown a false image of the rear of

the vehicle clear of any obstructions. Likewise, when the display simply goes blank, drivers continue to, out of habit, look at the blank screen for cues about blind spots and obstructions, only to realize the screen is blank and to adjust their driving behaviors in real time, disregarding the blank screen and turning around to look out of the windows. Those few seconds are of critical importance, and the need to adjust one's habits and correct for the Defect contributes to the risk of collisions and injuries.

6.      Because the Infotainment System controls myriad vehicle functions, the Defect causes a wide array of failures. Discovery will show that the Defect causes the back-up camera image and the display image generally to flicker, freeze, and/or fail, error messages (including a "no device connected" message despite the camera being connected), the display screen and all associated functionalities to crash, Bluetooth connections to fail, USB connections to fail, the inability to receive incoming calls or make outgoing calls, the failure of in-vehicle microphone function, the navigation to fail, and GPS signal failure; it prevents the driver from being able to adjust the HVAC system; it causes the display screen to fail and suddenly go blank, black, or blue, which can cause the driver to become distracted, and it causes safety-related systems (including backup camera functions) to fail, necessitating repair or replacement of the entire system.

7.      Defendants sold the Class Vehicles with a 3-year/36,000-mile New Vehicle Limited Warranty ("NVLW") that purports to cover the Infotainment System. However, owners and lessees often have complained that their Infotainment Systems fail and require repair or replacement both within and just outside the warranty period. This is evidenced through Class Member reports to the National Highway Traffic Safety Administration ("NHTSA"), which demonstrate that Honda's authorized dealerships are replacing and repairing Infotainment Systems both within, and just outside, the applicable express warranty periods.

8.      The Infotainment System Defect is inherent in each Class Vehicle and was present at the time of sale.

9.      Discovery will show that, since 2015, if not earlier, Defendants have been aware the Class Vehicles' Infotainment Systems would need frequent repair, prematurely fail, require

frequent replacement, including replacements just outside of warranty, that the replacement Infotainment Systems installed would be equally as defective as the originals, and that the Infotainment System would cause the symptoms of the Infotainment System Defect described above (frequent malfunction, freezing, or crashing, which in turn causes inoperability of one or more features such as navigation, music/radio, display screen, Bluetooth/phone, and backup camera), yet Defendants continued to install the defective Infotainment System. Moreover, Defendants not only refused to disclose the problem to consumers, they also actively concealed, and continue to conceal, their knowledge concerning the Infotainment System Defect.

10.     Defendants undertook affirmative measures to conceal Infotainment System failures and other malfunctions through, among other things, Technical Service Bulletins ("TSB") issued to authorized repair facilities only.

11.     Defendants had superior and/or exclusive knowledge of material facts regarding the Infotainment System Defect due to their pre-production testing, design failure mode analysis, aggregate part sales, consumer complaints about the Defect to Defendants' dealers, who are their agents for vehicle repairs, customer complaints made directly to Honda, dealer audits, aggregate warranty information, consumer complaints to and resulting notice from NHTSA, early consumer complaints on websites and internet forums, dealership repair orders, among other internal sources of information about the problem.

12.     The Infotainment System Defect is material because, *inter alia,* it poses a safety concern. As attested by Class Members in complaints to NHTSA, and other online forums monitored by Defendants, the Infotainment System Defect can suddenly distract the driver and thereby impair ability to control the vehicle, process and respond to safety threats, and greatly increase the risk of collision.

13.     Defendants' failure to disclose the Infotainment System Defect has caused Plaintiffs and putative class members to lose the use of their Vehicles' Infotainment Systems and/or incur costly repairs that have conferred an unjust substantial benefit upon Defendants.

14.     Discovery will show that, in an effort to conceal the Infotainment System Defect, Defendants have instructed dealers to tell consumers their vehicles are "operating normally" or

"operating as intended" when they are not, or to give excuses for sub-par performance. This is a common practice in the automotive industry, particularly with Infotainment System-related issues. By denying the existence of a defect, manufacturers can play on the consumers' lack of technical expertise and avoid implementing potentially costly fixes for years, or at least until the vehicles are out of warranty. When remedial measures are taken, such as "software updates" or "reprogramming," they are often through the issuance of service bulletins provided to dealers only that are narrowly crafted and underinclusive, as occurred here and set forth below.

15.     On rare occasions, consumers who bring in their vehicles to authorized Honda dealerships to seek repairs for the Defect are told the truth—that Honda and its networks of authorized dealerships are aware of the Defect and that there is no repair available.

16.     Had Defendants disclosed the Infotainment System Defect, Plaintiffs and Class Members would not have purchased the Class Vehicles, would have paid less for them, or would have required Defendants to replace, or pay for the replacement of, the defective Infotainment System with a non-defective version before their warranty periods expired.

## THE PARTIES

### Plaintiff Constance Chiulli

17.     Plaintiff Chiulli is a California citizen residing in Oakland, California.

18.     On or around May 27, 2019, Plaintiff Chiulli purchased a new 2019 Honda Civic from Walnut Creek Honda, an authorized Honda dealership in Walnut Creek, California.

19.     Plaintiff Chiulli purchased her vehicle primarily for personal, family, or household use.

20.     Passenger safety and reliability were important factors in Plaintiff Chiulli's decision to purchase her vehicle. Before making her purchase, Plaintiff Chiulli, along with her partner, researched the Honda Civic online, including on the dealer website. At the dealership, Plaintiff Chiulli also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. Plaintiff Chiulli also discussed the safety features of the vehicle with dealership personnel, who made no reference to the Infotainment System Defect. Instead, the dealership salesperson told Plaintiff Chiulli that she was "very lucky to have Apple

Car Play," and he performed a demonstration of the unit. Plaintiff Chiulli believed that the Civic would be a safe and reliable vehicle.

21.    Honda's omissions were material to Plaintiff Chiulli. Had Honda disclosed its knowledge of the Infotainment System Defect before she purchased her vehicle, Plaintiff Chiulli would have seen and been aware of the disclosures. Furthermore, had she known of the Infotainment System Defect, Plaintiff Chiulli would not have purchased her vehicle.

22.    Shortly after purchase, Plaintiff Chiulli began experiencing Infotainment System problems. Specifically, she discovered that her vehicle's infotainment system would not recognize her phone, its screen would go blank, its microphone would not function, and its cameras would not function. Such failures related to vehicle safety; for example, the failure of the vehicle's microphone meant that Plaintiff Chiulli was unable to make calls hands-free through the Infotainment System.

23.    On or around August 10, 2021, with 22,523 miles on the odometer, Ms. Chiulli brought her vehicle to Walnut Creek Honda, an authorized Honda dealer in Walnut Creek, California, complaining of display screen and phone connectivity problems. She asked the dealership personnel how often they saw these problems; the dealership personnel responded along the lines of "at least once a day" or "all the time." Regardless, although the dealer paired her phone with the vehicle again, the dealership did not record Plaintiff Chiulli's complaint on the repair order. Despite this repair attempt, Plaintiff Chiulli continued to experience the Defect.

24.    Subsequently, on April 26, 2022, with 29,589 miles on the odometer, Ms. Chiulli again brought her vehicle to Walnut Creek Honda, again complaining of display screen and phone connectivity problems. As with her previous visit, she asked the dealership about the frequency of these display screen and connectivity problems; once again, the dealership replied along the lines of "at least once a day" or "all of the time." Likewise, the dealership again failed to record her complaint or properly diagnose the Defect, instead once again pairing Ms. Chiulli's phone with the vehicle.

25.    Despite bringing her vehicle to a Honda dealership—Honda's authorized agent for repairs—multiple times, Plaintiff Chiulli has not received a repair under warranty, and her

vehicle continues to exhibit the Infotainment System Defect.

26.    As a result of the Infotainment System Defect, Plaintiff Chiulli has lost confidence in the ability of her Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff Chiulli will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although she would like to do so.

27.    At all times, Plaintiff Chiulli, like all Class Members, has driven her vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Joshua Meisel**

28.    Plaintiff Meisel is a California citizen residing in North Hollywood, California.

29.    On or around September 16, 2018, Plaintiff Meisel purchased a used 2016 Honda Civic with approximately 26,237 miles on the odometer from Galpin Honda, an authorized Honda dealership in San Fernando, California.

30.    Plaintiff Meisel purchased his vehicle primarily for personal, family, or household use.

31.    Passenger safety and reliability were important factors in Plaintiff Meisel's decision to purchase his vehicle. Before making his purchase, Plaintiff Meisel researched the Honda Civic online, including on Honda's website and the dealer's website. At the dealership, Plaintiff Meisel also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. Plaintiff Meisel also discussed the safety features of the vehicle with dealership personnel, who made no reference to the Infotainment System Defect. Plaintiff Meisel believed that the Civic would be a safe and reliable vehicle.

32.    Honda's omissions were material to Plaintiff Meisel. Had Honda disclosed its knowledge of the Infotainment System Defect before he purchased his vehicle, Plaintiff Meisel would have seen and been aware of the disclosures. Furthermore, had he known of the Infotainment System Defect, Plaintiff Meisel would not have purchased his vehicle or would have paid less.

33.    Within six months of his purchase, Mr. Meisel began experiencing infotainment

system problems. Specifically, his vehicle's infotainment system will completely fail, lose Bluetooth functionality, show distorted images and text, and fail to generate a clear image from the backup camera, not recognize his phone, its screen will go blank, its microphone will not function, and its cameras will not function.

34.     Consequently, Mr. Meisel brought his vehicle back to Galpin Honda and complained of his display screen and phone connectivity problems. In response, the dealer brushed off his concerns, stated the problem was "probably" because of Mr. Meisel's phone, but did not record his complaint on a repair order. Despite this attempt to have his vehicle repaired, Plaintiff Meisel continued to experience the Defect.

35.     Subsequently, on March 16, 2023, with approximately 75,000 miles on the odometer, Mr. Meisel brought his vehicle to Honda of North Hollywood, an authorized Honda dealer in North Hollywood, California, again complaining of display screen and Bluetooth connectivity problems. Once again, the dealership failed to record his complaint or properly diagnose the Defect, instead telling Mr. Meisel to re-pair his phone. When Mr. Meisel informed the dealer employees that would be impossible as Bluetooth connectivity was not functional, they told him re-pairing was the only option and otherwise dismissed his complaint.

36.     Despite bringing his vehicle to a Honda dealership—Honda's authorized agent for repairs—multiple times, Plaintiff Meisel has not received a repair under warranty, and his vehicle continues to exhibit the Infotainment System Defect.

37.     As a result of the Infotainment System Defect, Plaintiff Meisel has lost confidence in the ability of his Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff Meisel will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although he would like to do so.

38.     At all times, Plaintiff Meisel, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Jacob Montgomery**

39.     Plaintiff Montgomery is a Florida citizen residing in Tampa, Florida.

40.     On or around June 26, 2021, Plaintiff Montgomery purchased a used 2017 Honda Accord Touring with 10,807 miles on the odometer from Page Honda of Bloomfield, an authorized Honda dealership located in Bloomfield, Michigan.

41.     Plaintiff Montgomery purchased his vehicle primarily for personal, family, or household use.

42.     Passenger safety and reliability were important factors in Plaintiff Montgomery's decision to purchase his vehicle. Before making his purchase, Plaintiff Montgomery researched the Honda Accord online, including on Honda's website and the dealer website. Plaintiff Montgomery also watched multiple YouTube videos reviewing the vehicle and saw other Honda commercials online. At the dealership, Plaintiff Montgomery also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. Plaintiff Montgomery also test drove the vehicle and discussed the safety features of the vehicle with dealership personnel, who made no reference to the Infotainment System Defect. Plaintiff Montgomery believed that the Accord would be a safe and reliable vehicle.

43.     Honda's omissions were material to Plaintiff Montgomery. Had Honda disclosed its knowledge of the Infotainment System Defect before he purchased his vehicle, Plaintiff Montgomery would have seen and been aware of the disclosures. Furthermore, had he known of the Infotainment System Defect, Plaintiff Montgomery would not have purchased his vehicle.

44.     Within a few months of ownership, when the vehicle had approximately 15,000 miles on the odometer, Plaintiff Montgomery noticed that the Infotainment System in his vehicle malfunctioning, particularly when trying to use Apple CarPlay or use the navigation. The screen on the Infotainment System will black out and Plaintiff Montgomery is forced to restart his vehicle to get it functioning again.

45.     In or about January 2022, Plaintiff Montgomery took his vehicle to Westshore Honda, an authorized Honda dealership located in Tampa, Florida, and complained about the malfunctioning Infotainment System when the vehicle had approximately 20,000 miles on the

odometer. He was told that "it is a common issue" and that there was no fix available.

46.    Despite bringing his vehicle to a Honda dealership—Honda's authorized agent for repairs, Plaintiff Montgomery has not received a repair under warranty, and his vehicle continues to exhibit the Infotainment System Defect.

47.    As a result of the Infotainment System Defect, Plaintiff Montgomery has lost confidence in the ability of his Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff Montgomery will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although he would like to do so.

48.    At all times, Plaintiff Montgomery, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Jedediah Beech**

49.    Plaintiff Beech is a Maryland citizen residing in Windsor Mill, Maryland.

50.    On or around September 4, 2017, Plaintiff Jedediah Beech purchased a new 2017 Honda Civic from Ourisman Honda of Tyson Corners, an authorized Honda dealership located in Tyson Corners, Virginia.

51.    Plaintiff Beech purchased his vehicle primarily for personal, family, or household use.

52.    Passenger safety and reliability were important factors in Plaintiff Beech's decision to purchase his vehicle. Before making his purchase, Plaintiff Beech researched the Honda Civic online, including on Honda's website and the dealer website. At the dealership, Plaintiff Beech also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. Plaintiff Beech also test drove the vehicle and discussed the safety features of the vehicle with dealership personnel, who made no reference to the Infotainment System Defect. Plaintiff Beech believed that the Civic would be a safe and reliable vehicle.

53.    Honda's omissions were material to Plaintiff Beech. Had Honda disclosed its knowledge of the Infotainment System Defect before he purchased his vehicle, Plaintiff Beech

would have seen and been aware of the disclosures. Furthermore, had he known of the Infotainment System Defect, Plaintiff Beech would not have paid the price he paid to purchase his vehicle.

54. In or around January 2018, Plaintiff Beech began noticing that the Infotainment System in his Class Vehicle exhibited unresponsiveness, including freezing when connecting his phone, and occasionally required him to restart the vehicle to unfreeze the system.

55. In or around January 2019, with approximately 21,532 miles on the odometer, Plaintiff Beech took his vehicle to O'Donnell Honda Service Center, an authorized Honda dealership in Baltimore, Maryland to complain that the Infotainment System was failing by going black, becoming non-responsive, and failing to play music. The dealership informed Plaintiff Beech that it was "unable to duplicate concern at this time," checked the vehicle systems for updates and the "app list for Honda hack," and, finding none, did not perform any repairs or make any recommendations.

56. Despite bringing his vehicle to a Honda dealership—Honda's authorized agent for repairs—Plaintiff Beech has not received a repair under warranty, and his vehicle continues to exhibit the Infotainment System Defect.

57. As a result of the Infotainment System Defect, Plaintiff Beech has lost confidence in the ability of his Class Vehicle to provide safe and reliable transportation for ordinary and advertised purposes. Further, Plaintiff Beech will be unable to rely on the Class Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class Vehicle, although he would like to do so.

58. At all times, Plaintiff Beech, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff David Susseles**

59. Plaintiff Susseles is a Maryland citizen residing in Elk Ridge, Maryland.

60. On or around October 5, 2019, Plaintiff Susseles purchased a certified pre-owned 2018 Honda Accord with 4,317 miles on the odometer from O'Donnell Honda, an authorized Honda dealership located in Ellicott City, Maryland.

61.     Passenger safety and reliability were important factors in Plaintiff Susseles's decision to purchase his vehicle. Before making his purchase, Plaintiff Susseles researched the Honda Accord online, including on Honda's website and the dealer website. Plaintiff Montgomery also saw Honda commercials and reviewed Edmunds and Kelley Blue Book. At the dealership, Plaintiff Susseles also reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information about the vehicle. Plaintiff Susseles also test drove the vehicle and discussed the safety features of the vehicle with dealership personnel, who made no reference to the Infotainment System Defect. Plaintiff Susseles believed that the Accord would be a safe and reliable vehicle.

62.     Honda's omissions were material to Plaintiff Susseles. Had Honda disclosed its knowledge of the Infotainment System Defect before he purchased his vehicle, Plaintiff Susseles would have seen and been aware of the disclosures. Furthermore, had he known of the Infotainment System Defect, Plaintiff Susseles would not have purchased his vehicle.

63.     Plaintiff Susseles properly cared for his vehicle and made sure that all recommended maintenance was done on schedule.

64.     Within a few months of ownership, Plaintiff Susseles noticed that the Infotainment System in his vehicle malfunctioning, particularly when trying to use Apple CarPlay.  The Infotainment System would reset itself and stop in the middle of GPS service, distracting him while driving.

65.     On or about December 26, 2019, when his vehicle had approximately 10,000 miles on the odometer, Plaintiff Susseles took his vehicle DCH Academy Honda, an authorized Honda dealership located in Old Bridge, New Jersey, and complained about the malfunctioning Infotainment System.  He was told that the technician found nothing wrong on a diagnostic report and reset the Infotainment System.

66.     Despite bringing his vehicle to a Honda dealership—Honda's authorized agent for repairs—Plaintiff Susseles has not received a repair under warranty, and his vehicle continues to exhibit the Infotainment System Defect.

As a result of the Infotainment System Defect, Plaintiff Susseles has lost confidence in

1    the ability of his Class Vehicle to provide safe and reliable transportation for ordinary and

2    advertised purposes. Further, Plaintiff Susseles will be unable to rely on the Class Vehicles'

3    advertising or labeling in the future, and so will not purchase or lease another Class Vehicle,

4    although he would like to do so.

5         67.    At all times, Plaintiff Susseles, like all Class Members, has driven his vehicle in

6    a manner both foreseeable and in which it was intended to be used.

7    **Plaintiff Thomas Kreidel**

8         68.    Plaintiff Kreidel is a Virginia citizen residing in Norfolk, Virginia.

9         69.    On or around March 18, 2017, Plaintiff Thomas Kreidel purchased a new 2016

10   Honda Accord from Priority Honda, an authorized Honda dealership located in Chesapeake,

11   Virginia.

12        70.    Passenger safety and reliability were important factors in Plaintiff Kreidel's

13   decision to purchase his vehicle. Before making his purchase, Plaintiff Kreidel researched the

14   Honda Accord online, including googling the vehicle, and visiting Honda's website and the

15   dealer website, as well as reviewing Kelley Blue Book. At the dealership, Plaintiff Kreidel also

16   reviewed the vehicle's Monroney Sticker or "window sticker," which listed official information

17   about the vehicle. During his test drive of the vehicle prior to purchase, Plaintiff Kreidel

18   specifically tested the Apple CarPlay feature on the Infotainment System to make sure it worked

19   properly.

20        71.    Honda's omissions were material to Plaintiff Kreidel. Had Honda disclosed its

21   knowledge of the Infotainment System Defect before he purchased his vehicle, Plaintiff Kreidel

22   would have seen and been aware of the disclosures. Furthermore, had he known of the

23   Infotainment System Defect, Plaintiff Kreidel would not have paid the price he paid to purchase

24   his vehicle.

25        72.    Plaintiff Kreidel properly cared for his vehicle and made sure that all

26   recommended maintenance was done on schedule.

27        73.    Within a few months of ownership, Plaintiff Kreidel began to experience the

28   Infotainment System Defect.  Specifically, the Infotainment System freezes, usually within ten

1  minutes of use of Apple CarPlay, forcing Plaintiff Kreidel to unplug his phone and wait for the
2  Infotainment System to reboot.   The Infotainment System will also turn itself off without
3  warning.

4       74.     When the vehicle had approximately 15,000 miles on the odometer, Plaintiff
5  Kreidel took his vehicle into the dealership and complained about the Infotainment System
6  Defect.  The dealership said that his phone needed to be updated and that he needed a new cable
7  to connect it with the car, but also admitted they were waiting for an update to the Infotainment
8  System to be released by Honda.  At that time, the dealership reset the Infotainment System back
9  to factory settings.  This did not repair the Infotainment System Defect.  Plaintiff Kreidel has
10 subsequently taken his vehicle to the dealership seeking a repair for the Infotainment System
11 Defect on multiple occasions.   Once, he was told by a service representative that the
12 representative was experiencing the same issue in his own vehicle and so his solution was to not
13 use Apple CarPlay, a feature which Honda advertises works in their vehicles.

14       75.     Despite bringing his vehicle to a Honda dealership—Honda's authorized agent
15 for repairs—Plaintiff Kreidel has not received a repair under warranty, and his vehicle continues
16 to exhibit the Infotainment System Defect.

17       76.     As a result of the Infotainment System Defect, Plaintiff Kreidel has lost
18 confidence in the ability of his Class Vehicle to provide safe and reliable transportation for
19 ordinary and advertised purposes. Further, Plaintiff Kreidel will be unable to rely on the Class
20 Vehicles' advertising or labeling in the future, and so will not purchase or lease another Class
21 Vehicle, although he would like to do so.

22       77.     At all times, Plaintiff Kreidel, like all Class Members, has driven his vehicle in
23 a manner both foreseeable and in which it was intended to be used.

24 **Defendants**

25       78.     Defendant AHM is a corporation organized and in existence under the laws of
26 the State of California and registered to do business in the State of California. AHM's Corporate
27 Headquarters are located at 1919 Torrance Boulevard, Torrance, California 90507. Founded in
28 1959, AHM is the wholly owned North American subsidiary of HMC. Discovery will show that

at all relevant times herein AHM was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in California and throughout the United States of America. AHM also distributes all technical materials drafted by HMC intended to be used by authorized dealerships in the service and repair of Honda branded vehicles. AHM also oversees certain automobile product design and market research functions into its regional operations, as of April 1, 2021. AHM drafts and is responsible for providing the Monroney stickers on Honda vehicles but does so with information provided by HMC. HMC has designated AHM as its representative to interact with the National Highway Traffic Safety Administration and to fulfill its duties as a manufacturer under federal law.

79.     In order to sell vehicles to the general public, AHM enters into agreements with dealerships who are then authorized to sell Honda-branded vehicles to consumers such as Plaintiff. In return for the exclusive right to sell new Honda vehicles in a geographic area, authorized dealerships are also permitted to service and repair these vehicles under the warranties AHM provides directly to consumers. These contracts give AHM a significant amount of control over the actions of the dealerships, including sale and marketing of vehicles and parts for those vehicles. All service and repairs at an authorized dealership are also completed according to AHM's explicit instructions, issued through service manuals, TSBs, and other documents, that were created with input from HMC. Per the agreements between AHM and the authorized dealers, consumers such as Plaintiffs can receive services under AHM's issued warranties at dealer locations that are convenient to them. AHM has a nationwide dealership network and operates offices and facilities throughout the United States. AHM distributes Honda parts and vehicles, which are then sold through Defendants' network of dealerships. Money received from the purchase of a Honda vehicle from a dealership flows from the dealer to AHM.

80.     Defendant HMC is a Japanese public multinational conglomerate founded in 1958 under the laws of Japan and headquartered in Tokyo, Japan. HMC designs, manufactures, and distributes automobiles, as well as parts, for Honda branded vehicles, and is the parent

company of AHM and all other Honda-branded corporations headquartered in California. Discovery will show that the design and manufacture of Class Vehicles, including their component systems and any repairs or service necessary, is the primary focus of HMC. HMC also drafts all technical materials to be distributed by AHM for the service and repair of Honda vehicles. Discovery will show that the agreements which govern the relationship between HMC and AHM give HMC substantial control over the business operations of AHM, particularly with regards to the communications AHM distributes on HMC's behalf.

81.     Discovery will show that AHM and HMC jointly design, determine the substance of, and affix to its vehicles the window stickers visible on each new Honda vehicle that is offered for sale at its authorized dealerships, including those omitting mention of the Defect. These stickers were reviewed by Plaintiffs and the Class prior to purchasing Class Vehicles. Defendants control the content of these window stickers; its authorized dealerships have no input with respect to their content. Vehicle manufacturers like Honda are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231-1233, *et seq*. The Act specifically prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale.

65.     Defendants developed and disseminated the marketing materials to which Plaintiffs and the Class were exposed, including owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, and other promotional materials relating to the Class Vehicles, all of which fail to disclose the Defect.

82.     Defendants designed, manufactured, constructed, assembled, marketed, distributed, sold, and warranted the Class Vehicles, including Plaintiffs' vehicle.

## JURISDICTION

83.     This is a class action.

84.     Members of the proposed Class are citizens of states different from the home

1    states of Defendants.

2    85.    There are at least 100 members in the proposed class, and the aggregate claims

3    of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

4    86.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

5    87.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to

6    the Court's jurisdiction. This Court has personal jurisdiction over Defendants because AHM is

7    incorporated in this District; HMC conducts substantial business in this District through AHM;

8    and discovery will show that significant conduct involving Defendants giving rise to the

9    Complaint took place in this District.

10                                   **VENUE**

11    88.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff

12    Chiulli resides in Oakland, California, the conduct giving rise to this lawsuit occurred here,

13    AHM is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a), and AHM is

14    incorporated here, and Defendants are subject to personal jurisdiction here by conducting

15    business within the State of California. Plaintiffs' counsel's Declaration of Venue, to the extent

16    required under California Civil Code section 1780(d), is attached hereto as **Exhibit 1**.

17                          **FACTUAL ALLEGATIONS**

18    89.    . Defendants designed, manufactured, distributed, marketed, sold, and/or leased

19    the Class Vehicles. Defendants sold, directly or indirectly, through dealers and other retail

20    outlets, thousands of Class Vehicles in California and nationwide. Defendants warrant and

21    service the Class Vehicles through their nationwide network of authorized dealers and service

22    providers. In fiscal year ending March 31, 2022, Honda sold 1,283,000 vehicles in North

23    America.[1]

24    90.    Honda has thousands of authorized dealerships across the United States. Honda

25    authorizes these dealerships to sell Honda vehicles, parts, and accessories and to service and

---

[1] *See* 2022 Honda Motor Co. LTD Annual Report (Form 10-K), at 10 (Jun. 22, 2022), available at: available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000715153/000119312522178101/d280812d20f.htm (last visited March 30, 2023).

1   repair Honda vehicles using Honda parts.  Its net automotive sales through those dealerships,

2   for its North American region, totaled ¥4,844.9 billion ($36,422,399) in fiscal year ending

3   March 31, 2022.[2]  Honda sells its vehicles to its authorized dealerships, which in turn sell those

4   vehicles to consumers. After these dealerships sell cars to consumers, including the Plaintiffs

5   and Class Members, they purchase additional vehicle inventory from Honda to replace the

6   vehicles sold, increasing Honda's revenues. Thus, Plaintiffs' and Class Members' purchase of

7   Class Vehicles accrues to the benefit of Honda by increasing its revenues.

8           91.     "In-Vehicle Infotainment" or "Infotainment" is an automobile industry term that

9   refers to vehicle systems that combine entertainment features, safety features, and information

10  delivery to drivers. Infotainment systems use audio/video interfaces, touchscreens, keypads, and

11  other types of devices to provide those services.[3]

12          92.     Beginning with the 2016 model year and Honda's release of the 10th-generation

13  Civic, all Honda Civics were sold with an Infotainment System standardly equipped. The

14  Infotainment System consists of an audio-visual head or telematics unit, built into the top of the

15  vehicle's central instrument panel, and, on models above an LX, a Driver Information Interface

16  ("DII") built into the driver side instrument panel with controls in the steering wheel.

17          93.     The Civic LX has a 5-inch Display Audio unit with USB and Bluetooth

18  connectivity. The 5-inch (diagonal) display screen has conventional "hard" buttons and knobs

19  to control the Infotainment System and illuminated steering wheel buttons to control the various

20  functions.

21

22

23

24

25

26     [2] *Id*. (using conversion rate as of March 30, 2023).

27     [3] See, e.g., Burk, Michael. "The Evolution of In-Vehicle Infotainment Systems, part
    one."           March           14,           2019,           available           at:
    https://www.micron.com/about/blog/2019/march/evolution-of-in-vehicle-infotainment-

28  systems-part-one (last accessed September 13, 2022).

1

2

3

4

5

6



7      Fig. 1. 5-inch Display Unit

8      94.     The Civic EX, EX-T, EX-L, and Touring have a 7-inch Display Audio

9  touchscreen, also with USB and Bluetooth connectivity, as well as Apple and Android

10  connectivity. Consumers control the Infotainment System functions by swiping, tapping, and

11  pinching the touchscreen. The system can also be controlled with the DII touchpad controls

12  located on the left side of the steering wheel, as well as via voice commands.

13

14

15

16       

17

18

19      Fig. 2. 7-inch Display Unit

20

21

22      

23

24

25

26

27      Fig. 3. DII Display and Controls

28      95.     All 2016 and newer Civic model years have a multi-angle rear-view camera

standardly equipped. Viewable on the Civic LX color LCD screen and the Civic EX and above touchscreen, the rear-view camera will show top, normal, or wide views when the transmission is engaged in reverse. The LX has static guidelines intended to help the driver better judge distances, and the EX and above have dynamic guidelines intended to project the vehicle's future path based on the driver's current steering angle.



Fig. 4. Rear-view Camera Displays in Class Vehicles

96.     Additionally, Honda touts the following as "Key Available Audio and Connectivity Features":

> 7-inch Display Audio touchscreen with integrated HVAC controls
> Android Auto and Apple CarPlay
> HondaLink connected-car system
> HondaLink Assist[1] (when paired with compatible phone)
> HD Radio
> Honda Satellite-Linked Navigation System with Voice Recognition and Honda HD
> Digital Traffic
> Smartphone-Based Navigation App Compatibility
> New-generation "2.0" SiriusXM Radio
> Pandora interface
> SMS Text Message function
> USB Audio Interface[4]

97.     Honda's Bluetooth Hands Free Link Interface is also standardly equipped in all Class Vehicles. It is designed to allow the driver to place or answer telephone calls, as well as play audio files, such as music, without removing hands from the steering wheel.

---

[4] See, e.g., Honda Media Newsroom, 2016 Honda Civic Press Kit, available at: https://hondanews.com/en-US/releases/2016-honda-civic-sedan-press-kit-overview?page=178 (last accessed September 14, 2022); Honda Media Newsroom, 2016 Honda Accord Press Kit, available at: https://hondanews.com/en-US/honda-automobiles/releases/release-6f8be2e3701a40dda1a838d8004c7928-2016-honda-accord-press-kit-overview (last accessed February 2, 2023).

98.     Similarly, all Accords built since 2016 have back-up cameras and integrated Infotainment Systems. Below is a picture of the Infotainment System from the 2017 Honda Accord's brochure, showing the system's compatibility with both Apple CarPlay and Android Auto, as well as the Bluetooth Hands Free Link Interface.



Fig. 5

99.     The same brochure also assured consumers that the "multi-angel review camera with dynamic guidelines" was a "key standard feature" for all Accord models and even previewed this feature for view.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  Fig. 6

16  100.    Similarly, all Honda CR-Vs built since 2016 have back-up cameras and integrated

17  Infotainment Systems. Figure 7 below shows the "normal mode" of the Infotainment System's

18  multi-angle rearview camera from the 2016 Honda CR-V's brochure.

19
20
21
22
23
24
25



26  Fig. 7

27  101.    The same brochure also touts the Infotainment System technology to consumers:

28

"The CR-V features a whole suite of innovative technology to help navigate and keep you connected. Equipped with a 7-inch Display Audio (EX and above), you can tap, pinch and swipe to access features like Bluetooth, HandsFreeLink and SMS text message function."

102.   Discovery will show that all Class Vehicles' Infotainment Systems operate with and through substantially the same hardware, software, firmware, and operating system.

103.   Consumers complain that their vehicles' camera images flicker, freeze, and/or fail, their display screen flickers, freezes, and/or fails, error messages (including a "no device connected" message despite device being connected) suddenly illuminate, their display screens and all associated functionalities crash, their Bluetooth connections fail,  their USB connections fail, they are unable to receive incoming calls or make outgoing calls, their navigation fails, and their display screens fail and suddenly go blank, black, or blue, all of which can cause the driver to become distracted. In this manner, the lifespan of the Infotainment Systems in the Class Vehicles is unreasonably short.

104.   In TSB 18-001, issued only to its dealerships but not its customers, Honda has admitted that various manifestations of the Infotainment System Defect in 2017-2018 model year Class Vehicles may be attributed to "a problem with the audio/audio-navigation unit software, which may lead to one or more of the following symptoms:"

- Audio unit does not connect to last known phone
- Home screen background color changes after factory reset
- Home screen defaults to standard setting after factory data reset
- **Unknown Host Exception** message appears
- Phone function screen crashes
- Private mode is shown on the meter when making phone calls
- **Check Tuner** message appears on Sirius XM screen
- Unable to switch music source
- *Bluetooth®* Audio still playing when receiving calls
- Navigation guidance does not stop when voice recognition activated

- Apple CarPlay™ disconnects by itself
- Apple CarPlay does not start
- Music does not resume after phone call in Apple CarPlay
- *Bluetooth* Audio does not resume after hands-free call has ended
- USB devices not recognized
- Voice recognition does not start
- Unable to cancel TA announcements using SW back button
- Navigation Satellite icon flashing although satellites information is being received
- SIRI icon on display does not disappear
- AM radio stations have a lot of static and much louder at volume level 5

- Electronic parking brake command in Spanish is incorrect
- LaneWatch® camera image flickers
- Navigation longitude and latitude speech message is to quick
- Vehicle position does not show on map
- GPS signal not received
- Apple CarPlay screen is black
- Apple CarPlay displays **No Device Connected** message
- Unable to use steering switch fast forward function
- Clock on full screen showing **0:00**
- Screen does not react to climate button being pressed
- Screen freezes when changing from *Bluetooth*® to Apple CarPlay screen
- **No Bluetooth connected** message appears although phone is still connecting
- Call history not shown
- Unable to switch to LaneWatch camera
- *Bluetooth* Audio sound skips
- Audio unit on but meter display says off
- Trip history does not show MPG information
- ADA unit thinks vehicle is moving when it is stationary

- Blue patches appear on display
- AHA app starts by itself
- ADA shows Apple CarPlay screen after text message received
- Phone menu screen layout is different
- Phone book entries will not display in meter screen
- Volume output does not match volume indicator on the display
- When switching between BTA and Apple CarPlay, Apple CarPlay display goes black
- Compass stays on N on meter display
- Service item B not displayed on maintenance info screen
- Clock is off by 1 hour
- USB displays **Loading** message
- Unable to answer receiving call
- AM radio stations have a lot of static.
- *Bluetooth* HandsFreeLink® noise when adjusting volume
- Display not dimming
- Display goes black while receiving a call when Apple CarPlay is connected and using steering remote to change source

Fig. 7. Defect symptoms as listed in TSB 18-001.

105.    Discovery will confirm that the Infotainment Defect in all Class Vehicles is caused by improperly designed, programmed, and/or calibrated software in the Class Vehicles.

106.    The Infotainment System Defect alleged is inherent in, and the same for, all Class Vehicles.

107.    Discovery will show that Honda was aware of material facts regarding the Infotainment System Defect but failed to disclose them to consumers. As a result of this failure, Plaintiffs and Class Members have been damaged.

**The Infotainment System Defect Poses an Unreasonable Safety Hazard**

108.    The Infotainment System Defect poses an unreasonable safety hazard. The Defect causes drivers to become distracted, by impairing or rendering inoperative many of the Infotainment System's safety features.

109.    For example, once the Defect has manifested, the driver is unable to navigate to the needed function because the display is inoperative. Thus, a driver often cannot, among other things: (1) pair an electronic device using Bluetooth; (2) answer calls or make calls, even if the driver's cellular phone was paired via Bluetooth before the Defect manifested; or (3) use the

25

navigation system by viewing nearby vendors, such as gas stations, on the display, or entering destinations into the navigation system.

110. Even more troubling, the Defect often results in distortion, masking, or canceling out of the rear-view camera's images, rendering the camera unusable. Rear-view cameras are required safety devices in all passenger automobiles. *See* 49 CFR § 571.111 (2018).

111. Drivers become accustomed to the use of the back-up and blind-spot cameras, and their driving habits naturally adapt accordingly. Thus, when these video feeds become unreliable, they cause unsafe conditions in several ways. For example, when the blind spot feed fails, drivers continue to, out of habit, look at the blank screen for cues about blind spots and obstructions, only to realize the screen is blank and that they must adjust their driving behaviors in real time, disregarding the blank screen and turning around to look out of the windows. Those few seconds are of critical importance, and the need to adjust one's habits and correct for the Defect clearly contributes to the risk of collisions and injuries.

112. Likewise, a reliable, real-time feed for the back-up camera is critical for safety. A freezing back-up camera feed can give the driver the false impression that there are no obstructions behind their vehicle as they reverse. If a small child were to approach the vehicle with the camera frozen, the driver would be unable to see them and be fooled by the system into believing they could safely continue to reverse.

113. In addition to the obvious safety risk that an inoperable rear-view camera poses to drivers who may not see obstructions or small children and animals that would otherwise be visible in the Infotainment System display, the Defect causes distracted driving and presents an unreasonable safety hazard instead of enhancing safety, as advertised.

114. For example, in 2017, distracted driving killed 3,166 people. According to the Centers for Disease Control ("CDC"), there are three types of distracted driving: (1) visual (*i.e.,* not focusing on the road); (2) cognitive (*i.e.*, thinking about something other than the road and immediate driving needs); and (3) manual (*i.e.*, physically taking one's hands off the steering

1    wheel).[5]

2       115.   The Infotainment System Defect poses a safety risk by distracting drivers in all

3    three ways highlighted by the CDC: (1) drivers are unable to read or see the screen clearly,

4    causing them to divert their eyes from the road longer than under normal conditions; (2) drivers

5    become focused on, and frustrated by, the malfunctioning display while driving; and (3) when

6    the display works intermittently or inconsistently, drivers must remove their hands from the

7    steering wheel more frequently and for longer periods of time than when the Infotainment

8    System functions as it was advertised to do.

9       116.   Federal law requires automakers like Honda to be in close contact with NHTSA

10   regarding potential auto defects, including imposing a legal requirement (backed by criminal

11   penalties) compelling the confidential disclosure of defects and related data by automakers to

12   NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub.

13   L. No. 106-414, 114 Stat.1800 (2000).

14      117.   Automakers have a legal obligation to identify and report emerging safety-related

15   defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers

16   monitor NHTSA databases for consumer complaints regarding their automobiles as part of their

17   ongoing obligation to identify potential defects in their vehicles, including those that are safety

18   related. *Id.* Thus, Honda knew or should have known of the many complaints about the

19   Infotainment System Defect logged by NHTSA Office of Defects Investigation (ODI). The

20   content, consistency, and disproportionate number of those complaints alerted, or should have

21   alerted, Honda to the Infotainment System Defect.

22      118.   With respect solely to the Class Vehicles, the following are but a few examples

23   of the hundreds of complaints concerning the Infotainment System Defect, which are available

24   through NHTSA's website, www.NHTSA.gov. Many of the complaints reveal that Honda,

25   through its network of dealers and repair technicians, has been made aware of the Infotainment

26   System Defect. In addition, the complaints indicate that despite having knowledge of the

27

28   _____

[5] *See* NHTSA, "U Drive. U Text. U Pay" available at: https://www.NHTSA.gov/risky-driving/distracted-driving (last accessed September 13, 2022).

Infotainment System Defect and even armed with knowledge of the exact vehicles affected, Honda often refused to diagnose the Defect or otherwise attempt to repair it while Class Vehicles were still under warranty.

The following are complaints related to Honda Civics as filed with NHTSA:

a. **DATE OF INCIDENT:** October 8, 2021
**DATE COMPLAINT FILED:** January 16, 2022
**NHTSA/ODI ID:** 11447688
**SUMMARY:** In early October 2021, my infotainment display screen stooped working. As a consequence, my rear view, and right side view cameras no longer show on the display screen. This has become a safety issue for me because I cannot see if other vehicles are in the right lane when I am planning to change to the right lane, or planning to make a right turn. Also, I can no longer rely on my rear view camera when I am trying to back out of a parking spot, or my driveway. I took my car back to the dealer, and they told me that this HAS NOT been reported by other 2020 Honda Civic owners. They also told me that they need to order the part to repair it, but that it will take 2-6 weeks for the part to arrive. It has now been over 12 weeks and the part has not arrived. During the past 12 weeks, there were a few times where other drivers had to blow their horns at me as I tried to pass into the right lane. I have also had a few close encounters with pedestrians while I was backing out of a parking lot in shopping centers. Have any other 2020 Honda Civic owners reported problems with their infotainment display screens not working? Thank you

b. **DATE OF INCIDENT:** December 19, 2019
**DATE COMPLAINT FILED:** March 5, 2020
**NHTSA/ODI ID:** 11316231
**SUMMARY:** AUDIO SYSTEM WILL INTERMITTENTLY DISABLE SOUND OUTPUT ON ALL CHANNELS: BLUETOOTH, AM, FM, XM RADIO, PHONE CALLS, ETC. CAR AUDIO AMPLIFIER OVER HEATING. TEMPERATURE MEASURED AT 197 DEGREES F. RISK OF FIRE. IN ORDER TO RESUME AUDIO OUTPUT, VEHICLE MUST BE COMPLETELY SHUTDOWN AND RESTARTED. WHEN THE RADIO IS OPERATIONAL FOR A CERTAIN PERIOD OF TIME AT A CERTAIN VOLUME IT OVERHEATS AND SHUTS DOWN.

c. **DATE OF INCIDENT:**    February 1, 2020
**DATE COMPLAINT FILED:** February 23, 2020
**NHTSA/ODI ID:** 11310910
**SUMMARY:** THE COMPUTER SYSTEM IS UNSTABLE AND MALFUNCTIONS ROUTINELY BY ALL EQUIPMENT SYMBOLS FLASHING MALFUNCTIONS SIMULTANEOUSLY. ADDITIONALLY, THE AC AND HEATER HAVE FAILED AFTER ONLY 5000 MILES DRIVEN. THE ENTIRE AC SYSTEM IS SCHEDULED TO BE REPLACED.

d.  **DATE OF INCIDENT:** May 11, 2022
**DATE COMPLAINT FILED:** May 11, 2022
**NHTSA/ODI ID:** 11464214
**SUMMARY:** When selecting Reverse, the rearview camera usually displays quickly, but sometimes takes several seconds to display, or doesn't display at all (the screen remains black). This detracts from my ability to reverse safely. The radio / vehicle information display usually responds quickly to a button press, but sometimes can take several seconds to respond. Since I don't anticipate the delay, I tend to continue watching the screen while I'm waiting for it to react, instead of paying attention to the road. Especially while driving at highway speeds, these intermittent, variable delays can take my attention away from the road for a dangerous amount of time before I realize I'm not watching the road as I should be. Since the rearview camera uses the radio display, I think these issues may be related. This has been going on since the car was new.

e.  **DATE OF INCIDENT:** July 19, 2020
**DATE COMPLAINT FILED:** August 7, 2020
**NHTSA/ODI ID:** 11343876
**SUMMARY:** I STARTED THE VEHICLE. MONITOR SCREEN WAS ALL BLACK (RADIO/ AC CONTROL PANEL). TURNED CAR OFF TO SEE IF SCREEN WOULD RESET. I TRIED BUTTON TO SEE IF SIDE TURN CAMERA WOULD TURN ON OR RESET ISSUE. IT DID NOT. DROVE 26 MILES SCREEN ALL BLACK. NO SIDE TURN BLINKER. NO RADIO. PARKED RESTARTED CAR 4 MORE TIMES. SCREEN STILL ALL BLACK. ERROR CODE APPEARED STATING 'DALAUNCHER ISN'T RESPONDING. WOULD YOU LIKE TO CLOSE IT'

f.  **DATE OF INCIDENT:** November 21, 2019
**DATE COMPLAINT FILED:** November 21, 2019
**NHTSA/ODI ID:** 11281488
**SUMMARY:** SEVERAL ISSUES WITH THE TOUCH SCREEN, WHEN COLD OUT THE SCREEN WILL NOT COME ON, ONLY DISPLAYS A BLANK WHITE SCREEN. THIS REQUIRES SEVERAL RESTARTS, SCREEN GOES BLANK (BLACK) LOSE ALL CONTROLS AND RADIO. EVEN AFTER PULLING OVER AND RESTARTING THE VEHICLE SEVERAL TIMES, SOMETIMES IT WILL NOT COME BACK ON FOR MILES AND THEN COMES IN AND OUT UNTIL IT FULLY REBOOTS. WILL MAKE A TONE AND SHUT DOWN THE ENTIRE SCREEN DURING NAVIGATION AND AFTER PULLING OVER AND RESTARTING THE VEHICLE SEVERAL TIMES, WILL SOMETIMES NOT RE-ENGAGE NAVIGATION AT ALL, UNTIL NEXT DAY.

g.  **DATE OF INCIDENT:** July 1, 2019
h.  **DATE COMPLAINT FILED:** July 1, 2019
**NHTSA/ODI ID:** 11228617
**SUMMARY:** ON THE 1ST OF JULY 2019. AFTER I START THE CAR IN THE MORNING, THEN I PUT IT INTO REVERSE GEAR TO BACK UP FROM THE PARKING SPACE. BUT THE BACKUP CAMERA TURNS THE PURPLE SCREEN.

i.  **DATE OF INCIDENT:** June 17, 2019
**DATE COMPLAINT FILED:** June 17, 2019
**NHTSA/ODI ID:** 11220533
**SUMMARY:** BACK UP CAMERA IS FUZZY WITH VERY LOW RESOLUTION ESPECIALLY DURING THE EVENING OR LOWER DAYLIGHT. THIS MAY CAUSE SERIOUS INJURY SINCE RESOLUTION IS VERY POOR. CAMERA LENS IS NOT DIRTY OR SCRATCHED.

j.  **DATE OF INCIDENT:** August 22, 2018
**DATE COMPLAINT FILED:** January 14, 2019
**NHTSA/ODI ID:** 11169979
**SUMMARY:** 2018 HONDA CIVIC - EX-L INFOTAINMENT SCREEN (RADIO, HEAT, NAVIGATION SYSTEM, A/C, ETC CONTROLS TOUCHSCREEN) WILL FLASH OFF AND ON WHILE DRIVING INCLUDING DURING BACKUP CAMERA AND NAVIGATION SYSTEM USE. ISSUE IS INTERMITTENT AND NOT PREDACTABLE. HONDA DEALERSHIP HAS ATTEMPTED TWO RE-FLASHES OF THE SOFTWARE TO CORRECT THE ISSUE WITH NO POSITIVE RESULT. HONDA REPRESENTATIVE STATES THAT THE ISSUE HAS NO RESOLUTION AND WILL DO NOTHING FURTHER TO CORRECT THE ISSUE ON MY VEHICLE AND MAY HAVE A FIX AT SOME POINT IN THE FUTURE.

k.  **DATE OF INCIDENT:** July 11, 2018
**DATE COMPLAINT FILED:** January 29, 2018
**NHTSA/ODI ID:** 11110782
**SUMMARY:** (4 COMPLAINTS, ALL POSSIBLY ELECTRICAL) 1) KEY NOT DETECTED IN VEH ERROR, WHILE DRIVING VEHICLE, I HAVE THE KEY NOT CONNECTED TO ANYTHING AND NO LONGER IN A POUCH, MY CAR BEEPS AND SAYS "KEY NOT DETECTED IN THE VEHICLE) THIS HAS HAPPENED WHILE DRIVING ON THE STREET AND FREEWAY. IT IS A RANDOM OCCURRENCE BUT HAPPENS ON A DAILY BASIS. 2) BLUETOOTH IS NOT CLEAR ON THE PERSON SPEAKING TO ME'S SIDE. OTHER PERSON STATES AS WELL AS HONDA TECH LINE STATES IT IS UNCLEAR, MUFFLED, AND LOUD INTERFERENCE WITH MY VOICE HAPPENS WHILE USING BLUTOOTH. 3) CAR PLAY: DUE TO BLUETOOTH ISSUE I STARTED ONLY TAKING CALLS WHILE USING CAR PLAY. ONCE I STARTED USING I STARTED HAVING THE ISSUE OF IT STATING RANDOMLY AFTER BEING SUCCESSFULLY CONNECTED"CAR PLAY NOT SUPPORTED" WHILE IN THE MIDDLE OF A CALL IT WILL DISCONNECT AND I WILL HAVE TO PULL OVER TO ATTEMPT TO RECONNECT. RIGHT AFTER CAR PLAY WILL CONNECT AGAIN AND WORK UNTIL IT RANDOMLY DISCONNECTS AGAIN SAYING CAR PLAY NOT SUPPORTED. NOTE: WITH CAR PLAY AND BLUETOOTH ISSUE I HAVE TAKEN CAR INTO DLR MULTIPLE TIMES STARTING WITH THE DAY AFTER THE VEH WAS PURCHASED IN 1/29/2018 NO RESOLUTION SO FAR TO DATE. DLR HAS REPLACED MICROPHONE, AND STILL NO RESOLUTION AS OF YET 4) DRIVER WINDOW MAKES WEIRD SOUND LIKE IT IS COMING OFF THE TRACK,

TOOK INTO DLR AND THEY REPLACED THE MOTOR FOR THE WINDOW, THE WINDOW STILL HAS ISSUE. ** I HAVE MORE PHOTOS OF RECORDS FROM TAKING VEH INTO DLRSHIP. BUT THIS FORM ONLY ALLOWS ME TO UPLOAD 5

**DATE OF INCIDENT:** September 30, 2018
**DATE COMPLAINT FILED:** September 30, 2018
**NHTSA/ODI ID:** 11132370
**SUMMARY:** SIDE PASSENGER LANE WATCH CAMERA INTERMITTENTLY DOESN'T TURN ON CREATING A SAFETY ISSUE.

l.   **DATE OF INCIDENT:** December 16, 2016
**DATE COMPLAINT FILED:** March 23, 2017
**NHTSA/ODI ID:** 10968167
**SUMMARY:** TL* THE CONTACT OWNS A 2017 HONDA CIVIC. THE CONTACT STATED THAT THE VEHICLE'S NAVIGATION SYSTEM FAILED. ALTHOUGH THEY WERE ON THE FREEWAY, THE NAVIGATION SYSTEM RE-ROUTED THEM AS THOUGH THEY WERE ON THE STREET. THE CONTACT ALSO STATED THAT THE VEHICLE'S RADIO FAILED. THE FAILURES OCCURRED WITHOUT WARNING. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE SYSTEM NEEDED A SOFTWARE UPDATE. THE VEHICLE WAS REPAIRED; HOWEVER, THE RADIO STILL FAILED. THE VEHICLE WAS TAKEN BACK TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE TUNER AND ANTENNA NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED, BUT THE REARVIEW AND PASSENGER SIDE CAMERAS FAILED. THE VEHICLE WAS AGAIN RETURNED TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE ELECTRICAL CONSOLE NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 4,900.

m. **DATE OF INCIDENT:** November 5, 2020
**DATE COMPLAINT FILED:** January 25, 2021
**NHTSA/ODI ID:** 11389867
**SUMMARY:** MY 2017 HONDA CIVIC EX-T COUPE SHUTS DOWN MY DIGITAL SCREEN AND AUDIO SYSTEM WITH THE MESSAGE "AMP IS IN PROTECTION MODE" THIS THEN MAKES ANY HANDS FREE DEVICES TURN COMPLETELY OFF FROM THE CAR. THIS IS A SAFETY ISSUE BECAUSE IN MY STATE, CELL PHONES AND ANY OTHER FORM OF ELECTRONICS ARE NOT PERMITTED. SO WHEN BEING ON THE PHONE OR USING GPS IT SHUTS EVERYTHING DOWN AND THATS A MAJOR SAFETY CONCERN. I RECENTLY WENT TO MANY HONDA DEALERS AND THEY HAVE CONTACTED HONDA NORTH AMERICA BUT THEY TOLD ME HONDA DOES NOT KNOW WHAT THE PROBLEM COULD BE AND THAT THEY RECALLED THE 2016 HONDA CIVICS FOR A SIMILAR ISSUE, BUT SINCE THEY DIDN'T RECALL THE 2017 HONDA CIVICS THEN THERE IS NOTHING THEY CAN DO. THIS PROBLEM IS

STRESSING ME OUT BECAUSE I CAN'T FOLLOW THE DIRECTIONS ON MY GPS OR ANSWER IMPORTANT CALLS IF NEEDED. ALSO I WENT TO AUDIO TECHS WHO TOLD ME THIS IS THE MOST BIZARRE SITUATION THEY'VE EVER EXPERIENCED. I DO NOT THINK IT IS FAIR FOR ME TO PAY ALL OF THIS MONEY ON MY NEW CAR (ONLY OWNED FOR 3 MONTHS). I AM ALSO A FIRST TIME BUYER AND THIS MAKES ME REGRET EVER BUYING A CAR! THE VEHICLE IS ON FOR A FEW MINUTES AND THEN THE MESSAGE OCCURS AND THEN SHUTS OFF EVERYTHING. I EVEN GOT MY WHOLE AUDIO SYSTEM AND AMP TAKEN OUT FOR FURTHER TESTS AND NO-ONE SEEMS TO KNOW. IF YOU GUYS CAN HELP IN ANYWAY TO RECALL THE 2017 CIVICS WITH THIS ISSUE THAT WOULD BE GREATLY APPRECIATED. THANK YOU.

n.  **DATE OF INCIDENT:** August 20, 2020
**DATE COMPLAINT FILED:** August 28, 2020
**NHTSA/ODI ID:** 11351896
**SUMMARY:** THE HEAD UNIT/DISPLAY STOPPED WORKING ABOUT A WEEK AGO. AT FIRST, NOTHING WOULD COME ON. I THOUGHT IT MAY HAVE BEEN A FUSE, OR IT NEEDED REBOOTED. I DISCONNECTED THE BATTERY AND IT STILL CONTINUED TO ACT UP. THE BACK-UP AND PASSENGER SIDE CAMERAS WON'T WORK PROPERLY, THE CLIMATE CONTROLS WON'T WORK AS I CAN'T CHANGE THE AIR FLOW OR TEMPERATURE, THE BLUETOOTH WON'T WORK OR CONNECT, AND THE AUDIO CONTROLS WON'T WORK OR ARE SEVERELY DELAYED. THIS CREATES MULTIPLE SAFETY ISSUES WHILE DRIVING: 1. THE AUDIO WILL RANDOMLY TURN ON, AND AT HIGH VOLUMES DUE TO THE FACT THAT I CANNOT CONTROL THE VOLUME OR TURN IT ON OR OFF. 2. THE BACK-UP AND/OR SIDE CAMERAS WILL GET STUCK ON THE SCREEN, WHICH CREATES A DISTRACTION WHILE DRIVING. 3. THE BLUETOOTH WON'T WORK, WHICH IS A HUGE SAFETY CONCERN DUE TO 'HANDS-FREE' LAWS IN MOST STATES. 4. THE CLIMATE CONTROLS WON'T WORK CORRECTLY AND, THEREFORE, I CANNOT USE THE FRONT DEFROST. WHEN TAKEN TO THE HONDA DEALERSHIP, THEY CLAIM THAT IT WILL COST $4,000 TO REPLACE. $4,000 ON A 3-YEAR OLD VEHICLE, WITH NO OTHER MAJOR ISSUES.

o.  **DATE OF INCIDENT:** November 8, 2019
**DATE COMPLAINT FILED:** November 8, 2019
**NHTSA/ODI ID:** 11278820
**SUMMARY:** I HAVE HAD ISSUES WITH MY NAVIGATION SYSTEM WHEN I PLUG IN MY PHONE INTO THE JACK IN THE CAR. I HAVE DRIVEN MY VEHICLE TO MY HONDA DEALER AND THEY WITNESSED MY VEHICLE ACTUALLY REMOVE MY PHONE AND REPLACE IT WITH SOMEONE ELSE'S PHONE IN MY VEHICLE. MY VEHICLE WILL NOT RECOGNIZE THE PHONE ALSO EVEN THOUGH I HAVE MY BLUETOOTH ON MY I PHONE AND IT WILL NOT PAIR WITH MY VEHICLE AS WELL NUMEROUS TIMES. THE TECH AT HONDA STATED TO ME IT IS AS IF SOMEONE ELSE IS CONTROLLING THE VEHICLE

THROUGH YOUR RADIO FREQUENCY. MY CAR HAS BEEN UNLOCKED
AT TIMES. ETC. I ASKED HOW THIS CAN OCCUR AND HE STATED IF
SOMEONE HAS YOUR RADIO ID OR YOUR KEY FOB NUMBERS. THIS
IS STILL OCCURRING EVEN THOUGH HONDA RE SET THE
NAVIGATION SYSTEM AND SETTINGS TO FACTORY DEFAULT. NOW
MY TRUNK WILL NOT STAY CLOSED IF SOMETHING IS IN THE
TRUNK. HAPPENS AT ALL TIMES IN MOTION, STAYING STILL.

p.   **DATE OF INCIDENT:** December 5, 2015
**DATE COMPLAINT FILED:** January 8, 2016
**NHTSA/ODI ID:** 10818856
**SUMMARY:** AUDIO SYSTEM IS NOT PROPERLY INITIALIZING ABOUT
80% OF THE TIME YOU START THE CAR. WHILE MUCH OF THIS IS
SIMPLY INCONVENIENT (NO SOUND FOR THE RADIO) IT AFFECTS
SAFETY AS THERE IS NO SOUND FOR THE BUILT IN GPS FORCING
YOU TO LOOK AT THE GPS FOR NAVIGATIONAL PROMPTS VERSUS
AUDIO PROMPTS AND THE BLUETOOTH SYSTEM DOES NOT
FUNCTION SO DURING INCOMING OR OUTCOMING CALLS INSTEAD
OF USING BLUETOOTH HANDS FREE YOU MUST PICK UP YOUR
PHONE WHILE DRIVING WHICH IS ILLEGAL IN MANY STATES AND
SWITCH FROM THE CAR MODE TO THE HANDSET MODE AND THEN
USE ONE HAND TO HOLD THE PHONE TO TALK, FURTHER
DISTRACTING FROM SAFE DRIVING. THIS APPEARS TO AFFECT THE
TOURING MODEL ONLY, HONDA IS AWARE OF THE ISSUE. HAPPENS
IN ALL DRIVING CONDITIONS BUT IS RANDOM (ABOUT 80% OF THE
TIME AUDIO DOES NOT WORK). HONDA CASE #04338617 WAS
OPENED. THEY SAID TO JUST WAIT FOR A FIX, HAVE OWNED CAR
FOR 30 DAYS NOW (NEW PURCHASE). DEALER HAS NO SOLUTION
EITHER.

q.   **DATE OF INCIDENT:** October 12, 2016
**DATE COMPLAINT FILED:** October 12, 2016
**NHTSA/ODI ID:** 10915655
**SUMMARY:** TODAY I PURCHASED A NEW (DEMO/4,900+ MILES) 2016
HONDA CIVIC. WHILE THE SALESMAN WAS DEMONSTRATING HOW
TO USE THE PHONE/CONNECTIVITY FEATURES IT WAS DISCOVERED
THE PHONE SYSTEM WAS MALFUNCTIONING. I WAS ADVISED TO
TRY IT AGAIN WHEN I DROVE OFF THE LOT TO TAKE MY BRAND NEW
CAR HOME AND IT MAY WORK WHEN I GOT AWAY FROM THE LOT.
IT DID NOT. THE PHONE IS NON WORKING AND THE VOICE
RECOGNITION IS USELESS.

119.   The following are complaints related to Honda Accords as filed with NHTSA:

a.   **DATE OF INCIDENT:** August 15, 2016
**DATE COMPLAINT FILED:** May 24, 2017
**NHTSA/ODI ID:** 10991330

**SUMMARY:** BLUETOOTH DEFECT. SINCE NEW PURCHASE IN 2016 VEHICLE BLUETOOTH IS NOT COMPATIBLE FOR I PHONE 7 MAKING THE HANDS FREE FUNCTION UN USABLE AND A VERY BAD DISTRACTION WHEN DRIVING. THE DEALER REACTION TO ACKNOWLEDGED PROBLEM WAS "NOTHING WE CAN DO TILL HONDA UPDATES TECH KNOWLEDGE. FOR WHAT EVER REASON HONDA HAS NOT UPDATED SYSTEM TO BE COMPATIBLE WITH NEWER PHONE/S. I FEAR DO TO HONDAS SLOW OR NO RESPONSE TO ISSUE A TRAGEDY FOR SOMEONE SOMEWHERE WILL BE INEVITABLE, AND IT IS A SITUATION THAT HONDA OR NHTSA SHOULD BE ABLE TO BE AVOIDED WITH A SIMPLE UPDATE ON THE ACCORD, AND FROM WHAT I READ, OTHER MODELS. IF HONDA WON'T MAKE THIS RIGHT, HOPEFULLY THE NHTSA CAN FORCE THEM TO FIX THIS POTENTIAL HAZARDOUS CONDITION.

b. **DATE OF INCIDENT:** April 5, 2016
   **DATE COMPLAINT FILED:** December 29, 2017
   **NHTSA/ODI ID:** 11057365
   **SUMMARY:** ANDROID AUTO IS NOT WORKING FOR MY CAR RIGHT FROM THE DAY OF PURCHASE, IS THERE ANY FIX COMING SOON FOR THIS?

c. **DATE OF INCIDENT:** May 2, 2022
   **DATE COMPLAINT FILED:** December 7, 2022
   **NHTSA/ODI ID:** 11496466
   **SUMMARY:** The in dash stereo system with Bluetooth makes loud static noises, regardless of whether the stereo system is on or off. The static noise is extremely loud and unpleasant, and should be considered a safety hazard. The only way to make it stop is to pull the fuse for the head unit. Pulling the fuse makes the infotainment system turn off, which means I can no longer have access to backup camera or the trip computer.

d. **DATE OF INCIDENT:** March 3, 2022
   **DATE COMPLAINT FILED:** March 13, 2022
   **NHTSA/ODI ID:** 11456478
   **SUMMARY:** While driving the car infotainment system blacks out and reboots. Causing a lost of direction and confusion while driving. Will be contacting the dealership for an inspection.

e. **DATE OF INCIDENT:** December 17, 2018
   **DATE COMPLAINT FILED:** December 18, 2018
   **NHTSA/ODI ID:** 11162332
   **SUMMARY:** INFOTAINMENT SCREEN WHICH ALSO DISPLAYS REAR VIEW CAMERA RANDOMLY RESTARTS.

f. **DATE OF INCIDENT:** April 12, 2018
   **DATE COMPLAINT FILED:** October 29, 2019
   **NHTSA/ODI ID:** 11271802

**SUMMARY:** INFOTAINMENT SCREEN REBOOTS RANDOMLY WHILE DRIVING DOWN THE ROAD. ALSO DASH LIGHTS GO DIM/OUT ALSO.

g. **DATE OF INCIDENT:** July 14, 2020
**DATE COMPLAINT FILED:** July 14, 2020
**NHTSA/ODI ID:** 11339280
**SUMMARY:** BACK IN JULY 4, 2020, THE DIGITAL PART OF MY INSTRUMENT PANEL, HEADS UP DISPLAY AND MY INFOTAINMENT SYSTEM CRASHED WHILE I WAS DRIVING. IT TOOK APPROXIMATELY 2 MINS TO COME BACK ON. TODAY, JULY 14,2020, THE AUDIO, PHONE AND NAVIGATION ON MY INSTRUMENT PANEL WEREN'T SHOWING UP WHEN I TURNED ON MY CAR. ALSO MY VOICE ASSIST DOESN'T WORK ANYMORE AS WELL AS THE NAVIGATION ON MY HEADS UP DISPLAY. I TRIED CALLING MY DEALERSHIP TO SET AN APPOINTMENT BUT THE EARLIEST TIME THEY CAN GIVE ME IS ON THE 24TH OF JULY.

h. **DATE OF INCIDENT:** December 21, 2020
**DATE COMPLAINT FILED:** December 26, 2020
**NHTSA/ODI ID:** 11385014
**SUMMARY:** A FEW MONTHS AFTER BUYING THE 2018 ACCORD, HONDA HAD TO PUT A SOFTWARE UPDATE, WHICH THEY CLAIMED WAS GOING TO ADDRESS AND ISSUE WITH THE BACK-UP CAMERA (WHICH ALWAYS SEEMED TO WORK FINE, AT LEAST ON MY CAR). SHORTLY AFTER THE UPDATE, THE INFOTAINMENT UNIT HAD STARTED TO RANDOMLY (AND RATHER FREQUENTLY) RESET ITSELF EVERY FEW DAY. HONDA (AFTER SOME TRIPS TO THE DEALER AND SEVERAL ATTEMPTS TO REACH OUT TO THE HONDA OF AMERICA HQ) HAD FAILED TO ACKNOWLEDGE THE ISSUE AND, EVENTUALLY, BEGRUDGINGLY HAD ADMITTED TO THE PROBLEM; HOWEVER, THEY HAD FAILED TO PRODUCE A FIX FOR MONTHS. MY VEHICLE STILL DOES NOT HAVE A FIX APPLIED AND KEEPS HAVING RESETS. I HAVE SPOKEN WITH A 2018 HONDA ODYSSEY (WHICH USES THE SAME SYSTEM), WHO FINALLY GAVE UP AND GOT RID OF THE VEHICLE DUE TO THE NUMBER OF RECALLS (AND, TO SOME EXTENT, VERY POOR HANDLING OF THE ISSUES BY HONDA DEALER(S) AND HONDA), BUT THEY HAD TO HAVE THEIR UNIT PHYSICALLY REPLACED. SUPPOSEDLY, THERE NOW A RECALL, BUT YOU HAVE TO TAKE THE VEHICLE TO THE DEALER (SURPRISE, NOT). AS IT STANDS, HONDA MAY HAVE USED A PIECE OF HW WHICH HAS A BUILT-IN FAILURE (THIS COULD BE MORE INSIDIOUS THAN JUST A SW FIX) AND IS REFUSING TO ADDRESS IT IN HUNDREDS OF THOUSANDS OF VEHICLES. WHY CAN'T THIS BE DONE VIA A 'SIMPLE' SW UPDATE THE WAY 21ST CENTURY CAR-MAKERS DO? OR IS HONDA SIMPLY HIDING AN INEVITABLE FAILURE VIA SW UPDATE? ON THE NOTED DATE, THIS WAS YET ANOTHER RESET OF THE UNIT. THE VEHICLE NOW HAS ABOUT 27,500 MILES, BUT HAS EXHIBITED THIS BEHAVIOR FOR THOUSANDS OF MILES/OVER A YEAR.

i. **DATE OF INCIDENT:** January 25, 2021
**DATE COMPLAINT FILED:** February 2, 2021
**NHTSA/ODI ID:** 11391166
**SUMMARY:** THE HONDA INFOTAINMENT SYSTEM WOULD FREEZE AND CRASH WHILE THE VEHICLE IS IN OPERATION. THE INFOTAINMENT SYSTEM IS USED AS A NAVIGATION SYSTEM, RADIO, BACKUP CAMERA AND SETS VARIOUS SETTINGS FOR THE CAR. WHEN THIS DEFECTIVE INFOTAINMENT SYSTEM CRASHES, IT CAUSES THE DRIVER TO THINK SOMETHING BAD IS HAPPENING TO THE CAR AND DRIVER WILL BE VERY DISTRACTED.

j. **DATE OF INCIDENT:** July 23, 2021
**DATE COMPLAINT FILED:** December 10, 2021
**NHTSA/ODI ID:** 11443415
**SUMMARY:** My 2017 Accord infotainment system's Apple carplay constantly freezes whenever I use it. This is posing as a safety risk because the infotainment unit would randomly freeze up and require shutting off the car and turning it back on in order for it to work again. There are multiple people experiencing this. https://forums.macrumors.com/threads/2016-2017-honda-accord-carplay-issues.2287310/ https://www.driveaccord.net/threads/2016-accord-ex-l-apple-carplay-screen-freezes.554208/page-3#post-6821377

k. **DATE OF INCIDENT:** November 1, 2021
**DATE COMPLAINT FILED:** November 1, 2021
**NHTSA/ODI ID:** 11438836
**SUMMARY:** The In-car infotainment suddenly goes blank (black screen) after changing from reverse drive to Drive mode. I have to stop car put in parking and then screen comes back or else I have to un plug the mobile while driving and re plug to car play. This puts me in danger while driving.

l. **DATE OF INCIDENT:** April 28, 2021
**DATE COMPLAINT FILED:** April 29, 2021
**NHTSA/ODI ID:** 11414392
**SUMMARY:** INFOTAINMENT SYSTEM FREEZING FREEZES OR GOES BLANK WHILE USING IPHONE TO NAVIGATE. OCCURS WITH BOTH GOOGLE AND APPLE MAPS. RESOLVING OFTEN REQUIRES WAITING 10 PLUS MINUTES OR TURNING CAR OFF AND RESTARTING IT.

m. **DATE OF INCIDENT:** April 3, 2021
**DATE COMPLAINT FILED:** April 4, 2021
**NHTSA/ODI ID:** 11406354
**SUMMARY:** NOT ONLY DOES THE INFOTAINMENT SCREEN SOMETIMES BLACK OUT WHEN I AM NAVIGATING, BUT THE EMERGENCY BRAKING SOMETIMES KICKS IN ON THE INTERSTATE HIGHWAY WHEN THERE IS NO CAR IN FRONT OF ME OR NONE ON EITHER SIDE. I ALSO GET OCCASIONAL COFFEE CUP ICONS WITH A DRIVER ALERT SIGNAL EVEN WHEN I AM DRIVING IN A STRAIGHT LINE, YET CONSCIOUS OF THE NEED TO STEER A BIT TO TELL THE SYSTEM I AM ALERT. THE ALERTS HAPPEN AT HIGHWAY SPEEDS.

THIS HAS HAPPENED QUITE A FEW TIMES. THE DEALER'S ONLY RESPONSE WAS THAT HONDA IS AWARE AND BLAMES THE PROBLEM ON USING THE CORD THAT MUST BE USED TO ACTIVATE CARPLAY AND THE NAVIGATION SYSTEM!

n.  **DATE OF INCIDENT:** April 6, 2020
    **DATE COMPLAINT FILED:** April 19, 2020
    **NHTSA/ODI ID:** 11321560
    **SUMMARY:** I HAVE A 2017 ACCORD - THE BACKUP CAMERA LCD SCREEN STARTED TO FLICKER FOR A FEW DAYS EACH TIME I PUT THE CAR INTO REVERSE ALSO WAS REAL GRAINY THE WEEK BEFOR THE FLICKERING . WHEN I CHANGED THE CAMERA ANGLE IT WOULD SOMETIMES COME BACK AND WORK WHILE BACKING UP, BUT THEN IT WENT TO A BLACK SCREEN ALTOGETHER. IT'S BEEN BLACK EVER SINCE, THE CAMERA GOES ON WHILE I REVERSE BUT NOTHING SHOWS ON THE LCD SCREEN BUT THE GUIDING YELLOW LINES THAT SEEM TO BE POINTING UP. I NOTICED THE RECALL OF THE 2018 ACCORDS BACKUP CAMERA AND I THINK THE SAME ISSUE IS HAPPENING WITH THE 2017 ACCORD. MY VEHICLE HAS BEEN PARKED FOR A WEEK BEFOR THIS HAPPENED. I REALLY BELIEVE THIS NEEDS TO BE LOOKED INTO AND SOMETHING NEEDS TO BE DONE. I SEE THAT MORE THAN JUST MY 2017 ACCORD HAS BEEN HAVING THE SAME ISSUE WITH THERE BACKUP CAMERA AS WELL.

o.  **DATE OF INCIDENT:** January 16, 2019
    **DATE COMPLAINT FILED:** March 18, 2019
    **NHTSA/ODI ID:** 11189833
    **SUMMARY:** REAR VIEW CAMERA GLITCHES THEN WENT BLACK. VERY SHORT INTERMITTENT ON, BUT THEN GLITCHES AND SCREEN GOES BLACK AGAIN. NOW THE SCREEN STAYS BLACK WHEN SHIFTING INTO REVERSE OR TRY DIFFERENT ANGLES. CLEAN LENS AND NO OBSTRUCTIONS.

120.    The following are complaints related to Honda CR-Vs as filed with NHTSA:

a.  **DATE OF INCIDENT:** August 3, 2021
    **DATE COMPLAINT FILED:** August 3, 2021
    **NHTSA/ODI ID:** 11427595
    **SUMMARY:** Rear backup camera failed after less than 5 years of very light use, I only have less than 9,000 miles in my vehicle. Backup camera is completely off, for example, wide angle is now displaying ground angle, normal angle is now out of alignment. I bought and replaced it with a brand new backup camera, but the problem persists that tells me that the problem is something else possibly related to the software if it wasn't hardware. This is potentially a safety hazard because I now have to turn my head to backup rather than using it together with my backup camera. I asked dealer to take a look, but they quoted me $605.00 for a potential fix, did not make a guarantee that the problem will be resolved. At first, the problem happen intermittently, but now seem to be permanent. I Google about

this problem on the Internet, seem to happen to a lot of Honda vehicles, but there was never a clear solution as to what caused it. Attached a photo, wide angle view went to the ground instead, even normal angel view is completely out of rack and out of alignment.

b. **DATE OF INCIDENT:** May 4, 2020
**DATE COMPLAINT FILED:** May 12, 2021
**NHTSA/ODI ID:** 11416231
**SUMMARY:** DRIVING ON CITY STREET AND INTERSTATE THE INFOTAINMENT SYSTEM IN THE VEHICLE WILL RANDOMLY GO OUT. THIS HAS HAPPENED IN THE PAST BUT HAS PROGRESSIVELY GOTTEN WORSE. THE INFOTAINMENT SYSTEM HOUSES THE GPS AND CLIMATE CONTROL (DEFROST) SYSTEM ALONG WITH THE CAR SETTINGS (ADAS) AND ENTERTAINMENT SYSTEM. WHEN YOU ARE DEPENDENT ON THE GPS FOR NAVIGATION AND YOU LOOSE THE DIRECTIONS YOU GO INTO A PANIC SITUATION TRYING TO FIGURE THINGS OUT. WHEN THE WINDSHIELD FOGS AND YOU CAN'T USE THE DEFROST SYSTEM IT BECOMES A VISIBILITY ISSUE. DEALERSHIP HAS UPDATED THE SOFTWARE BUT STILL CONTINUES TO HAPPEN.

c. **DATE OF INCIDENT:** January 1, 2019
**DATE COMPLAINT FILED:** October 11, 2020
**NHTSA/ODI ID:** 11363806
**SUMMARY:** FLORIDA ARBITRATION CLAIM IN PROGRESS: AFTER THE FIRST YEAR OF PURCHASING THIS VEHICLE, THE CRV NAVIGATION DISPLAY SYSTEM HAS BEGUN TO MALFUNCTION. THIS INCLUDES FREEZING, CHANGE IN BRIGHTNESS, LOSS OF FUNCTIONS SUCH AS NAVIGATION CONTROL, RADIO CONTROL AND CAMERA CONTROL. ADDITIONALLY, THIS IS A SAFETY HAZARD FOR MYSELF AND THOSE AROUND ME AS THE SYSTEM WILL LOCK UP AND IF THE HANDS FREE IS IN USE A SCREECHING NOISE WILL OCCUR UNTIL THE CAR HAS BEEN STOPPED AND COMPLETELY RESTARTED AS THIS OCCURS ONLY WHILE THE CAR IS IN OPERATION AND MOVING.. THE ONLY TEMPORARY FIX HAS BEEN TO RESTART THE CAR UNTIL IT OCCURS AGAIN. ALSO WHEN THIS OCCURS, THE A/C WILL CEASE FUNCTIONING. HONDA HAS REPEATEDLY SATED THAT THE ISSUE IS AN ISOLATED ISSUE AND THAT IT WAS DUE TO MY PHONE SAYING THAT MY SAMSUNG IS NOT COMPATIBLE WITH THE CAR. HOWEVER, THE CAR IS FEATURE SPECIFICALLY WITH ANDROID AUDIO.

d. **DATE OF INCIDENT:** June 15, 2018
**DATE COMPLAINT FILED:** January 16, 2020
**NHTSA/ODI ID:** 11299763
**SUMMARY:** WHILE EITHER DRIVING VEHICLE OR THE VEHICLE IS STATIONARY, INFOTAINMENT SYSTEM WHILE USING NAVIGATION, MUSIC, ETCETERA FROM INFOTAINMENT SCREEN, WILL EITHER REBOOT OR GO BLANK. THIS HAS HAPPENED INTERMITTENTLY SINCE WE HAVE TAKEN POSSESSION OF THE CAR IN APRIL 2018.

e. **DATE OF INCIDENT:** July 31, 2018
   **DATE COMPLAINT FILED:** December 26, 2019
   **NHTSA/ODI ID:** 11291320
   **SUMMARY:** HAPPENS SHORTLY AFTER STARTING THE CAR AND COMMONLY WHEN THE VEHICLE IS IN MOTION. IF YOU USE A USB STICK TO PLAY AUDIO THROUGH THE CAR STEREO WILL TEMPORALILY FREEZE AND REQUIRES YOU TO PRESS THE SCREEN AGAIN TO RESUME THE MUSIC PLAYING. THIS ISN'T MUCH OF A SAFETY CONCERN EXCEPT IF THIS HAPPENS WHEN YOU ARE USING THE REAR CAMERA TO BACK UP. THE SCREEN WILL STOP SHOWING A LIVE FEED AND JUST SHOW WHAT IS SHOWING WHEN IT FROZE. PEOPLE MAY NOT NOTICE THAT THE PICTURE ISN'T LIVE AND CONTINUE THINKING THAT EVERYTHING IS CLEAR BEHIND THEM. THANKS TO GOV'T REAR CAMERAS ARE BEING REQUIRED. THIS ISSUE I'VE BEEN EXPERIENCING SADLY LESSENS THE SAFETY OF A CAR RATED AS A TOP SAFETY PICK BY YOUR ORGANIZATION (NOT BLAMING YOU FOR NOT NOTICING IT) 7/26/19 I MADE AN APPOINTMENT WITH HONDA OF PRINCETON WHO WASN'T ABLE TO RESOLVE THE ISSUE NOR DID THEY INSTILL CONFIDENCE THAT THEY'D BE ABLE TO FIX THE PROBLEM. THIS EXPLAINS THE DELAY IN REPORTING TO YOU. I SPOKE WITH HONDA 12/26/19 (CASE 10111741) AND THEY SAID THAT THIS IS A KNOWN ISSUE AND DIDN'T HAVE A FIX AT THE TIME. THIS HAS BEEN A PROBLEM EVER SINCE WE GOT THE CAR. WE HAVE TRIED DIFFERENT USB DRIVES WITHOUT SUCCESS. I WOULD LIKE YOUR HELP IN APPLYING PRESSURE FOR A FIX TO BE ISSUED. THANK YOU FOR YOUR TIME!

f. **DATE OF INCIDENT:** November 2, 2020
   **DATE COMPLAINT FILED:** August 5, 2021
   **NHTSA/ODI ID:** 11427817
   **SUMMARY:** This was my first explanation of my cars defect when submitting a claim to Honda through the NCDS. Good morning, I have had trouble with Apple Car Play since I purchased my new vehicle. I called the dealership in November and asked how to fix it. They suggested to try an apple USB/IPhone charger so I tried varies different USB cords and got them to work for awhile. In Jan. 2021 my Apple Car Play just stopped working all together. I would plug in my phone and the car would tell me that this function is not available. Then when I did occasionally get it to work, about 5 minutes into my drive. My touch screen monitor would turn completely black and I wouldn't be able to use any other functions, even after turning my car off and back on, the screen would remain black until the next time I drove it. It works for a short period of time after doing a factory reset but only for about 12 hours, then it either turns black or the message "this function is unavailable" pops up and my device isn't detected. I can't even use the iPod function just to play music, it's like it doesn't recognize my phone, yet it will charge my phone. It just won't recognize anything else. I have brought it into the dealer 6 times regarding this issue before the last two attempts to fix it, I even called apple support as recommended by the dealership. They were aware of the issue and told me to wait until the next update for it to be fixed. So I did...

SECOND AMENDED CLASS ACTION COMPLAINT

and it still didn't work. That's when I went in two more times and no one can seem to figure out what's wrong. Thank you for your time, I hope we can resolve this issue soon. Have a great day! Cassie I had sent in multiple documents and a testimony explaining my cars defect and due to that defect the loss of use, value and safety to the vehicle. My request to fix this defect was denied. My case manager then notified me to move forward with my case and file a claim through the Minnesota Lemon Law and they recommend also submitting a claim to NHTSA

g. **DATE OF INCIDENT:** March 1, 2021
   **DATE COMPLAINT FILED:** May 22, 2021
   **NHTSA/ODI ID:** 11418150
   **SUMMARY:** Unknown: computer touch screen periodically shuts down. It also loses connection for unknown reason with Apple play. I've rebooted the computer and sometimes that helps but not as much as I'd hope for it to resolve the connecting issue.

h. **DATE OF INCIDENT:** August 3, 2020
   **DATE COMPLAINT FILED:** September 5, 2020
   **NHTSA/ODI ID:** 11353286
   **SUMMARY:** NAVIGATION HEAD UNIT SPONTANEOUSLY WENT ERRATIC DURING ROUTE NAVIGATION. DISPLAY FLASHING ON AND OFF, BRIGHTNESS CONTROL APPEARING AND DISAPPEARING. UNRESPONSIVE AND UNABLE TO REBOOT SYSTEM. DANGEROUS DISTRACTION FOR DRIVER BECAUSE OF SUDDEN NATURE OF SYSTEM FAILURE. STOPPING AND RESTARTING VEHICLE RETURNED NORMAL FUNCTION.

i. **DATE OF INCIDENT:** April 8, 2022
   **DATE COMPLAINT FILED:** May 31, 2022
   **NHTSA/ODI ID:** 11466774
   **SUMMARY:** While driving the vehicle on an interstate, the dashboard and infotainment system screens both went completely dark. Pulled the vehicle off the highway; shutting it off and restarting it did not resolve the issue. After using the steering wheel controls and screen brightness rotary control on the dashboard the displays eventually came back on. So far this is a one-time occurrence; however, a friend with the same year and model (2020 CR-V Ex) just experienced a similar problem. In his case the dashboard display continued to work but the infotainment system went dark. I took the vehicle in to a local Honda dealer. They were unable to find any issues with the vehicle displays and said there are no active recalls. Note that a similar problem resulted in a recall for 2017-2019 Honda CR-Vs. Apparently the 2020s have the same or similar issue which to date Honda has not addressed.

j. **DATE OF INCIDENT:** March 4, 2022
   **DATE COMPLAINT FILED:** May 22, 2021
   **NHTSA/ODI ID:** 11455169
   **SUMMARY:**
   What component or system failed or malfunctioned, and is it available for

inspection upon request? Infotainment display. Yes it is available for inspection. How was your safety or the safety of others put at risk? The display periodically freezes in rear camera view when the vehicle is moving forward. It also freezes in other views and crashes. Has the problem been reproduced or confirmed by a dealer or independent service center? No, dealer could not reproduce. Has the vehicle or component been inspected by the manufacturer, police, insurance representatives or others? No Were there any warning lamps, messages or other symptoms of the problem prior to the failure, and when did they first appear? No.

k.  **DATE OF INCIDENT:** February 11, 2023
    **DATE COMPLAINT FILED:** February 25, 2023
    **NHTSA/ODI ID:** 11509069
    **SUMMARY:** 2019 Honda CR-V, The Info-Tainment panel for the Radio, A/C, etc, goes dark randomly and returns randomly. There is no pattern, sometimes it works and sometimes it does not. The rear camera is also affected if the car is in reverse. Have had the car about 4 years and started doing this two weeks ago. Thank you.

l.  **DATE OF INCIDENT:** December 1, 2021
    **DATE COMPLAINT FILED:** March 4, 2022
    **NHTSA/ODI ID:** 11455153
    **SUMMARY:** While driving, when using the radio or GPS, the display on the center console will intermittently go haywire. Display will turn on and off, loudly beep, screen will go blank and then turn back on unexpectedly, brightness adjustment bar appears on screen. There is no control over these problems except having to stop the car and turn it off fo a couple of minutes. Very distracting and dangerous while driving.

### Customer Complaints on Third-Party Websites

121.   Similarly, complaints posted by consumers in internet forums demonstrate that the Defect is widespread and dangerous and that it can manifest without warning and/or suitable repair. The complaints also indicate Honda's awareness of the problems with the Infotainment System and how potentially dangerous the Defect is for consumers because the complainants often indicate they have spoken with dealers and/or Honda and because car manufacturers routinely monitor third-party websites—especially those websites dedicated to specific models—as a part of brand management. The following are a sample of consumer complaints (spelling and grammar mistakes remain as found in the original):

122.   On carproblemzoo.com, a consumer of a 2017 Honda Civic posted the following:

july 2017 is when I first noticed my car automatically re-setting while I was

driving down the florida turnpike at legal speed of 70 miles an hour! all of a sudden the car's dashboard illuminated with every colored warning light & a spinning-doted circle light as if car computer was searching for a signal or being remotely reset! the radio turned off, the screen went black, the computer dashboard flashed until finally the �h� Honda logo appeared on the radio screen resetting itself. Scaring me to believe the car was shutting down or about to malfunction while I was driving! three months later the radio, satellite, side mirror camera, rear backup camera every thing associated with the computer brain of this car completely went out! nothing can be reset through the radio as it's just stuck. Honda dealership has no explanation other replacement for safety! dealership reached out to Honda for assistance as I've exceeded 36,000 mile complementary warranty. Honda actually took responsibility for this malfunction at first, stating they would pay/cover majority of cost leaving balace of $300. I found this to be crazy, as this electical malfunction was no fault of my own & should initiate recall! as I now have no way of knowing if all system warning lights are error or actual safety warnings! I have no rear camera or side mirror camera due to this radio/computer malfunction! this is a danger driving this car so I contacted Honda and explained I was willing to pay the $300 for replacement. Only to be told their offer to pay/cover malfunction errors was no longer on the table, giving no reason why offer was revoked! the claims adjuster and her manager then very rudely & disrespectfully hung up the phone! I feel unsafe everytime behind the wheel of this car! please aid in establishing a recall.

123.    On carproblemzoo.com, a consumer of a 2019 Honda Civic posted the following:

My camera that is supposed to assist in turning and seeing my blind spot is always malfunctioning in my new 2019 Civic. Honda says they can't do

anything about that. I've already had to put new tires on my car - which I suspect didn't have new tires on it when I purchased my new car. Replace the battery, and my electronic features (radio screen and windows) like to stop working and go black - including my side camera that's meant to assist in lane changes. Additionally, my car melted in the sun. This has been a known issue with Honda since 2011 and they haven't addressed that issue or gave any warnings. My tires, and camera for blind spots is a safety issue and the fact that my car is unreliable and melting(!) is troublesome and a safety problem.

124.    On civicforums.com, a consumer of a 2019 Honda Civic posted the following:

I have a 2019 Civic Touring. I have had it for 6 weeks and have have to do a reboot on my infotainment system 7 times now. I use an iPhone XS Max with it. It occurs when I have stopped for gas or fast food and turn the car off. I then restart it and the Honda logo pops up and then the display goes BLANK. Nothing else works after this. I have to reboot the infotainment. I took it in to service at the Honda Dealership and they have nothing in their network regarding this for 2019 Civics.

I have rebooted my iPhone. My updates are consistently current on my iPhone. I have repaired the bluetooth with my iPhone and the intermittent issue continues. They could not duplicate it at the dealership (par for the course). I thought I would reach out to fellow civic owners for some help!

125.    On 10thcivicforum.com, another consumer posted the following:

I have had my 17' EX-L hatchback for about two weeks now and have about 200 miles on it. Everything was going great, but now all of a sudden the screen on my infotainment system flickers off every 30 seconds or so. I can't change radio stations, I can't power it off, I can't adjust AC, fan speed, or climate controls. None of the menu, power, power etc. buttons work on the left side of the screen. Any one else having same issue?

126.    On civicx.com, another consumer posted the following:

> This happens almost all the time Anyone else been having their system act
> stupid? Mine doesn't turn on with the car and is non-responsive to any touch
> panel buttons, steering wheel controls or any other input probably 1 out of
> 10 starts. Eventually it will reboot while driving for a while, like it suddenly
> realized it was being stupid. Yesterday I had it lock up on me (stuck volume,
> no control over anything related to the infotainment) while I was in a drive
> thru. Was pretty annoying because I couldn't turn the music to hear the
> window guy. Help me because no one else does.

127.    On 10thcivicforum.com, another consumer posted the following:

> I have been having a lot of software issues with my 2016 EX-T. The Honda
> Link does not work most of the time, the clock will not update, the Bluetooth
> does not recognize my phone and the Android Auto hardly ever works and
> this is after having in the shop twice in the past 2 months! Anyone else
> having these issues?

128.    On driveaccord.net, a consumer posted the following on March 8, 2021[6]:

> hey everyone,
>
> I need your advise. My infotainment system does not turn on at all. The
> screen is completely blacked out and it does not respond. Do you have any
> ideas on what could be the problem ?

129.    On driveaccord.net, another consumer posted the following on November 22,
2015[7]:

> So I picked up a 2016 Civic.
>
> The infotainment system has been buggy as hell.
>
> I believe it's the same android based system in the 2016 Accords.

---

[6] *See* https://www.driveaccord.net/threads/infotainment-system-doesn%E2%80%99t-turn-on.556632/#post-6902578

[7] *See* https://www.driveaccord.net/threads/2016-accord-infotainment-system.361882/

1          What have people's experiences been?

2          Anyone talk with Honda about it?

3     130.    On driveaccord.net, another consumer posted the following on June 27, 2015[8]:

4          Hey There, I was wondering if anyone else is having this issue?

5          -I got my Honda Accord back in Nov 2014

6          -In Feb of 2015 I started having issues with my Honda Accord infotainment

7          freezing.

8          -Contacted Honda they suggested having dealer see the issue.

9          -Took it for service they could not find anything wrong with it.

10         -Issue got worse. Dealer said it was something with iPhone. Restore device

11         and replaced iPhone 6 plus. Issue was still there.

12         -Few weeks went by.

13         -Contacted Honda Frustrated they suggested to drop off to dealer and have

14         them run further testing.

15         -They could not verify issue. after having car for two days. During pickup

16         they tried to had me replicate issue. I was able to show them how system was

17         responding with a latency with pandora. but everything else was working.

18         -They schedule another drop off. To call service tech and to update car to

19         have Siri eyes free.

20         -After having the car for a day there conclusion was.

21         -My iPhone 6 Plus running iOS 8 is not compatible with there Handsfree

22         System,

23         -Therefore Siri Eyes Free is not an option on my model year (not sure if it

24         will ever happen) Freezing and locking up is expected.

25         -They said they may have an update by Late summer (~September 2015)

26         -For now just pull over and turn car off and on, to reset infotainment system.

27         -I just think its kind unacceptable Honda and other car companies needs to

28

[8] *See* https://www.driveaccord.net/threads/infotainment-issues.325449/

1    get moving technology is moving fast they got to try keep up with.

2    -The frustrating parts is that I have a unusable car radio until Honda decided

3    to update.

4    -I can use radio but nothing else.

5    -Now my bluetooth keeps dropping connection with my car. which was not

6    happening before.

7    -Replacing my iPhone again. To tell Handa that they broke it.

8    -They said they only support phones from there HONDALINK website.

9    -Which is nothing in the last year.

10   131.   On driveaccord.net, another consumer posted the following on November 8,

11   2019[9]:

12        I tried to search for this but couldn't find something similar.

13        Was driving home yesterday towards end of a long ride, had the radio playing

14        and the navi system on. A loud constant buzzing sound came over the speakers

15        and the info unit locked up. I could hear the radio and the navi in the

16        background under the buzzing. I couldn't turn the radio off or adjust the

17        volume. I pulled over and shut off the car. The buzzing and radio sounds

18        continued after shutting off the car. It took three attempts to restart the car.

19        After a minute or so the screen went black and all the sounds stopped. The unit

20        rebooted on its own and everything was fine after that. All appeared normal

21        today.

22        Anyone else experience this, should I be worried? All other functions and

23        displays (dash cluster) seemed unaffected.

24   132.   On driveaccord.net, another consumer posted the following on May 3, 2016[10]:

25        I've been noticing that when I have my iPhone plugged in the USB to use Car

26   _____

27   [9] *See* https://www.driveaccord.net/threads/buzzing-sound-and-lockup-of-infotainment-system.549149/

28   [10] *See* https://www.driveaccord.net/threads/2016-ex-l-infotainment-issue.399962/

Play, it will intermittently drop connection to the phone. I thought originally that it was the cable, but now am not so sure. This past weekend when using it, the audio (iHeart or Pandora) would get really choppy almost like static interference and then my phone would disconnect. The last couple times before the phone disconnected, the head unit did a hard reboot (powered off and back on). At no time did my phone reboot /lock up or in any way stop working. We were close enough to home that for the last 45min of the trip we just used the radio and had no issues.

I'm gonna purchase another cable to rule that out and try using the wife's iPhone 6 instead of my 5 to see if that makes any difference. we do not have Nav. Anyone else experiencing this? I can't do anything other than use Car Play to reproduce at this time and it sometimes doesn't act up or takes hours to manifest... Hate the thought of multiple dealer trips with no problem found on the repair order

133.    On crvownersclub.com, a consumer posted the following on May 23, 2017[11]:

Infotainment system restarts when I start the car. It happens after the car is off for some time, hour maybe two. It is taking some time, up to 1 minute to turn on build in Android.

During this time I can see only Honda Logo on the screen and rotating dots on the dashboard.

Backup camera is working but there are no parking lines.

134.    On crvownersclub.com, another consumer posted the following on November 9, 2018[12]:

The display on my infotainment system has been having glitches for awhile, but now they are becoming more frequent. I'm going to list the glitches and

---

[11] *See* https://www.crvownersclub.com/threads/infotainment-system-restarts-when-starting-the-car.143618/#post-1016826

[12] *See* https://www.crvownersclub.com/threads/infotainment-screen-display-issues-flashing-colors.192215/#post-1508279

maybe somebody can give me some advice if they have had these issues too. In each situation, the glitch lasts anywhere between one to three seconds, then the screen flashes to black and then back to normal.

1 - The bottom half of the screen will turn red and the top blue; I have the color schematic set to the default blue. You can still read the screen just fine, except it's like the computer doesn't know what color to customize the screen so it does two at one time.

2 - The screen will flash to green, then black, then back normal. This one worries me because the screen turns pure green, you cannot see text or any gradient; sort of reminds me of a computer having display driver problems. This glitch will only last for a fraction of second but the color is so intense it grabs your attention.

3 - The screen will flash static (think watching an analog TV with an antenna durning a lightning storm and the black and white static that would ripple across the screen when a bolt of lightning would strike nearby)

4 - The screen will split in half horizontally, taking the top half and switching it with the bottom half (color remains the same).

I know when I take the car to the dealership, the technician is going to say that the problem cannot be reproduced. I say that because I cannot get the car to reproduce the problem either; bumps, turns, hard stops nor connecting my iPhone have produced the glitches. The only thing that I can say is - it always happens when I'm driving. Sometimes shortly after starting to drive, sometimes 30 minutes into a drive, sometimes it won't happen for a week at a time.

It really seems like it's a loose connection based on how fast the screen error occurs and then resolves. The glitch happens so fast I can never get a photo taken (although, I'm thinking about mounting a GoPro and hitting record, see if I can capture the glitch on video). Every time I go in for service, I do ask the

1      dealer to check for updates to the computer system.

2          I've put about 30,000 miles on my car and worry what will happen if the screen

3      stops when the warranty runs out. If I have the dealership note that the screen

4      is having issues while under warranty, will Honda repair the screen after the

5      warranty runs out?

6          This infotainment system is integrated into the cars main functions to the point

7      I would have no other option than to replace the unit quickly if it were to

8      completely fail.

9          If I can get a photo of a glitch in action, I will post it here –

10     135.    On crvownersclub.com, another consumer posted the following on January 1,

11     2023[13]:

12         I did replace my battery yesterday.

13         but now my CRV the infotainment system doesn't turn on. Only I can see black

14         screen with the HONDA logo. (The image I have attached it below) soI can't

15         control

16         - audio player

17         -aircondinaer settings

18         -car settings

19         -reset car warning settings.

20

21         What I tried so for to fix it

22         disconnect the battery (left all the power out) and connected back disconnect

23         the audio system Fuse and connect back.

24

25         But still, it hasn't startup.

26     136.    Could   you   please   someone   advise   me   on   how   to   fix   this??On

27
_____
28     [13] *See* https://www.crvownersclub.com/threads/infotainment-system-
       doesn%E2%80%99t-turn-on.232353/#post-1782476

1    crvownersclub.com, another consumer posted the following on May 30, 2021[14]:

2         May 30 2021 update - have had the car 6 months now - problems persist. As

3         mentioned previously my infotainment unit was replaced by Honda, but still

4         have the same issues. Random disconnects when listening to music. CarPlay

5         phone has extreme poor quality for listener, slow buggy experience. I bought

6         an anker lightning cable to try, no change. I use OEM ones too. Currently have

7         iPhone 12 Pro Max 256 iOS 14.6 (latest) - was hoping there would be some

8         fixes, but sadly my issues persist.

9         I feel like it's a lost cause, and I'd anticipate a 2022 completely new redesign

10        and unit which I'll want, as what seems like a never ending issue. Otherwise I

11        like the car, this is just so frustrating.

12   **Honda Had Superior and Exclusive Knowledge of the Infotainment System Defect**

13        137.    Honda had superior and exclusive knowledge of the Infotainment System Defect

14   and knew or should have known that the Defect was not known or reasonably discoverable by

15   Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

16        138.    Discovery will show that before Plaintiffs purchased their Class Vehicles, and

17   since at least 2015, Honda knew about the Infotainment System Defect through sources not

18   available to consumers, including pre-release testing data, early consumer complaints to Honda

19   and its dealers who are their agents for vehicle repairs, consumer complaints regarding earlier

20   model years equipped with the same Infotainment System, testing conducted in response to

21   those complaints, high failure rates and replacement part sales data, consumer complaints to

22   NHTSA (which Honda monitors), by developing TSBs in an effort to address the Infotainment

23   System Defect, and through other aggregate data from Honda dealers about the problem. TSBs

24   are issued exclusively to Honda's dealerships and service providers and are not disseminated to

25   consumers, even if their vehicles receive services as outlined in the bulletins.

26        139.    Honda is experienced in the design and manufacture of consumer vehicles. As

27   

28   _____

[14] *See* https://www.crvownersclub.com/threads/apple-carplay-issues.215714/page-5#post-1689718

an experienced manufacturer, Honda conducts tests, including pre-sale durability testing, on incoming components, including the Infotainment System, to verify the parts are free from defect and align with Honda's specifications. Thus, Honda knew or should have known the Infotainment System was defective and prone to put drivers in a dangerous position due to the inherent risks of the Infotainment System Defect.

140.    Additionally, discovery will show that Honda knew of the impact of this Defect from the sheer number of reports received from dealerships. Honda's customer relations department, which interacts with individual dealerships to identify potential common Defects, has received numerous reports regarding the Defect, which led to the release of TSBs and dealer communications. Honda's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

141.    Defendants' warranty department similarly analyzes and collects data submitted by its dealerships to identify warranty trends in its vehicles. It is Defendants' policy that when a repair is made under warranty the dealership must provide Honda with detailed documentation of the problem and a complete disclosure of the repairs employed to correct it. Dealerships have an incentive to provide detailed information to Defendants, because they will not be reimbursed for any repairs unless the justification for reimbursement is sufficiently detailed.

142.    Well before the first Class Vehicle was sold, and as early as 2012, Honda knew or should have known that the Infotainment Systems were defective in design and/or manufacture and that the Defect would adversely affect the drivability of the Class Vehicles and cause safety hazards, including driver distraction. Honda first began using Honda Link, as well as substantially similar Infotainment Systems as the Class Vehicles, in 2013 Honda Accords, as touted in multiple Honda press releases.[15]

---

[15] *See* Honda Media Newsroom, All-New 2013 Honda Accord Brings Remarkable Levels of Luxury, Agility, Efficiency and Sophistication to Midsize Segment's Legendary Nameplate (Sep. 5, 2012), available at:      https://hondanews.com/en-US/releases/release-765a073c8fec45f187cf94af5947aca4-all-new-2013-honda-accord-brings-remarkable-levels-

143. Indeed, beginning in 2014, Honda began a Customer Satisfaction Campaign, referencing TSB No. 13-001, for 2013 Honda Accord owners and lessees, asking them to visit "any authorized Honda dealer" for free repair to the "software for your audio or audio-navigation unit" in order to address "known audio, HandsFreeLink, and navigation system bugs."

144. In February 2018, Honda issued TSB 18-001 for certain Class Vehicles. The TSB was titled "Audio Unit/Audio-Navigation Unit Update: XM Check Tuner Message, GPS Signal, Trip A History." Specifically, the TSB was issued to correct "a problem with the audio/audio-navigation unit software." It addressed many symptoms of the Defect, as shown in Figure 5 above. The only repair procedure prescribed by the TSB was to "update the audio unit software using the audio-navigation system update device." Discovery will show that the problem persisted despite these updates, and this TSB was superseded in June 2018, with TSB 20-23-001 Version 2. This revised TSB addressed the same concerns but updated the repair procedure images.

145. In October 2020, Honda issued TSB 20-0889 for certain Class Vehicles. The TSB was titled "2018 Civic: Bluetooth HandsFreeLink Freezes After Calls: Voice Tags Are Missing at Startup." Specifically, the TSB was issued to correct a problem with the software that would result in the Bluetooth system and Infotainment System display "freezing." The only repair procedure prescribed by the TSB was to "update the audio unit software." Discovery will show that the problem persisted despite these updates.

146. On January 22, 2021, Honda issued Communication No. 10186018-001, a Technical Information & Support Group ("TISG") priority action sent to authorized Honda dealers by Honda, stating it was "searching for certain 2016-2020 Civics with a customer

of-luxury-agility-efficiency-and-sophistication-to-midsize-segment-s-legendary-nameplate (last accessed September 14, 2022); see also New Cloud-Based HondaLink™ Connected Car System Helps Drivers Put Away Their Phones While Maintaining Intuitive Access to Their Favorite Media (July 18, 2012), available at:

 https://hondanews.com/en-US/releases/release-c7d4bf687fb74cc3a591c8864529caf6-new-cloud-based-hondalink-connected-car-system-helps-drivers-put-away-their-phones-while-maintaining-intuitive-access-to-their-favorite-media (last accessed September 14, 2022).

complaint of the rear-view camera screen appearing blank, foggy or blurry. To better understand the cause of this condition, AHM would like to collect specific information from the vehicle prior to you attempting a repair of any kind." The communication went on to provide instructions for providing the requested information to Honda. This TISG Communication was re-issued to all Honda authorized dealers on February 15, 2021, under Communication No. 10187531-001, and March 10, 2021, under Communication No. 10189043-001, using precisely the same language.

147.    On October 1, 2021, Honda issued communication no. 10202268-001, a TISG priority action sent to authorized Honda dealers by Honda, stating it was "searching for certain 2019-2020 Civics (2dr or 4dr) & CR-Vs with a customer complaint of the audio screen turning black, blank or inop. To better understand the cause of this condition, AHM would like to inspect the vehicle prior to you attempting a repair of any kind." The communication went on to provide instructions for providing the requested information to Honda.

148.    On March 23, 2022, Honda issued Communication No. 10210077-001, a TISG priority action sent to authorized Honda dealers by Honda, stating it was "searching for certain 2017-2018 Civic & CR-Vs with a customer complaint of an inop, blank, or black meter display with no prior repairs. To better understand the cause of this condition, AHM would like to inspect the vehicle prior to you attempting a repair of any kind." The communication went on to provide instructions for providing the requested information to Honda. This TISG Communication was re-issued to all Honda authorized dealers on April 26, 2022, under Communication No. 10211113-001 and using precisely the same language.

149.    Discovery will show that each TSB, Customer Satisfaction Campaign, and TISG communication issued by Honda was approved by managers, directors, and/or executives at Honda. Therefore, discovery will show that Honda's managers, directors, and/or executives knew, or should have known, about the Infotainment System Defect, but refused to disclose the Infotainment System Defect to prospective purchasers and owners, and/or actively concealed the Infotainment System Defect.

150.    The existence of the Infotainment System Defect is a material fact that a

reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiffs and other Class Members known of the Infotainment System Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

151.    Reasonable consumers, like Plaintiffs, expect that a vehicle's Infotainment System is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiffs and Class Members further reasonably expect that Honda will not sell or lease vehicles with known safety defects, such as the Infotainment System Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Honda to conceal and fail to disclose the Infotainment System Defect to them, and to then continually deny its existence.

**Honda Has Actively Concealed the Infotainment System Defect**

152.    Despite its knowledge of the Infotainment System Defect in the Class Vehicles, Honda actively concealed the existence and nature of the Defect from Plaintiffs and Class Members. Specifically, Honda failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)    any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the Infotainment System;

(b)    that the Class Vehicles, including the Infotainment System, were not in good working order, were defective, and were not fit for their intended purposes; and

(c)    that the Class Vehicles and their Infotainment Systems were defective, despite the fact that Honda learned of such defects as early as 2012.

153.    Discovery will show that when consumers present their Class Vehicles to an authorized Honda dealer for Infotainment System repairs, rather than repair the problem under warranty, Honda dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the Infotainment System Defect.

154.    In particular, Honda sought out consumers who were experiencing the Infotainment System Defect via discreet communications with its dealers, rather than publicly advertising that an internal investigation into the Defect was underway.

155.    Honda has caused Plaintiffs and Class Members to expend money and/or time at

its dealerships to diagnose, repair or replace the Class Vehicles' Infotainment System and/or related components, despite Honda's knowledge of the Infotainment System Defect.

**Defendants Have Unjustly Retained a Substantial Benefit**

156.   Discovery will show that Defendants unlawfully failed to disclose the alleged Defect to induce Plaintiffs and other putative Class Members to purchase or lease the Class Vehicles.

157.   Plaintiffs further allege that Defendants thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiffs' Class Vehicles.

158.   As discussed above, therefore, Plaintiffs allege that Defendants unlawfully induced them to purchase their Class Vehicles by concealing a material fact (the defective Infotainment System) and that they would have paid less for the Class Vehicle, or not purchased it at all, had they known of the Defect.

159.   Discovery will show that by failing to disclose the alleged Defect, Defendants retained a substantial benefit by receiving overpayments for each vehicle. The amount of the unjust overpayment Defendants received per vehicle, at the very least, can be measured as the average cost needed to eliminate the Defect from each Class Vehicle. In other words, the measure of the unjust benefit Defendants received at the time of sale is the cost that would be required to render each vehicle in the condition Plaintiffs and Class Members expected at the time of purchase—that is, free of the Defect. Defendants received this overpayment at the time of sale, and so whether or not a given Class Member has paid out of pocket for a repair is irrelevant to this measure of Defendants' benefit.

160.   As described by the Plaintiffs and other Class Members herein, Defendants received a substantial benefit for the repairs of the Class Vehicles paid by owners in amounts ranging from several hundred up to several thousand dollars per vehicle. *See, e.g.*, ¶¶ 118(n), 120(a), 122. At the very least, discovery will show that Defendants unjustly retained the cost of repairing the alleged Defect at a cost of up to several thousand dollars per vehicle multiplied by the number of Class Vehicles sold. Further, the Class have overpaid for the Class Vehicles that

were not sold in the condition advertised.

161.    Accordingly, Defendants' ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did – and likely will continue to – deceive consumers, should be disgorged.

**Honda Authorized Dealers Are Defendants' Agents for the Purposes of Warranty Service and Repair**

162.    In order to sell vehicles to the general public, Honda enters into agreements with its networks of authorized dealerships to engage in retail sales with consumers such as Plaintiffs while also advertising the warranties provided by Honda directly to consumers when they purchase a Honda-branded vehicle from the authorized dealership. These agreements specifically authorize the dealerships to act in Honda's stead to provide repairs under the warranties Honda provide directly to consumers. Accordingly, discovery will show, particularly the dealership agreements between Honda and third-party dealerships, that Honda has authorized these dealerships to be its agents for the purposes of warranty repairs, including diagnosis of whether warranty repairs are required, and as such, the consumers are third-party beneficiaries of these dealership agreements because they benefit from being able to purchase and receive warranty repairs locally. Discovery will show that because Plaintiffs and members of the Class are third-party beneficiaries of the dealership agreement, which create an implied warranty of merchantability of the goods being sold by these authorized dealerships, they may avail themselves of the implied warranty against Defendants.

163.    This is true because third-party beneficiaries to contracts between other parties that create an implied warranty of merchantability may avail themselves of the implied warranty. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010).

164.    Further, Plaintiffs and each of the members of the Class are the intended beneficiaries of the express and implied warranties that accompany each Class Vehicle. The dealers were not intended to be the ultimate consumers of the Class Vehicles, and they have no rights under the warranty agreements provided by Honda. These warranties were designed for

and intended to benefit the consumers only. The consumers are the true intended beneficiaries of the express and implied warranties, and the consumers may therefore avail themselves of those warranties.

165.    Honda issued the express warranty to Plaintiffs and the Class members. Honda also developed and disseminated the owner's manuals and warranty booklets that direct consumers to take their vehicles to authorized dealerships for diagnosis and repair. Honda also developed and disseminated the advertisements such as vehicle brochures and television commercials, and other promotional materials relating to the Class Vehicles and promoting the terms of the warranties that they issue with the sale of each Class Vehicle. Honda is also responsible for the content of the Monroney Stickers on its vehicles. Because it issues the express warranties directly to the consumers, the consumers are in direct privity with Honda with respect to the warranties.

166.    In promoting, selling, and repairing its defective vehicles, Honda acts through numerous authorized dealers who act as, and represent themselves to the public as, exclusive Honda representatives and agents. That the dealers act as Honda's agents is demonstrated by the following facts:

(a)    The authorized Honda dealerships complete all service and repair according to Honda's instructions, which Honda issues to its authorized dealerships through service manuals, technical service bulletins ("TSBs") and other documents;

(b)    Technicians at Honda dealerships are required to go to at least yearly Honda-given trainings in order to remain certified to work on Honda-branded vehicles, at which they receive training on proprietary systems, which provides guided, step-by-step instructions on diagnosing and repairing Honda-branded vehicles;

(c)    Consumers are able to receive services under Honda's issued New Vehicle Limited Warranty only at Honda's authorized dealerships, and they are able to receive these services because of the agreements between Honda and the authorized dealers. These agreements provide Honda with a significant amount of control over the actions of the authorized dealerships;

(d)   The warranties provided by Honda for the defective vehicles direct consumers to take their vehicles to authorized dealerships for repairs or services;

(e)   Honda dictates the nature and terms of the purchase contracts entered into between its authorized dealers and consumers;

(f)   Honda controls the way in which its authorized dealers can respond to complaints and inquiries concerning defective vehicles, and the dealerships are able to perform repairs under warranty only with Honda's authorization;

(g)   Honda has entered into agreements and understandings with its authorized dealers pursuant to which it authorizes and exercises substantial control over the operations of its dealers and the dealers' interaction with the public, particularly the advertising; and

(h)   Honda implemented its express and implied warranties as they relate to the Defects alleged herein by instructing authorized Honda dealerships to address complaints of the Defect by prescribing and implementing the relevant TSBs cited herein.

167.   Indeed, Honda's warranty booklets make it abundantly clear that Honda's authorized dealerships are its agents for vehicle sales and service. The booklets, which are plainly written for the consumers, not the dealerships, tell the consumers that to obtain warranty service, "you should take your vehicle along with proof of the purchase date to a Honda automobile dealer during normal service hours"; and "if your vehicle cannot be driven, contact the nearest Honda automobile dealer for towing assistance."

168.   Accordingly, as the above paragraphs demonstrate, the authorized dealerships are agents of Honda. Plaintiffs and each of the members of the Class have had sufficient direct dealings with either Honda or its agent dealerships to establish privity of contract between Honda, on one hand, and Plaintiffs and each of the members of the Class, on the other hand. This establishes privity with respect to the express and implied warranty between Plaintiffs and Honda. It also establishes that Plaintiffs were dealing with Honda through its authorized agent dealerships when they were given the New Vehicle Limited Warranty associated with their

vehicles, without any ability to negotiate the terms of that Warranty.

169.   Accordingly, as the above paragraphs demonstrate, the authorized dealerships are agents of Honda. Plaintiffs and each of the members of the Class have had sufficient direct dealings with either Honda or its agent dealerships to establish privity of contract between Honda, on one hand, and Plaintiffs and each of the members of the Class, on the other hand. This establishes privity with respect to the express and implied warranty between Plaintiffs and Honda. It also establishes that Plaintiffs were dealing with Honda through its authorized agent dealerships when they were given the New Vehicle Limited Warranty associated with their vehicle, without any ability to negotiate the terms of that Warranty.

### Defendants' Warranties Were Unconscionable

170.   Plaintiffs each signed a contract for sale with a Honda authorized dealer, and with that sale, they were presented with the terms of the Warranty as drafted by Honda. While Plaintiffs have some ability to negotiate price of the vehicle, they have no ability to negotiate the terms of the Warranty. Plaintiffs had no bargaining power with respect to the Warranty, was presented with it as a *fait accompli*, and had to accept it in the exact form in which it was presented to them, which occurred after the vehicle purchase transaction was completed. Plaintiffs had no meaningful choice regarding any aspect of the Warranty or its terms, including durational limitations of time and mileage. The terms of the warranty unreasonably favored Defendants over Plaintiffs and the members of the Class; a gross disparity in bargaining power existed as between Defendants and Class members; and Defendants knew or should have known that the Infotainment System Defect would manifest in the Class Vehicles both before and after the Warranty, thereby rendering the time and mileage limitations insufficient, inadequate, and unconscionable.

171.   Honda drafted the terms of the Warranty in part by using its exclusive, superior knowledge of the existence and likely manifestation of the Defect. Plaintiffs and Class Members were entirely ignorant of the Defect when purchasing their Vehicles and when presented with the Warranty. Plaintiffs' acceptance of the Warranty and its terms, including any disclaimers or durational limits, was neither knowing nor voluntary. Defendants knew or should have known at

the time of sale that the Class Vehicles were defective and would fail prematurely solely because of a defect in design, materials, and workmanship, to wit, the Infotainment System Defect. Plaintiffs and Class Members, on the other hand, had no notice of or ability to detect the Defect prior to purchasing the Class Vehicles. For this reason, the terms of the Warranty unreasonably favored Defendants over Plaintiffs and Class Members, and Plaintiffs' and Class Members' acceptance of the Warranty's durational limitations, to the extent they are found to apply so as to exclude instances where the Defect manifested outside of them, was neither knowing nor voluntary, thereby rendering such limitation unconscionable and ineffective.

172.   Honda's exclusive superior knowledge of the existence of the Defect and when it would manifest influenced its analysis of the Defect and whether it should pay for a recall (*i.e.,* if a defect is more likely to manifest within the durational limits, a recall is only fractionally more expensive than warranty repairs; if it is more likely to manifest outside those limits, a recall is exponentially more expensive than warranty repairs.)

173.   Plaintiffs were also not aware and could not have been aware that Honda would willfully not inform them of the Defect that affects the safety of their vehicles and that the Defect could manifest outside of the durational limit of the Warranty, despite Honda's knowledge of this. *See Carlson v. Gen. Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), cert. denied, 495 U.S. 904 (1990) (""proof that GM knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constituted 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable.'")

**TOLLING OF THE STATUTES OF LIMITATIONS**

174.   Any applicable statute of limitations has been tolled by Honda's knowing and active concealment of the Infotainment System Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Class were deceived regarding the Class Vehicles and could not reasonably discover the Defect or Honda's deception with respect to the Defect. Honda and its agents continue to deny the existence and extent of the Defect, even when questioned by Plaintiffs and members of the Class.

175.    Plaintiffs and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or the Class Vehicles contained the Infotainment System Defect and the corresponding safety risk. As alleged herein, the existence of the Infotainment System Defect was material to Plaintiffs and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Class could not have discovered through the exercise of reasonable diligence the existence of the Defect or that the Defendants were concealing the Defect.

176.    At all times, Honda is and was under a continuous duty to disclose to Plaintiffs and members of the Class the true standard, quality, and grade of the Class Vehicles and to disclose the Infotainment System Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the Infotainment System in Class Vehicles.

177.    Honda knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiffs and members of the Class reasonably relied on Honda's knowing, active, and affirmative concealment.

178.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Honda's fraudulent concealment, and Honda is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

179.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

180.    The Class and Sub-Classes are defined as:

**Class**:    All persons and entities in the United States who purchased or leased a Class Vehicle (the "Nationwide Class" or "Class").

**California Sub-Class**: All members of the Nationwide Class who reside in the State of California.

**CLRA Sub-Class**: All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

**California Implied Warranty Sub-Class**: All members of the Nationwide Class who purchased or leased their vehicles in the State of California.

**Maryland Sub-Class**: All members of the Nationwide Class who purchased or leased their vehicles in the state of Maryland.

**Michigan Sub-Class**: All members of the Nationwide Class who purchased or leased their vehicles in the state of Michigan.

**Virginia Sub-Class**: All members of the Nationwide Class who purchased or leased their vehicles in the state of Virginia.

181.    Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

182.    <u>Numerosity</u>: Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

183.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased Class Vehicles designed, manufactured, and distributed by Honda. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing the defective Infotainment System and/or its components. Furthermore, the factual

bases of Honda's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

184.   <u>Commonality</u>:   There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

(a)   Whether Class Vehicles suffer from defects relating to the Infotainment System;

(b)   Whether the defects relating to the Infotainment System constitute an unreasonable safety risk;

(c)   Whether Defendants knew about the defects pertaining to the Infotainment System and, if so, how long Defendants have known of the defect;

(d)   Whether the defective nature of the Infotainment System constitutes a material fact;

(e)   Whether Defendants have had an ongoing duty to disclose the defective nature of the Infotainment System to Plaintiffs and Class Members;

(f)   Whether Plaintiffs and the other Class Members are entitled to equitable relief, including a preliminary and/or a permanent injunction;

(g)   Whether Defendants knew or reasonably should have known of the defects pertaining to the Infotainment System before they sold and leased Class Vehicles to Class Members;

(h)   Whether Defendants should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Infotainment System and/or its components;

(i)   Whether Defendants are obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Infotainment System and/or its components;

(j)   Whether Defendants breached the implied warranty of merchantability

1     pursuant to the Magnuson-Moss Warranty Act;

2          (k)     Whether Defendants breached the implied warranty of merchantability

3          pursuant to the Song-Beverly Act and under Maryland, Michigan and Virginia

4          law;

5          (l)     Whether Defendants breached their express warranties under California,

6          Maryland, Michigan, and Virginia Law;

7          (m)     Whether Defendants violated the consumer protection laws of the states

8          of California, Maryland, Michigan, and Virginia; and

9          (n) Whether Defendants breached express warranties pursuant to the Magnuson-

10         Moss Warranty Act.

11         185.    Adequate Representation:   Plaintiffs will fairly and adequately protect the

12    interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution

13    of class actions, including consumer and product defect class actions, and Plaintiffs intend to

14    vigorously prosecute this action.

15         186.    Predominance and Superiority:   Plaintiffs and Class Members have all suffered,

16    and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful

17    conduct. A class action is superior to other available methods for the fair and efficient

18    adjudication of the controversy. Absent a class action, most Class Members would likely find

19    the cost of litigating their claims prohibitively high and would therefore have no effective

20    remedy. Because of the relatively small size of the individual Class Members' claims, it is likely

21    that only a few Class Members could afford to seek legal redress for Defendants' misconduct.

22    Absent a class action, Class Members will continue to incur damages, and Defendants'

23    misconduct will continue unabated without remedy or relief. Class treatment of common

24    questions of law and fact would also be a superior method to multiple individual actions or

25    piecemeal litigation in that it will conserve the resources of the courts and the litigants and

26    promote consistency and efficiency of adjudication.

27

28

**FIRST CAUSE OF ACTION**

**(Violation of California's Consumers Legal Remedies Act,**

**California Civil Code § 1750, *et seq*.)**

**(On Behalf of the CLRA Sub-Class)**

187.    Plaintiff Chiulli and Plaintiff Meisel (collectively, "California Plaintiffs") incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

188.    California Plaintiffs bring this cause of action on behalf of themselves and the CLRA Sub-Class.

189.    Defendants are "persons" as defined by California Civil Code § 1761(c).

190.    California Plaintiffs and the CLRA Sub-Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

191.    By failing to disclose and concealing the defective nature of the Infotainment System from California Plaintiffs and prospective CLRA Sub-Class members, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles and their Infotainment Systems had characteristics and benefits that they do not have and represented that the Class Vehicles and their Infotainment Systems were of a particular standard, quality, or grade when they were actually of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

192.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

193.    Defendants knew that the Class Vehicles and their Infotainment Systems suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

194.    As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including California Plaintiffs, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect, California Plaintiffs and the CLRA Sub-Class members were harmed and

suffered actual damages in that the Class Vehicles' Infotainment Systems and their components are substantially certain to fail before their expected useful life has run.

195.    Defendants were under a duty to California Plaintiffs and the CLRA Sub-Class members to disclose the defective nature of the Infotainment System and/or the associated repair costs because:

(a)    Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Infotainment System;

(b)    California Plaintiffs and the CLRA Sub-Class members could not reasonably have been expected to learn or discover that their Infotainment System had a dangerous safety defect until it manifested; and

(c)    Defendants knew that California Plaintiffs and the CLRA Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

196.    In failing to disclose the defective nature of the Infotainment System, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

197.    The facts Defendants concealed from or failed to disclose to California Plaintiffs and the CLRA Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had California Plaintiffs and the CLRA Sub-Class members known that the Class Vehicles' Infotainment System was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

198.    California Plaintiffs and the CLRA Sub-Class members are reasonable consumers who do not expect the Infotainment Systems installed in their vehicles to exhibit problems such as the Infotainment System Defect. This is the reasonable and objective consumer expectation relating to a vehicle's Infotainment System.

199.    As a result of Defendants' conduct, California Plaintiffs and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience problems such as the Infotainment System Defect.

200.    As a direct and proximate result of Defendants' unfair or deceptive acts or

practices, California Plaintiffs and the CLRA Sub-Class members suffered and will continue to suffer actual damages.

201.   California Plaintiffs and the CLRA Sub-Class members are entitled to equitable relief.

202.   California Plaintiffs provided Defendants with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a). Defendants failed to provide appropriate relief for their violations of the CLRA. Accordingly, California Plaintiffs now seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that they seek on behalf of themselves and the CLRA Sub-Class.

**SECOND CAUSE OF ACTION**

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

**(On Behalf of the California Sub-Class)**

203.   California Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

204.   California Plaintiffs bring this cause of action on behalf of themselves and the California Sub-Class (CA Sub-Class).

205.   As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including California Plaintiffs, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect, California Plaintiffs and the CA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Infotainment System and/or its components are substantially certain to fail before their expected useful life has run.

206.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

207.   California Plaintiffs and the CA Sub-Class members are reasonable consumers who do not expect their Infotainment Systems to exhibit problems such as frequent Infotainment System malfunction, freezing, or crashing, which in turn causes navigation, music/radio, display

1   screen, Bluetooth/phone, and backup camera inoperability, and frequent replacement or repair.

2       208.    Defendants knew the Class Vehicles and their Infotainment Systems were

3   defectively designed or manufactured, would fail prematurely, and were not suitable for their

4   intended use.

5       209.    In failing to disclose the Infotainment System Defect, Defendants have

6   knowingly and intentionally concealed material facts and breached its duty not to do so.

7       210.    Defendants were under a duty to California Plaintiffs and the CA Sub-Class

8   members to disclose the defective nature of the Class Vehicles and their Infotainment Systems

9   because:

10      (a)    Defendants were in a superior position to know the true state of facts

11  about the safety defect in the Class Vehicles' Infotainment Systems; and

12      (b)    Defendants actively concealed the defective nature of the Class Vehicles

13  and their Infotainment Systems from California Plaintiffs and the CA Sub-Class.

14      211.    The facts Defendants concealed from or failed to disclose to California Plaintiffs

15  and the CA Sub-Class members are material in that a reasonable person would have considered

16  them to be important in deciding whether to purchase or lease Class Vehicles. Had they known

17  of the Infotainment System Defect, California Plaintiffs and the other CA Sub-Class members

18  would have paid less for Class Vehicles or would not have purchased or leased them at all.

19      212.    Defendants continued to conceal the defective nature of the Class Vehicles and

20  their Infotainment Systems even after California Plaintiffs and the other CA Sub-Class members

21  began to report problems.

22      213.    Defendants' conduct was and is likely to deceive consumers.

23      214.    Defendants' acts, conduct, and practices were unlawful, in that they constituted:

24      (a)    Violations of California's Consumers Legal Remedies Act;

25      (b)    Violations of the Song-Beverly Consumer Warranty Act;

26      (c)    Violations of the Magnuson-Moss Warranty Act; and

27      (d)    Breach of Express Warranty under California Commercial Code § 2313.

28      215.    By their conduct, Defendants have engaged in unfair competition and unlawful,

1    unfair, and fraudulent business practices.

2        216.    Defendants' unfair or deceptive acts or practices occurred repeatedly in

3    Defendants' trade or business and were capable of deceiving a substantial portion of the

4    purchasing public.

5        217.    As a direct and proximate result of Defendants' unfair and deceptive practices,

6    California Plaintiffs and the other CA Sub-Class members have suffered and will continue to

7    suffer actual damages.

8        218.    Defendants have been unjustly enriched and should be required to make

9    restitution to California Plaintiffs and the other CA Sub-Class members pursuant to §§ 17203

10   and 17204 of the Business & Professions Code.

11                          **THIRD CAUSE OF ACTION**

12              **(Breach of Implied Warranty Pursuant to Song-Beverly**

13        **Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

14              **(On Behalf of the California Implied Warranty Sub-Class)**

15       219.    California Plaintiffs incorporate by reference the allegations contained in the

16   preceding paragraphs of this Complaint.

17       220.    California Plaintiffs bring this cause of action against Defendants on behalf of

18   themselves and the California Implied Warranty Sub-Class (CA IW Sub-Class).

19       221.    Defendants were at all relevant times the manufacturer, distributor, warrantor,

20   and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use

21   for which the Class Vehicles were purchased or leased.

22       222.    Defendants provided California Plaintiffs and the CA IW Sub-Class members

23   with an implied warranty that the Class Vehicles and their components and parts are

24   merchantable and fit for the ordinary purposes for which they were sold. However, the Class

25   Vehicles and their Infotainment Systems are not fit for their ordinary purpose of providing

26   reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their

27   Infotainment Systems suffered from an inherent defect at the time of sale and thereafter and are

28   not fit for their particular purpose of providing safe and reliable transportation.

223.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Infotainment Systems, which were manufactured, supplied, distributed, and/or sold by Honda, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Infotainment Systems would be fit for their intended use.

224.    Contrary to the applicable implied warranties, the Class Vehicles and their Infotainment Systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing California Plaintiffs and the CA IW Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective Infotainment Systems.

225.    The Infotainment System Defect is inherent and was present in each Class Vehicle at the time of sale.

226.    As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect, California Plaintiffs and the CA IW Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Infotainment Systems and/or its components are substantially certain to fail before their expected useful life has run.

227.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**FOURTH CAUSE OF ACTION**

**(Breach of Express Warranty Pursuant to Cal. Com. Code §§ 2313, 10210)**

**(On Behalf of the California Sub-Class)**

228.    California Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

229.    California Plaintiffs bring this cause of action on behalf of themselves and the

1    CA Sub-Class.

2         230.    Defendants provided all purchasers and lessees of the Class Vehicles with an

3    express warranty described *infra*, which became a material part of the bargain. Accordingly,

4    Defendants' express warranty is an express warranty under California law.

5         The Infotainment System was manufactured and/or installed in the Class Vehicles by

6    Defendants and is covered by the express warranty.

7         231.    In a section entitled "New Vehicle Limited Warranty," Defendants' express

8    warranty provides, in relevant part, that "Honda will repair or replace any part that is defective

9    in material or workmanship under normal use." The warranty further provides that "[a]ll

10   repairs/replacements made under this warranty are free of charge. The replaced or repaired parts

11   are covered only until this New Vehicle Limited Warranty expires."

12        232.    Defendants breached the express warranties by selling and leasing Class Vehicles

13   with Infotainment Systems that were defective, requiring repair or replacement within the

14   warranty period, and refusing to honor the express warranty by repairing or replacing, free of

15   charge, the Infotainment System. In addition, when Defendants did agree to pay a portion of the

16   costs, Defendants nevertheless breached the express warranty by simply replacing Class

17   Members' defective Infotainment Systems with similarly defective Infotainment Systems, thus

18   failing to "repair" the Defect.

19        233.    California Plaintiffs were not required to notify Honda of the breach or were not

20   required to do so because affording Honda a reasonable opportunity to cure its breach of written

21   warranty would have been futile. Defendants were also on notice of the Defect from complaints

22   and service requests it received from Class Members, from repairs and/or replacements of the

23   Infotainment Systems, and from other internal sources.

24        234.    As a direct and proximate cause of Defendants' breach, California Plaintiffs and

25   the other Class Members have suffered, and continue to suffer, damages, including economic

26   damages at the point of sale or lease. Additionally, California Plaintiffs and the other Class

27   Members have incurred or will incur economic damages at the point of repair in the form of the

28   cost of repair.

235.   California Plaintiffs and the other Class Members are entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**

**(Violation of Maryland's Consumer Protection Act)**

**Md. Code Ann., Com. Law § 13-101, *et seq*.**

**(On Behalf of the Maryland Sub-Class)**

236.   Plaintiff Susseles incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

237.   Plaintiff Susseles brings this cause of action on behalf of himself and on behalf of the members of the Maryland Sub-Class.

238.   Defendants, Plaintiff Susseles, and the Maryland Sub-Class Members are "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(h).

239.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair and deceptive trade practice in the sale or lease of any consumer good, including representing that goods are of a particular standard, quality, or grade if they are not, advertising goods without intent to sell or lease them as advertised, selling goods knowing that a service, replacement or repair was needed, "failure to state a material fact if the failure deceives or tends to deceive," and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," Md. Code Ann., Com. Law § 13-301, regardless of whether the consumer is actually deceived or damaged, Md. Code Ann., Com. Law § 13-302. Defendants engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the Maryland CPA.

240.   Defendants participated in unfair or deceptive trade practices that violated the Maryland CPA.  As described below and alleged throughout the Complaint, by failing to disclose the Infotainment Defect, by concealing the Infotainment Defect, by marketing its vehicles as safe, reliable, well-engineered, and of high quality, and by presenting itself as a reputable manufacturer

that valued safety, performance and reliability, and stood behind its vehicles after they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and the Infotainment Defect in the course of its business.

241.   Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

242.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

243.   Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

244.   Defendants knew or should have known that their conduct violated the Maryland CPA.

245.   Defendants were under a duty to Plaintiff Susseles and the Maryland Sub-Class Members to disclose the defective nature of the Class Vehicles because:

      a.   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles;

      b.   Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and

      c.   Defendants actively concealed the defective nature of the Class Vehicles from Plaintiff Susseles and the Maryland Sub-Class Members at the time of sale and thereafter.

246.   By failing to disclose the Infotainment Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

247.    The facts concealed or not disclosed by Defendants to Plaintiff Susseles and the Maryland Sub-Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendants' Class Vehicles, or to pay less for them. Whether a vehicle's Infotainment system, including its rear view camera, malfunctions is a material safety concern. Had Plaintiff Susseles and the Maryland Sub-Class Members known that the Class Vehicles suffered from the Infotainment Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

248.    Plaintiff Susseles and the Maryland Sub-Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Infotainment Defect. That is the reasonable and objective consumer expectation for vehicles.

249.    As a result of Defendants' misconduct, Plaintiff Susseles and the Maryland Sub-Class Members have been harmed and have suffered actual damages in that the Class Vehicles are defective and require repairs or replacement.

250.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff Susseles and the Maryland Sub-Class Members have suffered and will continue to suffer actual damages.

251.    Defendants' violations present a continuing risk to Plaintiff Susseles and the Maryland Sub-Class Members as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

252.    Plaintiff Susseles provided notice of his claims to Honda and to O'Donnell Honda, the authorized Honda dealership where he purchased his vehicle, by letter dated February 9, 2023.

253.    Pursuant to Md. Code Ann., Com. Law § 13-408, Plaintiff Susseles and members of the Maryland Sub-Class seek monetary relief against Defendants in the amount of actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**SIXTH CAUSE OF ACTION**

**(Breach of Express Warranty Pursuant to Md. Com. Law §§ 2-313 and 2A-210)**

**(On Behalf of the Maryland Sub-Class)**

254.    Plaintiff Susseles incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

255.   Plaintiff Susseles brings this count on behalf of himself and the Maryland Sub-Class against Defendants.

256.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Md. Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

257.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Com. Law § 2A-103(1)(p).

258.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Com. Law §§ 2-105(1) and 2A-103(1)(h).

259.   The Infotainment Systems were manufactured and/or installed in the Class Vehicles by Defendants and are covered by the express warranty.

260.   Defendants provided all purchasers and lessees of the Class Vehicles with an express warranty described herein, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under Maryland state law.

261.   In a section entitled "New Vehicle Limited Warranty," Defendants' express warranty provides, in relevant part, that "Honda will repair or replace any part that is defective in material or workmanship under normal use." The warranty further provides that "[a]ll repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires."

262.   Defendants' express warranties regarding the Class Vehicles formed a basis of the bargain that was breached when Plaintiff Susseles and members of the Maryland Sub-Class purchased or leased the Class Vehicles with the defective Infotainment System and/or related components.

263.   Plaintiff Susseles and members of the Maryland Sub-Class experienced Defects within the warranty period. Despite the existence of the express warranty, Defendants failed to inform Plaintiff Susseles and members of the Maryland Sub-Class that the Class Vehicles were equipped with defective Infotainment Systems and related components.  When providing repairs

under the express warranty, these repairs were ineffective and incomplete and did not provide a permanent repair for the Infotainment Defect.

264.    Defendants breached the express warranty through the acts and omissions described above, including by promising to repair or adjust defects in materials or workmanship of any part supplied by Defendants and then failing to do so. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

265.    Plaintiff Susseles was not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure their breach of written warranty would have been futile. Defendants were also on notice of the Infotainment Defect from the complaints and service requests it received from Class Members, including those formal complaints submitted to NHTSA, and through other internal sources.

266.    Nonetheless, Plaintiff Susseles and members of the Maryland Sub-Class provided notice to Defendants of the breach of express warranties when they took their vehicles to Defendants-authorized providers of warranty repairs. Plaintiff Susseles also provided notice to Defendants of their breach of express warranty and to O'Donnell Honda, the authorized Honda dealership where he purchased his vehicle, by letter dated February 9, 2023.

267.    As a result of Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles.

268.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Susseles and members of the Maryland Sub-Class have been damaged in an amount to be determined at trial.

269.    As a result of Defendants' breach of the express warranty, Plaintiff Susseles and Maryland Sub-Class Members are entitled to legal and equitable relief against Defendants, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

**SEVENTH CAUSE OF ACTION**

**(Breach of Implied Warranty Pursuant to Md. Com. Law §§ 2-314 and 2A-212)**

**(On Behalf of the Maryland Sub-Class)**

270.    Plaintiff Susseles incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

271.    Plaintiff Susseles brings this count on behalf of himself and the Maryland Sub-Class against Defendants.

272.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Md. Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

273.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Com. Law § 2A-103(1)(p).

274.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Com. Law §§ 2-105(1) and 2A-103(1)(h).

275.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Md. Com. Law §§ 2-314 and 2A-212.

276.    Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants directly sold and marketed Class Vehicles to customers through authorized dealers, like those from whom Plaintiff Susseles and members of the Maryland Sub-Class bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. Defendants knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiff Susseles and members of the Maryland Sub-Class, with no modification to the defective Class Vehicles.

277.    Defendants provided Plaintiff Susseles and members of the Maryland Sub-Class with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because,

*inter alia*, the Class Vehicles and their Infotainment Systems suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

278.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

279.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles were and are defective at the time of sale or lease and thereafter as more fully described above. Defendants knew of this Defect at the time these sale or lease transactions occurred.

280.    As a result of Defendants' breach of the applicable implied warranties, Plaintiff Susseles and members of the Maryland Sub-Class suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Infotainment Defect, Plaintiff Susseles and members of the Maryland Sub-Class were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

281.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

282.    Plaintiff Susseles and members of the Maryland Sub-Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

283.    Plaintiff Susseles and members of the Maryland Sub-Class were not required to notify Defendants of the breach because affording Defendants a reasonable opportunity to cure their breach of warranty would have been futile. Defendants were also on notice of the

1   Infotainment Defect from the complaints and service requests it received from Plaintiff Susseles

2   and the Class Members and through other internal sources.

3   284.   Nonetheless, Plaintiff Susseles and members of the Maryland Sub-Class provided

4   notice to Defendants of the breach of warranties when they took their vehicles to Defendants-

5   authorized provider of warranty repairs.  Plaintiff Susseles also provided notice to Defendants of

6   its breach of implied warranty and to O'Donnell Honda, the authorized Honda dealership where

7   he purchased his vehicle, by letter dated February 9, 2023.

8   285.   As a direct and proximate result of Defendants' breach of the implied warranty of

9   merchantability, Plaintiff Susseles and members of the Maryland Sub-Class have been damaged

10   in an amount to be proven at trial.

11   **EIGHTH CAUSE OF ACTION**

12   **(Violation of the Michigan Consumer Protection Act,**

13   **Mich. Comp. Laws § 445.903, *et seq*.)**

14   **(On Behalf of the Michigan Sub-Class)**

15   286.   Plaintiff Montgomery incorporates by reference the allegations contained in the

16   preceding paragraphs of this Complaint.

17   287.   Plaintiff Montgomery brings this cause of action on behalf of himself and the

18   Michigan Sub-Class.

19   288.   Plaintiff Montgomery and the Michigan Sub-Class members are "person[s]"

20   within the meaning of Mich. Comp. Laws § 445.902(1)(d).

21   289.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair,

22   unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce,"

23   including: "(c) Representing that goods or services have . . characteristics . . that they do not

24   have;" "(e) Representing that goods or services are of a particular standard . . if they are of

25   another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive

26   the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making

27   a representation of fact or statement of fact material to the transaction such that a person

28   reasonably believes the represented or suggested state of affairs to be other than it actually is;"

and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1). Defendants' unfair or deceptive acts or practices were prohibited by the Michigan CPA.

290.    Defendants participated in unfair or deceptive trade practices that violated the Michigan CPA as described below and alleged throughout the Complaint. By failing to disclose the Defect, by concealing the Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as reputable manufacturers that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Defect in the course of its business.

291.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

292.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

293.    Defendants knew that the Class Vehicles and their Infotainment Systems suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

294.    Defendants knew or should have known that their conduct violated the Michigan CPA.

295.    Plaintiff Montgomery and the Michigan Sub-Class members reasonably relied on Defendants' misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

296.    As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including Plaintiff Montgomery, suffered an ascertainable loss of money,

property, and/or value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect, Plaintiff Montgomery and the Michigan Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Infotainment Systems and their components are substantially certain to fail before their expected useful life has run.

297.    Had Plaintiff Montgomery and the South Carolina Sub-Class Members known that the Class Vehicles would exhibit the Infotainment System Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of Defendants' misconduct.

298.    Defendants were under a duty to Plaintiff Montgomery and the Michigan Sub-Class members to disclose the defective nature of the Infotainment System and/or the associated repair costs because:

(a)    Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Infotainment System;

(b)    Plaintiff Montgomery and the Michigan Sub-Class members could not reasonably have been expected to learn or discover that their Infotainment System had a dangerous safety defect until it manifested; and

(c)    Defendants knew that Plaintiff Montgomery and the Michigan Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

299.    In failing to disclose the defective nature of the Infotainment System, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

The facts Defendants concealed from or failed to disclose to Plaintiff Montgomery and the Michigan Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had Plaintiff Montgomery and the Michigan Sub-Class members known that the Class Vehicles' Infotainment System was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

300.    Plaintiff Montgomery and the Michigan Sub-Class members are reasonable consumers who do not expect the Infotainment Systems installed in their vehicles to exhibit

problems such as the Infotainment System Defect. This is the reasonable and objective consumer expectation relating to a vehicle's Infotainment System.

301.    As a result of Defendants' conduct, Plaintiff Montgomery and the Michigan Sub-Class members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience problems such as the Infotainment System Defect.

302.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff Montgomery and the Michigan Sub-Class members suffered and will continue to suffer actual damages.

303.    Plaintiff Montgomery and the Michigan Sub-Class members are entitled to equitable relief.

304.    Plaintiff Montgomery provided notice of his claims by letter dated January 31, 2023.

305.    Pursuant to Mich. Comp. Laws Ann. § 445.911, Plaintiff Montgomery and the Michigan Sub-Class Members seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 per each Plaintiff; and reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws.

306.    Plaintiffs further seek punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof because Defendants carried out despicable conduct with willful and conscious disregard of the rights and safety of others. Defendants' conduct constitutes malice, oppression, and fraud warranting punitive damages.

### NINTH CAUSE OF ACTION

**(Breach of Express Warranty,**

**Mich. Comp. Laws §440.2313)**

**(On Behalf of the Michigan Sub-Class)**

307.    Plaintiff Montgomery incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

308.    Plaintiff Montgomery brings this cause of action on behalf of himself and the Michigan Sub-Class.

309.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws § 440.2104 and § 440.2803(1)(t), and "sellers" of motor vehicles under § 440.2103(1)(a).

310.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

311.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws Ann. § 440.2105(1) and § 440.2803(1)(h).

312.    Defendants provided all purchasers and lessees of the Class Vehicles with an express warranty described infra, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under California law.

313.    The Infotainment System was manufactured and/or installed in the Class Vehicles by Defendants and is covered by the express warranty.

314.    In a section entitled "New Vehicle Limited Warranty," Defendants' express warranty provides, in relevant part, that "Honda will repair or replace any part that is defective in material or workmanship under normal use." The warranty further provides that "[a]ll repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires."

315.    The Infotainment System Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Plaintiff Montgomery and the Michigan Sub-Class Members.

316.    Plaintiffs relied on Defendants' express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

317.    Under the express Warranties, Defendants were obligated to correct the Defect in the vehicles owned or leased by Plaintiff Montgomery and the Michigan Sub-Class Members.

318.    Defendants breached the express warranties by selling and leasing Class Vehicles with Infotainment Systems that were defective, requiring repair or replacement within the

warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Infotainment System. In addition, when Defendants did agree to pay a portion of the costs, Defendants nevertheless breached the express warranty by simply replacing Class Members' defective Infotainment Systems with similarly defective Infotainment Systems, thus failing to "repair" the Defect.

319.   Defendants' attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

320.   The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiff Montgomery and the Michigan Sub-Class Members. Among other things, Plaintiff Montgomery and the Michigan Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale.

321.   Plaintiff Montgomery and the Michigan Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

322.   Because Defendants, through their conduct and exemplified by their own service bulletins, have covered repairs of the Defect if Defendants determines the repairs are appropriately covered under the Warranties, Defendants cannot now deny that the Warranties cover the Defect.

323.   Because Defendants have not been able to remedy the Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

324.   Plaintiff Montgomery was not required to notify Honda of the breach or was not required to do so because affording Honda a reasonable opportunity to cure its breach of written

warranty would have been futile. Defendants were also on notice of the Defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the Infotainment Systems, and from other internal sources.

325.     Plaintiff Montgomery provided notice of his claims by letter dated January 31, 2023.

326.     As a direct and proximate cause of Defendants' breach, Plaintiff Montgomery and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff Montgomery and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

327.     Plaintiff Montgomery and the other Class Members are entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## TENTH CAUSE OF ACTION

### (Breach of the Implied Warranty of Merchantability,

### Mich. Comp. Laws §440.2314)

### (On Behalf of the Michigan Sub-Class)

328.     Plaintiff Montgomery incorporates by reference the preceding paragraphs of this Complaint.

329.     Plaintiff Montgomery brings this cause of action on his own behalf and on behalf of the members of the Michigan Sub-Class.

330.     Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws § 440.2104 and § 440.2803(1)(t), and "sellers" of motor vehicles under § 440.2103(1)(a).

331.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

332.     The Class Vehicles are and were at all relevant times "goods" within the meaning

of Mich. Comp. Laws Ann. § 440.2105(1) and § 440.2803(1)(h).

333.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Mich. Comp. Laws §440.2314 and 440.2862.

334.   Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

335.   Defendants provided Plaintiff Montgomery and the Michigan Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles and their Infotainment Systems are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their Infotainment Systems suffered from an inherent Defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

336.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Infotainment Systems, which were manufactured, supplied, distributed, and/or sold by Honda, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Infotainment Systems would be fit for their intended use.

337.   Contrary to the applicable implied warranties, the Class Vehicles and their Infotainment Systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Montgomery and the Michigan Sub-Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective Infotainment Systems.

338.   The Infotainment System Defect is inherent and was present in each Class Vehicle at the time of sale.

339.   As a result of Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or

value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect, Plaintiff Montgomery and the Michigan Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Infotainment Systems and/or its components are substantially certain to fail before their expected useful life has run.

340.    Plaintiff Montgomery and the Michigan Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

341.    Plaintiff Montgomery was not required to notify Honda of the breach or was not required to do so because affording Honda a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the Infotainment Systems, and from other internal sources.

342.    Plaintiff Montgomery provided notice of his claims by letter dated January 31, 2023.

343.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Mich. Comp. Laws § 440.2314 and § 440.2862.

## ELEVENTH CAUSE OF ACTION

### (Violation of the Virginia Consumer Protection Act,

### Va. Code Ann. § 59.1-200(A), *et seq.*)

### (On Behalf of the Virginia Sub-Class)

344.    Plaintiff Beech and Plaintiff Kreidel (collectively "Virginia Plaintiffs") incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

345.    Virginia Plaintiffs bring this cause of action on behalf of themselves and the Virginia Sub-Class.

346.    Defendants, Virginia Plaintiffs and the Virginia Sub-Class members are "person[s]" within the meaning of within the meaning of Va. Code Ann. § 59.1-198.

347.   The sale or lease of the Class Vehicles by Virginia Plaintiffs and the Virginia Sub-Class members were for personal, family or household purposes and are "consumer transaction[s]" as defined by Va. Code Ann. § 59.1-198.

348.   The Class Vehicles are "goods" as defined by Va. Code Ann. § 59.1-198.

349.   Defendants are "suppliers" as defined by Va. Code Ann. § 59.1-198.

350.   The Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-200(A), prohibits, *inter alia*: (1) "[m]isrepresenting that the Class Vehicles have certain quantities, characteristics, ingredients, uses, or benefits;" (2) "[m]isrepresenting that the goods or services are of a particular standard, quality, grade, style, or model;" (3) "[a]dvertising goods or services with the intent not to sell them as advertised;" and (4) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Defendants' unfair or deceptive acts or practices were prohibited by the.

351.   Defendants participated in unfair or deceptive trade practices that VCPA violated the VCPA as described below and alleged throughout the Complaint. By failing to disclose the Defect, by concealing the Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as reputable manufacturers that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, Defendants knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Defendants systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Defect in the course of its business.

352.   Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

353.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

354.   Defendants knew that the Class Vehicles and their Infotainment Systems suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

355.   Defendants knew or should have known that their conduct violated the VCPA.

356.   Virginia Plaintiffs and the Virginia Sub-Class members reasonably relied on Defendants' misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

357.   As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles, including Virginia Plaintiffs, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect, Virginia Plaintiffs and the Virginia Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Infotainment Systems and their components are substantially certain to fail before their expected useful life has run.

358.   Had Virginia Plaintiffs and the South Carolina Sub-Class Members known that the Class Vehicles would exhibit the Infotainment System Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of Defendants' misconduct.

359.   Defendants were under a duty to Virginia Plaintiffs and the Virginia Sub- Class members to disclose the defective nature of the Infotainment System and/or the associated repair costs because:

(a)   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Infotainment System;

(b)   Virginia Plaintiffs and the Virginia Sub-Class members could not reasonably have been expected to learn or discover that their Infotainment System had a dangerous safety defect until it manifested; and

(c)   Defendants knew that Virginia Plaintiffs and the Virginia Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

360.   In failing to disclose the defective nature of the Infotainment System, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

361.   The facts Defendants concealed from or failed to disclose to Virginia Plaintiffs and the Virginia Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had Virginia Plaintiffs and the Virginia Sub-Class members known that the Class Vehicles' Infotainment System was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

362.   Virginia Plaintiffs and the Virginia Sub-Class members are reasonable consumers who do not expect the Infotainment Systems installed in their vehicles to exhibit problems such as the Infotainment System Defect. This is the reasonable and objective consumer expectation relating to a vehicle's Infotainment System.

363.   As a result of Defendants' conduct, Virginia Plaintiffs and the Virginia Sub-Class members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience problems such as the Infotainment System Defect.

364.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Virginia Plaintiffs and the Virginia Sub-Class members suffered and will continue to suffer actual damages.

365.   Virginia Plaintiffs and the Virginia Sub-Class members are entitled to equitable relief.

366.   Virginia Plaintiffs provided notice of their claims by letters dated January 31, 2023 and February 9, 2023.

367.   Virginia Plaintiffs and the Virginia Sub-Class members seek actual damages against Defendants in an amount to be determined at trial and/or statutory damages pursuant to the VCPA based on Defendants' wanton and willful conduct, costs, attorneys' fees, restitution, disgorgement of funds, and any other just and proper relief available under the VCPA. See Va. Code § 59.1-204.

**TWELFTH CAUSE OF ACTION**

**(Breach of Express Warranty,**

**Va. Code Ann. § 8.2-313)**

**(On Behalf of the Virginia Sub-Class)**

368.   Virginia Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

369.   Virginia Plaintiffs bring this cause of action on behalf of themselves and the Virginia Sub-Class.

370.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code Ann. § 8.2-104(1) and § 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

371.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code Ann. § 8.2A-103(p).

372.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. § 8.2-105(1) and § 8.2A-103(1)(h).

373.   Defendants provided all purchasers and lessees of the Class Vehicles with an express warranty described infra, which became a material part of the bargain. Accordingly, Defendants' express warranty is an express warranty under California law.

374.   The Infotainment System was manufactured and/or installed in the Class Vehicles by Defendants and is covered by the express warranty.

375.   In a section entitled "New Vehicle Limited Warranty," Defendants' express warranty provides, in relevant part, that "Honda will repair or replace any part that is defective in material or workmanship under normal use." The warranty further provides that "[a]ll repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires."

376.   The Infotainment System Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Virginia Plaintiffs and the Virginia Sub-Class Members.

377.     Plaintiffs relied on Defendants' express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

378.     Under the express Warranties, Defendants were obligated to correct the Defect in the vehicles owned or leased by Virginia Plaintiffs and the Virginia Sub-Class Members.

379.     Defendants breached the express warranties by selling and leasing Class Vehicles with Infotainment Systems that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Infotainment System. In addition, when Defendants did agree to pay a portion of the costs, Defendants nevertheless breached the express warranty by simply replacing Class Members' defective Infotainment Systems with similarly defective Infotainment Systems, thus failing to "repair" the Defect.

380.     Defendants' attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

381.     The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Virginia Plaintiffs and the Virginia Sub-Class Members. Among other things, Virginia Plaintiffs and the Virginia Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale.

382.     Virginia Plaintiffs and the Virginia Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

383.     Because Defendants, through their conduct and exemplified by their own service bulletins, have covered repairs of the Defect if Defendants determines the repairs are appropriately covered under the Warranties, Defendants cannot now deny that the Warranties

cover the Defect.

384. Because Defendants have not been able to remedy the Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

385. Virginia Plaintiffs was not required to notify Honda of the breach or was not required to do so because affording Honda a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the Infotainment Systems, and from other internal sources.

386. Virginia Plaintiffs provided notice of their claims by letters dated January 31, 2023 and February 9, 2023.

387. As a direct and proximate cause of Defendants' breach, Virginia Plaintiffs and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Virginia Plaintiffs and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

388. Virginia Plaintiffs and the other Class Members are entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## THIRTEENTH CAUSE OF ACTION

### (Breach of the Implied Warranty of Merchantability,

### Va. Code Ann. § 8.2-314)

### (On Behalf of the Virginia Sub-Class)

389. Virginia Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

390. Virginia Plaintiffs bring this cause of action on their own behalf and on behalf of the members of the Virginia Sub-Class.

391.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code Ann. § 8.2-104(1) and § 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

392.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code Ann. § 8.2A-103(p).

393.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. § 8.2-105(1) and § 8.2A-103(1)(h).

394.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Va. Code Ann. § 8.2-314 and § 8.2A-212.

395.   Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

396.   Defendants provided Virginia Plaintiffs and the Virginia Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles and their Infotainment Systems are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, inter alia, the Class Vehicles and their Infotainment Systems suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

397.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Infotainment Systems, which were manufactured, supplied, distributed, and/or sold by Honda, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Infotainment Systems would be fit for their intended use.

398.   Contrary to the applicable implied warranties, the Class Vehicles and their Infotainment Systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Virginia Plaintiffs and the Virginia Sub-Class members with

1    reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including

2    the defective Infotainment Systems.

3        399.    The Infotainment System Defect is inherent and was present in each Class

4    Vehicle at the time of sale.

5        400.    As a result of Defendants' breach of the applicable implied warranties, owners

6    and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or

7    value of their Class Vehicles. Additionally, as a result of the Infotainment System Defect,

8    Virginia Plaintiffs and the Virginia Sub-Class members were harmed and suffered actual

9    damages in that the Class Vehicles' Infotainment Systems and/or its components are

10   substantially certain to fail before their expected useful life has run.

11       401.    Virginia Plaintiffs and the Virginia Sub-Class Members have complied with all

12   obligations under the warranty, or otherwise have been excused from performance of said

13   obligations as a result of Defendants' conduct described herein.

14       402.    Virginia Plaintiffs was not required to notify Honda of the breach or was not

15   required to do so because affording Honda a reasonable opportunity to cure its breach of written

16   warranty would have been futile. Defendants were also on notice of the Defect from complaints

17   and service requests it received from Class Members, from repairs and/or replacements of the

18   Infotainment Systems, and from other internal sources.

19       403.    Virginia Plaintiffs provided notice of their claims by letters dated January 31,

20   2023 and February 9, 2023.

21       404.    Defendants' actions, as complained of herein, breached the implied warranty that

22   the Class Vehicles were of merchantable quality and fit for such use in violation of Va. Code

23   Ann. § 8.2-314 and § 8.2A-212.

24

25

26

27

28

**FOURTEENTH CAUSE OF ACTION**

**(Breach of Express Warranty under the Magnuson-Moss Warranty Act,**

**15 U.S.C. § 2303 *et seq.*)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

**Against Defendants)**

405.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

406.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class against Defendants.

407.    Defendants provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain.

408.    The Infotainment System and its component parts were manufactured and/or installed in the Class Vehicles by Defendants and are covered by the express warranty.

409.    In a section entitled "New Vehicle Limited Warranty," Defendants' express warranty provides, in relevant part, that "Honda will repair or replace any part that is defective in material or workmanship under normal use." The warranty further provides that "[a]ll repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires."

410.    Defendants breached the express warranties by selling and leasing Class Vehicles with Infotainment Systems that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Infotainment System and its component parts. Honda has failed to "repair" the defects as alleged herein.

411.    Plaintiffs were not required to notify Honda of the breach or were not required to do so because affording Honda a reasonable opportunity to cure its breach of written warranty would have been futile. Defendants were also on notice of the Defect from complaints and service requests they received from Class Members, from repairs and/or replacements of the Infotainment System, and from other internal sources.

412.     Plaintiffs also provided notice to Honda of its breach of warranty claims under the MMWA by letters dated August 23, 2022, January 31, 2023, February 9, 2023, and March 28, 2023.

413.     As a direct and proximate cause of Defendants' breach, Plaintiffs and the other Class members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiffs and the other Class members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

414.     Plaintiffs and the other Class members are entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**FIFTEENTH  CAUSE OF ACTION**

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act,**

**15 U.S.C. § 2303 *et seq*.)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

**Against Defendants)**

415.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

416.     Plaintiffs bring this cause of action on behalf of themselves and the Class against Defendants.

417.     The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

418.     Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

419.     Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

420.     Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Infotainment Systems manufactured, supplied, distributed, and/or sold by

Honda would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Infotainment Systems would be fit for their intended use while the Class Vehicles were being operated.

421.    Contrary to the applicable implied warranties, the Class Vehicles and their Infotainment Systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including the defective design and materials of their Infotainment Systems.

422.    Defendants' breach of implied warranties has deprived Plaintiffs and Class members of the benefit of their bargain.

423.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

424.    Defendants have been afforded a reasonable opportunity to cure their breach, including when Plaintiffs and Class members brought their vehicles in for diagnoses and Infotainment System repair.

425.    As a direct and proximate cause of Defendants' breach of implied warranties, Plaintiffs and Class members sustained and incurred damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

426.    As a result of Defendants' violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class members have incurred damages.

427.    Plaintiffs also provided notice to Honda of its breach of warranty claims under the MMWA by letters dated August 23, 2022, January 31, 2023, February 9, 2023, and March 28, 2023.

**SIXTEENTH CAUSE OF ACTION**

**(For Fraud by Omission or Fraudulent Concealment)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

**Against Defendants)**

428.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

429.    Plaintiffs bring this cause of action on behalf of themselves and the Class or, alternatively, on behalf of all Sub-Classes against Defendants.

430.    Defendants knew that the Class Vehicles suffered from an inherent Infotainment System Defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

431.    Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles.

432.    Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles because:

      a.    Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles;

      b.    The omitted facts were material because they directly impact the safety of the Class Vehicles;

      c.    Defendants knew the omitted facts regarding the Infotainment System Defect were not known to or reasonably discoverable by Plaintiffs and Class Members;

      d.    Defendants made partial disclosures about the quality of the Class Vehicles without revealing their true defective nature; and,

      e.    Defendants actively concealed the defective nature of the Class Vehicles from Plaintiffs and Class Members.

433.    The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be

important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. Whether a vehicle's Infotainment System is defective, which can suddenly cause lights to flash, screens to freeze, and safety systems such as cameras to stop functioning, which can suddenly distract the driver and thereby impair ability to control the vehicle, process and respond to safety threats, and greatly increase the risk of collision, is a material safety concerns. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

434.    Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment. This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendants' defective Class Vehicles.

435.    Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

436.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the defective Vehicles and recover damages.

437.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**SEVENTEENTH CAUSE OF ACTION**

**(For Unjust Enrichment)**

**(On Behalf of the Nationwide Class, or, in the Alternative, on Behalf of All Sub-Classes**

**Against Defendants)**

438.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

439.    Plaintiffs bring this cause of action on behalf of themselves and the Class or, alternatively, on behalf of all Sub-Classes against Defendants.

440.    Defendants have received and retained a benefit from Plaintiffs and the members of the Class, and inequity has resulted.

441.    As a direct and proximate result of Defendants' failure to disclose known defects, Defendants have profited through the sale and lease of the Class Vehicles, the value of which was artificially inflated by Defendants' concealment of and omissions regarding the Infotainment System Defect. Defendants charged higher prices for the vehicles than the vehicles' true value, and Plaintiffs and Class Members thus overpaid for the Class Vehicles. Although these vehicles are purchased through Defendants' authorized dealers and distributors, the money from the vehicle sales flows directly back to Defendants.

442.    Additionally, as a direct and proximate result of Defendants' failure to disclose known defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendants.

443.    Defendants have been unjustly enriched due to the known defects in the Class Vehicles through the use of money paid that earned interest or otherwise added to Defendants' profits when said money should have remained with Plaintiffs and Class Members.

444.    Plaintiffs and Class Members were not aware of the true facts regarding the Defect in the Class Vehicles and did not benefit from Defendants' unjust conduct.

445.    As a result of the Defendants' unjust enrichment, Plaintiffs and Class Members have suffered damages.

446.   Plaintiffs do not seek restitution under their unjust enrichment claims. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of its unjust conduct.

447.   Additionally, Plaintiffs seek injunctive relief to compel Defendants to offer, under warranty, remediation solutions that Defendants identify. Plaintiffs also seek injunctive relief enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendants from selling the Class Vehicles with the misleading information; compelling Defendants to provide Class members with a replacement components that do not contain the defects alleged herein; and/or compelling Defendants to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## RELIEF REQUESTED

448.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court enter judgment against Defendants, as follows:

(a) An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

(b) A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Infotainment System, including the need for periodic maintenance;

(c) An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to repair and eliminate the Infotainment System Defect from every Class Vehicle; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling Defendants to reform its warranty, in a manner deemed to be appropriate by

the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d) An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e) Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(f) A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles or make full restitution to Plaintiffs and Class Members;

(g) An award of attorneys' fees and costs, as allowed by law;

(h) An award of pre-judgment and post-judgment interest, as provided by law;

(i) Leave to amend the Complaint to conform to the evidence produced at trial; and

(j) Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

449.    Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Local Rule 3-6, Plaintiffs hereby demand a trial by jury of all issues in this action so triable.

Dated:  March 31, 2023                     Respectfully submitted,

**Capstone Law APC**


By: /s/ Tarek H. Zohdy
    Tarek H. Zohdy
    Cody R. Padgett
    Laura E. Goolsby

    Russell D. Paul (*Pro Hac Vice*)
    Amey J. Park (*Pro Hac Vice*)
    Abigail J. Gertner (*Pro Hac Vice*)
    **BERGER MONTAGUE PC**
    1818 Market Street
    Suite 3600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email; rpaul@bm.net
Email: apark@bm.net
Email: agertner@bm.net

Attorneys for Plaintiffs and the Putative Classes

SECOND AMENDED CLASS ACTION COMPLAINT